## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER CURTIS BELLINGER III,<br><br>                                        Plaintiff,<br><br>vs.<br><br>THE CITY OF PERTH AMBOY, PERTH AMBOY POLICE DEPARTMENT, CHIEF LAWRENCE CATTANO, in his official capacity, and LT. CARMELO JIMENEZ, DET. BENJAMIN BATISTA, DET./SGT. DAVID GUZMAN, DET. KEVIN SAVOIA, DET. YANELBA REYES, DET. LUIS ALMANZAR, P.O. JESSICA DEJESUS, individually and in their official capacity, and "JOHN DOES" #1-3, individually and in their official capacity (the name "JOHN DOE" being fictitious, as the true names are presently unknown),<br><br>                                        Defendants. | **VERIFIED COMPLAINT AND JURY DEMAND**<br><br> 24-CV-8442 |

Plaintiff CHRISTOPHER CURTIS BELLINGER III, by and through his attorneys Irving Cohen, Esq., Karen A. Newirth of Newirth Law PLLC, and local counsel Zachary Intrater of Agnifilo Intrater LLP, as for his Complaint in this matter, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff Christopher Curtis Bellinger III is a law-abiding, African American citizen of Perth Amboy, New Jersey.  On September 8, 2023, despite having committed no crime – or even any traffic violation or infraction – Mr. Bellinger was subject to an unlawful traffic stop during which he was illegally removed from his vehicle by members of the Perth Amboy Police Department ("PAPD"), handcuffed, taken into custody, investigated, interrogated, and subject to multiple illegal searches, including of his person, vehicle, and, later, his home.  A baseless criminal complaint and prosecution ensued, despite the fact that a simple public records search would have revealed the falsity of PAPD's claims justifying Mr. Bellinger's arrest.  After months of legal proceedings, the criminal case against Mr. Bellinger was ultimately dismissed – but not

before his personal property was illegally seized and ultimately taken from him without due process of law.  The false arrest and malicious prosecution to which Mr. Bellinger was subject deprived him of his constitutional rights; interfered with his familial and personal relationships; harmed his business irrevocably; and damaged his previously stellar reputation causing him serious mental anguish, physical harm, and financial loss.

2.      This civil rights action arises from the wrongful acts of the PAPD and certain of the employees and agents of the PAPD, including Chief Lawrence Cattano, Lt. Carmelo Jimenez, Det. Benjamin Batista, Det./Sgt. David Guzman, Det. Kevin Savoia, Det. Yanelba Reyes, Det. Luis Almanzar; P.O. Jessica Dejesus, and seeks compensatory and punitive damages and costs, pursuant to applicable federal civil rights laws and New Jersey State civil rights laws.  More specifically, plaintiff alleges that each of the defendants violated one or more provisions of Federal and State law including 42 U.S.C. §§ 1981, 1983 and 1988, the Second, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as the New Jersey Civil Rights Act, N.J. Stat. Ann. §§ 10:6-1 et seq.

## JURISDICTION AND VENUE

3.      This action is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988, and the Second, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) and the aforementioned statutory and constitutional provisions.

4.      Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all New Jersey state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

2

5.      Venue is proper pursuant to 28 U.S.C. § 1391(a)-(c) and 1402(b) in that the Plaintiff resides in, and Plaintiff's claims arose in, the County of Middlesex in the State of New Jersey, within the confines of this judicial district.

## JURY DEMAND

6.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7.      Plaintiff Christopher Curtis Bellinger III was subjected to the unlawful and illegal actions of Defendants the City of Perth Amboy, the Perth Amboy Police Department ("PAPD"), and Chief Lawrence Cattano, Lt. Carmelo Jimenez, Det. Benjamin Batista, Det./Sgt. David Guzman, Det. Kevin Savoia, Det. Yanelba Reyes, Det. Luis Almanzar; P.O. Jessica Dejesus, police officers within the PAPD responsible for the arrest and the initiation of criminal proceedings against Bellinger.

8.      Plaintiff Christopher Curtis Bellinger III is and was at all times relevant herein a resident of the state of New Jersey, residing at 559 Hazel Avenue, Perth Amboy, New Jersey.

9.      Mr. Bellinger is a 38-year-old African American man who, prior to September 8, 2023, had never been arrested or even accused of criminal wrongdoing.

10.     On or about January 23, 2023, Mr. Bellinger purchased a 2019 black Audi Q7, and entered a financing agreement with Driveway Finance Corporation. *See* Exh. 1.

11.     On or about March 13, 2023, the State of New Jersey issued to Mr. Bellinger license plate number J45-RVM for use on his 2019 Audi Q7. *See* Exh. 2.

12.     Mr. Bellinger is a New Jersey licensed and registered handgun owner, with a valid New Jersey Permit to Carry a Handgun.

a. On April 9, 2022, the State of New Jersey issued Mr. Bellinger a Firearm Identification Card, giving him the right to purchase firearms. *See* Exh. 3.

b. On July 29, 2022, Mr. Bellinger legally purchased a Sig Sauer P365XL Striker handgun. *See* Exh. 4.

c. On January 3, 2023, the State of New Jersey issued Mr. Bellinger a permit to carry a handgun (hereinafter, "Concealed Carry Permit"). This permit was valid at the time of Mr. Bellinger's arrest on September 8, 2023, and expires on January 3, 2025. *See* Exh. 5.

13. On September 8, 2023, Mr. Bellinger was driving his Audi Q7 and legally carrying his Sig Sauer P365XL Striker, a magazine, and ammunition, properly secured, in the glove compartment of his vehicle. As required by law, Mr. Bellinger was also carrying his Concealed Carry Permit. *See* Exh. 6 at 4-5.

14. The PAPD is and was at all times relevant herein an agency of the Defendant City of Perth Amboy and the Defendant City of Perth Amboy was a policymaker for this agency.

15. At all times relevant to this action, Defendant City of Perth Amboy, by its agents, servants, and employees was responsible for the operation, maintenance, and control of PAPD and the Middlesex County Prosecutor's Office and the selection, training, supervision, and disciplining of police officers and prosecutors.

16. Defendants Lt. Carmelo Jimenez, Det. Benjamin Batista, Det./Sgt. David Guzman, Det. Kevin Savoia, Det. Yanelba Reyes, Det. Luis Almanzar; P.O. Jessica Dejesus (hereinafter, the "Individual Defendants") are and were at all relevant times herein duly appointed agents, employees, officers, and servants of the PAPD.

a.  At all relevant times herein, defendant Carmelo Jimenez is employed as a Lieutenant by the PAPD.  He is sued in his official capacity and individually. Jimenez, having the rank of Lieutenant, is a supervisor.

b.  At all relevant times herein, defendant Benjamin Batista is employed as a Detective by the PAPD.  He is sued in his official capacity and individually.

c.  At all relevant times herein, defendant David Guzman is employed as a Detective Sergeant by the PAPD.  He is sued in his official capacity and individually.

d.  At all relevant times herein, defendant Kevin Savoia is employed as a Detective by the PAPD.  He is sued in his official capacity and individually.

e.  At all relevant times herein, defendant Yanelba Reyes is employed as a Detective by the PAPD.  He is sued in his official capacity and individually.

f.  At all relevant times herein, defendant Luis Almanzar is employed as a Detective by the PAPD.  He is sued in his official capacity and individually.

g.  At all relevant times herein, defendant Jessica Dejesus is employed as a Police Officer by the PAPD.  She is sued in her official capacity and individually.

17.  PAPD incident reports pertaining to Mr. Bellinger's September 8, 2023 arrest identify the race of all but one of the Individual Defendants as "white".  Defendant Almanzar's race is not identified.  *See, e.g.,* Exh. 6 at 1.

18.  At all relevant times herein, defendant Lawrence Cattano is the Chief of Police of the Perth Amboy Police Department.  He is the final policymaker for the PAPD.  He is sued in his official capacity only.

19.  John Doe 1-10 are fictitious names used to identify defendant natural persons whose identifies are presently unknown.

20.     At all relevant times, the Individual Defendants and Defendant Cattano acted towards Plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of Perth Amboy, and on behalf of and within the scope of their employment, duties and functions as agents, employees, officers, and servants of PAPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties.

21.     The City of Perth Amboy is liable for the conduct of the Individual Defendants and Defendant Cattano and any damages they caused under the doctrine of *respondeat superior*.

22.     Defendant Cattano and the Individual Defendants are entitled to indemnification under New Jersey law and by contract.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Introduction

23.     It is indisputable that the PAPD manufactured a false reason to illegally stop and arrest an innocent man, Plaintiff Christopher C. Bellinger III.  Defendant Guzman's official incident report dated September 13, 2023 contains the following demonstrably false statements:

> Lt. Carmelo Jimenez had given information approximately 16 months earlier that he believed the operator of a black colored Audi Q7 bearing New Jersey registration J45-RVM would frequent the area of Florida Grove Rd and Stephen Ave to distribute narcotics to the operator of silver colored 2013 Subaru Forester.
>
> When Lt. Jimenez provided me that information, I conducted a NJ motor vehicle inquiry on New Jersey registration # J45-RVM.  The inquiry came back to a Christopher Bellinger out of 559 Hazel Ave Perth Amboy, NJ.  However I was unable to corroborate the information that I received from Lt. Carmelo Jimenez at that time.

*See* Exh. 6 at 8.  This falsehood was repeated in Defendant Batista's sworn affidavit of probable cause.  *See* Exh. 7 at 5.

24.    The defendants included this false statement in the incident reports and sworn affidavit of probable cause to justify and cover up Mr. Bellinger's illegal stop and arrest while driving his black Audi Q7 bearing New Jersey registration J45-RVM on September 8, 2023.

25.    However, as Mr. Bellinger's official New Jersey Driver Registration History establishes, the registration/license plate J45-RVM was issued to him on March 13, 2023 – just shy of six months before his September 8, 2023 arrest.  *See* Exh. 2 at 1.

26.    Thus, it is impossible that anyone saw a black Audi Q7 bearing the registration/license plate J45-RVM prior to March 13, 2023, as claimed by PAPD in the incident reports and sworn affidavit of probable cause.

27.    This fabricated traffic stop and arrest was the beginning of a number of violations of Mr. Bellinger's constitutional rights, including his right to bear arms and his right to be free of illegal searches and seizures of his person, his vehicle, and his home.

28.    Mr. Bellinger's experience of being falsely arrested and maliciously prosecuted is part of a pattern by the PAPD, which has a history of the misconduct alleged here, including falsely arresting and maliciously prosecuting innocent individuals, including by manufacturing false bases to illegally stop, detain, and arrest them, fabricating evidence, suppressing exculpatory evidence, and illegally entering citizens' homes.

    a.    In a lawsuit filed in 2023, plaintiff Jose L. Garcia alleges that he was an innocent man falsely arrested and maliciously prosecuted by the PAPD.  *See Garcia v. Perth Amboy, et al.*, 23-cv-22903 (BRM)(MAH)(D.N.J.).

    b.    In 2021, the City of Perth Amboy settled *Rosario v. Jimenez et al.,* 19-cv-16700 (JMV)(JBC)(D.N.J.) for $15,000.  In that case, plaintiff Rosario sued two of the same defendants in this case – Defendants Jimenez and DeJesus – alleging that

the defendants illegally entered and searched his place of business, arrested him without any legal basis, and used excessive force against him.  Like Mr. Bellinger, plaintiff Rosario had no history of criminality and no prior arrests.

c.  In 2016, the City of Perth Amboy settled *Rodriguez v. City of Perth Amboy, et al.*, Docket No. MID-L-6473-13 for $850,000.  In that case, plaintiff Rodriguez alleged that a PAPD officer entered his home without any legal reason and arrested him without probable cause and despite the fact that – like Mr. Bellinger – plaintiff Rodriguez had committed no crime.  The lawsuit alleged that the PAPD officer lied that the plaintiff possessed a knife in order to cover up his illegal search and seizure of the plaintiff's home and person.  The PAPD officer then fabricated a police report containing this false information and falsely testified to it under oath.

d.  In 2014, the City of Perth Amboy settled *Faltings v. Perth Amboy*, Docket No. 13-cv-1976 (D.N.J.) for $70,000.  In that case, the plaintiff also alleged that she was arrested without probable cause and with excessive force.

29.     Mr. Bellinger's experience of being falsely arrested and maliciously prosecuted is also part of a pattern by the Middlesex County Prosecutor's Office ("MCPO"), which has a history of the misconduct alleged here, including prosecuting criminal cases for which there is no legal basis; using false, fabricated, misleading or unreliable evidence and testimony during criminal proceedings; failing to timely and fully disclose material favorable to the defense as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 450 U.S. 150 (1972), and progeny.  For example:

a. In a lawsuit filed in 2023, plaintiff Jose L. Garcia alleges that he was an innocent man falsely arrested and maliciously prosecuted by the PAPD based on the demonstrably false statements of an unreliable witness. *See Garcia v. Perth Amboy, et al.*, 23-cv-22903 (BRM)(MAH)(D.N.J.). The complaint alleges that in 2017, MCPO prosecuted Mr. Garcia and obtained a conviction despite the apparent falsity of the unreliable witness's claims. Following vacatur of Mr. Garcia's conviction, MCPO declined to re-prosecute him.

b. In 2016, the City of Perth Amboy settled *Rodriguez v. City of Perth Amboy, et al.*, Docket No. MID-L-6473-13 for $850,000. In that case, plaintiff Edwin Rodriguez alleged that a PAPD officer illegally entered his home and arrested him without probable cause, despite the fact that – like Mr. Bellinger – plaintiff Rodriguez had committed no crime. The lawsuit alleged that the PAPD officer lied that the plaintiff possessed a knife in order to cover up his illegal search and seizure of the plaintiff's home and person. The PAPD officer then fabricated a police report containing this false information and falsely testified to it under oath. The complaint further alleges that video evidence from PAPD officer's body worn camera footage revealed the falsity of the claims against Rodriguez. The MCPO nevertheless prosecuted Mr. Rodriguez in reliance on fabricated evidence and testimony provided by an unreliable PAPD officer, despite the fact that no crime had been committed, and MCPO allowed false evidence to be placed before the court.

c. In 2017, the MCPO obtained the conviction of Timothy Puskas for a murder he did not commit, relying principally on the unreliable testimony of incentivized

witnesses. *State v. Puskas*, No. A-4314-16 (N.J. App. Div. May 14, 2021), *cert. denied*, 249 N.J. 337 (2021). Mr. Puskas was acquitted following his second jury trial in 2024.

30.    The Perth Amboy Police Department also has a history of discriminating against African Americans, like Mr. Bellinger.

   a.    For example, in 2018, the City of Perth Amboy settled *Petrosino v. City of Perth Amboy Police Department et al.,* Docket No. MID-L-442-16 (Sup. Ct. New Jersey) for $125,000. In that suit, a former PAPD officer of African American and white heritage alleged that he was routinely subject to racial slurs by members of the PAPD, including supervisors, which included "half breed", "thumbprint", and "Buckwheat", and that these slurs continued unabated after he objected to them and reported them to supervisors.

   b.    In addition, PAPD disproportionally arrests African Americans compared with their population in the City of Perth Amboy. According to the Police Scorecard, a national database that analyzes and publishes U.S. Census data and FBI data, including the National Incident-Based Reporting System (NIBRS), although African Americans make up just 6 percent of Perth Amboy's population, the account for 21 percent of those arrested by the PAPD. *See* https://policescorecard.org/nj/police-department/perth-amboy.

31.    In this case, commencing on and after September 8, 2023, at Harned Street and Pfeiffer Boulevard and elsewhere in Perth Amboy, New Jersey, and continuing to the present, Plaintiff Christopher Curtis Bellinger was subject to an unlawful traffic stop, taken into custody, investigated, interrogated and subject to illegal searches of his person, automobile and illegal

entry into his home. Plaintiff was wrongfully identified, charged, arrested, detained and maliciously prosecuted as the perpetrator of certain drug and gun related crimes he did not commit and which, in fact, never even occurred. This was the result of improper and unlawful actions by the Perth Amboy Police Department and its members, who engaged in constitutional violations and unlawful conduct by causing Plaintiff to be stopped, detained, searched, and arrested without any probable cause nor any legal basis, after which they created false testimony and evidence against Plaintiff and suppressed and concealed exculpatory and favorable evidence in order to falsely justify and support their false arrest, false imprisonment and malicious prosecution of the Plaintiff.  In addition, the Individual Defendants later falsely claimed they had a search warrant in order to illegally gain access to Plaintiff's home.  Each and every crime falsely alleged to have been committed by the Plaintiff – none of which ever occurred – was dismissed against him on February 1, 2024.

32.    Plaintiff is a devoted husband and father, an entrepreneur, and a lawful, productive citizen of Perth Amboy, where he has owned his home at 559 Hazel Avenue – near the location of his arrest – since 2020.

33.    Plaintiff owns and runs a business, NDO Construction, which he has successfully run for more than a decade.   Through that business, Plaintiff purchases homes to be renovated – often financing them with bank loans.  He then engages in contracting work to transform these homes into properties that can be sold at a profit. He engages sub-contractors and manual workers to assist in these renovations.

34.    As a result of the unconstitutional actions by the Defendants, Plaintiff was prevented from engaging in his business. The telephone and vehicle he used and needed for his business was seized by the Individual Defendants who, for no apparent reason and without the requisite

due process, turned the vehicle over to the automobile financing agency which then sold it at a loss and is charging Plaintiff for that loss.

35.     The seizure and sale of Plaintiff's car not only deprived him of his property without due process of law, it also caused his credit rating to plunge from over 780 to 609.  Thus, as a result of these constitutional violations, Plaintiff was unable to obtain bank financing to complete an ongoing renovation project or purchase additional properties, as he would have done but for these events, thereby preventing him from conducting his business.  This resulted in substantial increase in costs, loss of income, and loss of business opportunities.  Moreover, the decimation of his credit score will cause Plaintiff to be unable to obtain traditional financing and the favorable rates he previously obtained, substantially limiting his ability to conduct his business, on an ongoing basis, reducing his future earning potential.

36.     During his September 8, 2023 unlawful arrest, Plaintiff's lawful handgun was seized and held by the PAPD until the dismissal of all charges against him on February 1, 2024.  Thus, Plaintiff's illegal arrest also denied him his Second Amendment right to bear arms and denied him his associated constitutional property rights.

37.     In addition, Mr. Bellinger suffered the indignity of his arrests – first at his vehicle and then days later at his home – he faced embarrassment before his family, including his wife and four children and his neighbors; damage to his previously stellar reputation; and uncertainty as to the outcome of the baseless criminal proceedings.  Finally, Plaintiff was forced to hire an attorney and make numerous court appearances before the case was dismissed almost five months later.

**On September 8, 2023  Mr. Bellinger Meets A Contractor To Pay Him for Services Rendered**

38.    On September 8, 2023, Plaintiff Christopher Curtis Bellinger and Joseph Appice arranged to meet so that Mr. Bellinger could pay Mr. Appice for services previously rendered.

39.    Mr. Bellinger had previously hired Mr. Appice to do carpentry work on properties that Mr. Bellinger was renovating for resale through his company, NDO Construction.

40.    On September 8, 2023, the men agreed to meet in the area of Harned Street and Pfeiffer Boulevard in Perth Amboy because it was conveniently located to Plaintiff's home and his daughter's afterschool program at a local elementary school.

41.    On September 8, 2023, Mr. Bellinger owed Mr. Appice a balance of $180 for work previously performed by Mr. Appice.

42.    The area of Harned Street and Pfeiffer Boulevard is approximately half a mile from Mr. Bellinger's residence at 559 Hazel Avenue and around the corner from James J. Flynn Elementary School, located at 850 Chamberlain Avenue, where one of Mr. Bellinger's daughters attends an afterschool program.

43.    The area of Harned Street and Pfeiffer Boulevard is a quiet, suburban area that is not known as a high crime area or one with heightened drug activity.

44.    On the afternoon of September 8, 2023, Mr. Bellinger drove to the area of Harned Street and Pfeiffer Boulevard in the direction of his daughter's afterschool program to meet Mr. Appice, who was driving his 2013 Subaru Forester.  He was driving his black 2019 Audi Q7, bearing New Jersey license plate J45-RVM.  The Audi Q7 is a luxury SUV.

45.    Mr. Bellinger and Mr. Appice parked near one another.

46.    Mr. Appice got out of the Subaru and walked over to the passenger side of Mr. Bellinger's Audi.

47.     Mr. Bellinger remained inside of his car and the two men spoke for a few minutes through the Audi's front passenger window.

48.     Mr. Bellinger then handed $180.00 to Mr. Appice, in full satisfaction of monies owed to Mr. Appice for his carpentry work.

49.     Mr. Appice returned to his vehicle and Mr. Bellinger drove away.  At all times while driving on the afternoon of September 8, 2023, Mr. Bellinger obeyed all traffic rules and laws. He has never been accused of having violated any traffic rule or law on this day.

**<u>PAPD Illegally Subjects Mr. Bellinger to a Traffic Stop and Arrest and Illegally Seizes His Property</u>**

50.     Undercover police officers including the Individual Defendants apparently observed Messrs. Bellinger and Appice as they approached the meeting place and spoke at Mr. Bellinger's car. *See generally* Exh. 6. The PAPD incident reports, do not, however, contain any claim that any of the Individual Defendants witnessed any exchange of goods or money between Bellinger and Appice.  *Id*.  No exchange money for goods occurred.

51.     Although Defendant Guzman did not have any legal basis to stop Mr. Bellinger's Audi, he nevertheless conducted a traffic stop of Mr. Bellinger as soon as Mr. Bellinger drove away from meeting with Mr. Appice.  According to Defendant Guzman's official incident report dated September 13, 2023, the basis for the illegal stop of Mr. Bellinger was the false claim that sixteen months earlier, Defendant Jimenez saw Mr. Bellinger's vehicle bearing his current license plate "frequent" the area to distribute narcotics.  See Exh. 6 at 8 and Exh. 7 at 5.

52.     Despite there being no contraband in plain sight in Mr. Bellinger's Audi – only crumpled up napkins and some cash in the console – Defendant Guzman directed Mr. Bellinger to get out of the vehicle.  See Exh. 6 at 3-4, 8-9.

53.    After Mr. Bellinger exited his vehicle, Defendant Guzman was informed by Detective Batista that Mr. Appice had been arrested and that narcotics had been recovered from Mr. Appice.  Defendant Guzman then placed Mr. Bellinger under arrest, although there was no probable cause to do so.  *See id.*  Mr. Bellinger was subject to illegal searches of his body and car.  *Id.* at 8-9.

54.    Neither PAPD's illegal search of Mr. Bellinger's person or vehicle resulted in the discovery of any narcotics, narcotic paraphernalia, packaging materials, or any contraband of any kind. Exh. 6 at 3-4, 8-9, 15.  Instead, the illegal car search of Mr. Bellinger's Audi resulted in PAPD seizing the following:  $206.00 in U.S. currency, two crumbled up napkins, two iPhones, Mr. Bellinger's Concealed Carry Permit, his Sig Sauer handgun, magazine, ammunition, and holster.  *Id.* at 15.

55.    In addition, on information and belief, at the time of his arrest and while detained, Mr. Appice repeatedly denied to the Individual Defendants that Mr. Bellinger and he had engaged in a narcotics transaction.

56.    In an unsuccessful attempt to manufacture a legal basis for Mr. Bellinger's traffic stop or arrest, Defendant Guzman alleged in his official incident report that 16 months prior to the September 8, 2023 incident, Defendant Jimenez purportedly informed him that Defendant Jimenez "believed" that the operator of a black Audi Q7 bearing New Jersey registration J45-RVM – Mr. Bellinger's car – frequented the area of Florida Grove Road and Stephen Avenue to distribute narcotics to the operator of a silver 2013 Subaru Forester. *See* Exh. 6 at 8.  No further identifying information about the Subaru was provided.  Defendant Guzman investigated Defendant Jimenez's information and "was unable to corroborate" it.  *Id.*  Nevertheless, this

falsehood was repeated by Defendant Batista in his sworn affidavit of probable cause.  *See* Exh.

7 at 5.

57.    However, Mr. Bellinger only obtained the New Jersey registration J45-RVM for his black

Audi Q7 on March 13, 2023, about six months before September 8, 2023.  *See* Exh. 2.

58.    Thus, any claim that PAPD officers had seen a black Audi Q7 bearing New Jersey

registration J45-RVM prior to March 13, 2023 is patently false.

59.    Defendant Jimenez has a known history of making false statements on official police

records.  As disclosed by the Middlesex County Prosecutor's Office to Mr. Bellinger's defense

counsel on November 17, 2023, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v.*

*United States*, 405 U.S. 150 (1972), while on duty for PAPD for a period from September 10,

2014 until February 24, 2015, Defendant Jimenez engaged in non-work activities in

Woodbridge, New Jersey and made false entries into PAPD department records that he was

working when, in fact, he was not.  As a result, the following administrative charges were

sustained against Defendant Jimenez:  Obedience to Law and Regulations (Theft of Time) and

Willfully Making False Entry into any Department Record.  *See* Exh. 8 at 1.

60.    Despite Defendant Jimenez's history of false statements on official police records; the

easily verifiable fact that Mr. Bellinger did not have license plate J45-RVM prior to March 2023

contrary to Defendant Jimenez's purported information and the representations in the

defendants' incident reports and affidavit; and the absence of any credible evidence reflecting the

commission of any crime by Mr. Bellinger on September 8, 2023, Mr. Bellinger was

nevertheless subject to an illegal traffic stop, illegally arrested and transported to the police

station while his Audi, handgun, and personal property were illegally seized and searched by

PAPD.

61.     Mr. Bellinger was booked and fingerprinted.  In addition to his Audi and handgun, all of Mr. Bellinger's personal property was seized by PAPD.  This property included Mr. Bellinger's Rolex watch valued at $50,000, his personal and business cellphones, his wallet, cash in the amount of $206.00, and his housekeys.

62.     However, Defendant Batista only recorded the following items on the official PAPD Property Report associated with Mr. Bellinger's arrest:  the Sig Sauer weapon, magazine, ammunition, holster, $206.00 in cash, 2 crumbled napkins, and one iPhone.  *See* Exh. 9.

63.     Mr. Bellinger was then released with a summons, having been charged with sale of a controlled dangerous substance, namely the crack cocaine allegedly possessed by Mr. Appice. The summons directed Mr. Bellinger to appear in Middlesex Superior Court on October 12, 2023 at 8:30 AM to answer the controlled substance crime for which he had been arrested and charged.

64.     Before leaving the precinct, Mr. Bellinger sought the return of his personal property, including his vehicle, house keys, cash, phones, and handgun.  He was informed by an unknown PAPD employee that he would have to wait until the criminal case was over to retrieve his personal property. Unknown PAPD officers allowed him to obtain his work tools from his car and returned to him his wallet, some of the wallet's contents, and his house keys.  None of the other personal property seized during Mr. Bellinger's wrongful arrest – including his watch, his telephones, and his licensed and registered handgun and accessories – were returned to him.

65.     Mr. Bellinger left the precinct and met his wife, who was waiting to pick him up.

**The Individual Defendants Illegally Enter Mr. Bellinger's Home and Illegally Seize Him a Second Time**

66.     On September 12, 2023, four days after his arrest, six plainclothes PAPD police officers –the Individual Defendants on information and belief – appeared at Mr. Bellinger's home

unannounced.  Mr. Bellinger's 13-year-old son answered the door followed by Mr. Bellinger's wife.  Mrs. Bellinger asked the officers to wait outside while she called Mr. Bellinger, who was exercising in the garage, but the Individual Defendants told her that she could not close the door and entered the Bellinger home uninvited and without any legal right to do so.

67.     The Individual Defendants then falsely announced that they had a warrant for Mr. Bellinger's arrest for possession of a firearm while committing a controlled dangerous drug offense – possession and distribution of crack cocaine in violation of N.J. Rev. Stat. § 2C:39-4.1 (2023).

68.     Mr. Bellinger's wife and three children were present and witnessed the Individual Defendants handcuff Mr. Bellinger, conduct a pat down search of him, and remove him, handcuffed, from the family home.  Neighbors witnessed Mr. Bellinger led from his home in handcuffs by police officers and placed into an unmarked PAPD vehicle.

69.     The officers brought Mr. Bellinger to the precinct, where a second summons charging him with the aforementioned firearms offense was issued.  Mr. Bellinger inquired where the warrant for his arrest was, and one of the Individual Defendants admitted that there was no warrant for his arrest.

70.     This second summons directed Mr. Bellinger to appear in court at the same time and place as the first summons.  *See* Exh. 7.

71.     No warrant for Mr. Bellinger's arrest was ever produced.

**PAPD Refuses to Return Mr. Bellinger's Illegally Seized Property**

72.     Having had his personal property including his phones and his car seized upon his arrest, Mr. Bellinger was unable to carry out his professional or familial duties – including coordinating and carrying out home renovations; communicating with lenders, real estate brokers, and laborers; and driving his children to and from school and activities.

73.    On or about September 29, 2023, Mr. Bellinger received a letter dated September 27, 2023, from the Middlesex County Prosecutor's Office indicating its readiness to return the "monies" seized during the investigation.  *See* Exh. 10.

74.    Given the return of the cash seized from him during his arrest, Mr. Bellinger went to PAPD and sought the return of his other property, specifically his car, his telephones, his watch, and his handgun.  An unknown PAPD member informed him that none would be returned to him at that time.

75.    Mr. Bellinger followed up with PAPD by telephone and an unknown PAPD member told him that he would need to obtain a letter from Driveway Finance Corporation (hereinafter, "Driveway"), the lienholder on Mr. Bellinger's Audi, in order to retrieve his car.

76.    As of that date, Mr. Bellinger had always been current on his payments to Driveway for his Audi and had never violated any terms of the Audi financing agreement with Driveway.

**<u>PAPD Turns Over the Audi to Driveway, Who Sells It At A Loss</u>**

77.    Mr. Bellinger unsuccessfully attempted to obtain the letter requested by PAPD from Driveway.

78.    However, PAPD released the Audi to Driveway without informing Mr. Bellinger.

79.    On information and belief, the vehicle was released following the issuance of the September 27, 2023 "Fair Warning Letter" by the Middlesex County Prosecutor's Office to Driveway, in which the Middlesex County Prosecutor's Office incorrectly advised Driveway that the car was being used by Plaintiff "in furtherance of criminal activity" and that as the owner of the vehicle, Driveway is "responsible for taking all reasonable steps to prevent the vehicle from being utilized in the furtherance of criminal activity."  *See* Exh. 11.

80.    The Middlesex County Prosecutor's Office's Fair Warning Letter was designed to, and did, cause the civil forfeiture of Mr. Bellinger's car, without due process of law and in violation of Mr. Bellinger's constitutional rights against excessive fines.

81.    The Middlesex County Prosecutor's Office did not follow any of the procedures required under New Jersey State Law or its own purported policies when seeking forfeiture of Mr. Bellinger's vehicle, including by initiating the forfeiture of Mr. Bellinger's car prior to the conclusion of the criminal case against him, notwithstanding the fact that a simple records search of New Jersey vehicle registrations would have revealed the falsity of the basis of Mr. Bellinger's arrest.  *Compare* N.J.S.A. 2C:64-1 *et seq.*

82.    In a letter dated October 24, 2023, Driveway notified Mr. Bellinger that the Audi, which Driveway now possessed, would be put up for a private sale unless Mr. Bellinger paid the remaining purchase price of the car (which he had been paying in monthly installments) plus expenses.  *See* Exh. 12.

83.    Mr. Bellinger did not have the necessary funds available to buy the Audi outright from Driveway, in part because all of available funds were being used to fight his false arrest and malicious prosecution and cover the resulting expenses.

84.    Without a vehicle, Mr. Bellinger was unable to work.  In order to work, Mr. Bellinger had to spend excessively on rental cars and, ultimately, a new vehicle, which was smaller and of lower quality than the Audi PAPD had seized and turned over to Driveway.

85.    Driveway sold the Audi at a significantly reduced price and claimed that Mr. Bellinger owed them the difference between the car's value and the sale price, approximately $20,000.00.

86.     Driveway reported to credit agencies that Mr. Bellinger had defaulted on his loan and that his car had been repossessed.  As a result, Mr. Bellinger's credit rating suffered dramatically, going from over 780 to approximately 609.

87.     This reduction in his credit rating meant that Mr. Bellinger was unable to borrow funds from the lenders and at the terms he was previously able to.  This meant that he was unable to obtain the necessary and planned financing to complete the renovation project he had in progress at the time or purchase additional properties.  As a result, the project was delayed, leading Mr. Bellinger to incur significant additional costs and lose business opportunities.  In order to finish the project, Mr. Bellinger had to borrow money from family members, deplete savings, and max out credit cards to finance the project, all at a significant financial and personal cost to Mr. Bellinger.

**Mr. Bellinger's Illegally Seized Handgun is Unlawfully Kept by PAPD**

88.     As detailed above, upon his arrest, Mr. Bellinger's Sig Sauer handgun and accessories were also illegally seized by PAPD.

89.     PAPD repeatedly refused to return his weapon to him until after his case was terminated on February 1, 2024 and he could provide proof of expungement, which he received on or about February 8, 2024 and then provided to PAPD.  *See* Exh. 14.

**After Five Months, the Charges Against Mr. Bellinger Are Dropped**

90.     Mr. Bellinger privately retained counsel, Jason Seidman, to defend him against the false charges described herein.

91.     Both Mr. Bellinger and Mr. Seidman appeared in court on numerous occasions.

92.     Mr. Bellinger was made aware that the most serious charges against him carried potential penalties of up to twenty years imprisonment.

93.    After two initial appearances, Mr. Bellinger's case was postponed on October 12, 2023 and scheduled for November 28, 2023.

94.    In a letter dated November 28, 2024, the Middlesex County Prosecutor, Yolanda Ciccone, through Assistant Prosecutor Anny Lopez, conveyed a pre-indictment plea and sentence offer.  This offer provided the following:

a.    If Mr. Bellinger pleaded guilty to Possession of a Firearm while committing a Controlled Dangerous Substance Offense, the State would recommend a term of probation;

b.    If this offer was rejected and presentation to a grand jury resulted in an indictment, a guilty plea would result in a recommendation of 364 days in jail;

c.    If this second offer was not accepted prior to the Final Case Disposition Conference, the same guilty plea would result in a recommendation of five years in a New Jersey State Prison.

95.    Because he was factually innocent and would not plead guilty to a crime he did not commit, Mr. Bellinger rejected the first plea offer on November 28, 2023.  The case was adjourned to January 16, 2024.

96.    On January 16, 2024, the Assistant Prosecutor was told by defense counsel Seidman that there would never be a guilty plea as Mr. Bellinger was totally innocent.

97.    The prosecutor reiterated that if there was no guilty plea, the case would be sent to the grand jury and Mr. Bellinger and Mr. Seidman would be notified by mail of the arraignment date on the indictment.

98.    On information and belief, throughout this period, the Middlesex County Prosecutor's Office was also seeking a negotiated resolution with Mr. Appice, who, like Mr. Bellinger, refused to plead guilty.

99.     On information and belief, the Middlesex County Prosecutor's Office repeatedly offered Mr. Appice a favorable plea agreement in exchange for Mr. Appice inculpating Mr. Bellinger. Mr. Appice repeatedly informed the Middlesex County Prosecutor's Office that he would not implicate the innocent Mr. Bellinger in criminal conduct Mr. Bellinger did not commit.

100.    Neither Mr. Bellinger nor his counsel was ever informed that Mr. Appice had exculpated him to both the Individual Defendants and the Middlesex County Prosecutor's Office.

101.    On or about February 1, 2024, the case against Mr. Bellinger was completely dismissed.

102.    On information and belief, the case against Mr. Appice was also dismissed around this time.

103.    In a letter dated February 8, 2024, Presiding Judge of the Middlesex Vicinage, Hon. Collen M. Flynn, informed Mr. Bellinger that the matter had been expunged from the records with a copy of the order enclosed. *See* Exh. 14.

**Mr. Bellinger's Rolex is Never Returned to Him**

104.    Once all of the charges against him were dismissed and then expunged on February 8, 2024, Mr. Bellinger went to the PAPD property clerk and sought the return of his remaining personal property. After multiple trips to PAPD, Mr. Bellinger was given his wallet, his house keys, his two phones, his weapon, holster, and ammunition. The clerk told him, however, that there was no record of a watch being seized from him and retained by PAPD. The property clerk told Mr. Bellinger to contact Internal Affairs regarding his missing watch and another PAPD officer provided Mr. Bellinger a card bearing the contact information for Internal Affairs.

105.    On September 8, 2023, when he was the subject of PAPD's illegal traffic stop, Mr. Bellinger was wearing his Rolex watch. Footage from the Individual Defendants' body worn cameras ("BWC") show Mr. Bellinger wearing his Rolex while he is standing handcuffed behind

the car.  For example, in the following still photograph taken from Defendant Reyes's BWC

footage, Mr. Bellinger's Rolex is on his left wrist:



106.    Mr. Bellinger's watch was removed and taken by PAPD, along with his other property.

107.    On August 28, 2020, Mr. Bellinger's Rolex was appraised as having a value of

$50,000.00. *See* Exh. 14.

108.    As detailed above, PAPD refused to return Mr. Bellinger's Rolex to him before the

criminal prosecution ended.

109.    On March 26, 2024, undersigned counsel requested that PAPD's Office of Professional

Standards – Internal Affairs investigate Mr. Bellinger's missing Rolex.  On April 11, 2024,

counsel was informed that the investigation had been transferred to the Middlesex County

District Attorney's office.  On May 31, 2024 counsel was informed that the investigation had

been returned to the jurisdiction of PAPD and on July 11, 2024, counsel was informed that the

investigation is ongoing.

110.    On or about April 11, 2024, a timely Notice of Claim was filed with the Office of the New Jersey Attorney General, the Office of the Middlesex County Counsel, the Office of the Middlesex County Prosecutor, and the Perth Amboy Police Department.  *See* Exh. 15.

## DAMAGES

111.    The unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad faith acts and omissions of the City, the PAPD, and the Individual Defendants caused Mr. Bellinger to be falsely arrested, taken into custody, subject to multiple illegal searches of his home and person, and maliciously prosecuted.  He was further subjected to the illegal seizure of his property, including his automobile and handgun, thereby denying him his constitutional right to bear arms,

112.    As a direct result of Defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Mr. Bellinger sustained injuries and damages, which continue to date and will continue into the future, including; pain and suffering; severe mental anguish; emotional distress; severe psychological damage; loss of property; legal expenses; loss of income; humiliation, indignities and embarrassment and degradation, for which he is entitled to monetary relief.

113.    Defendants' unlawful actions also caused Christopher C. Bellinger III to suffer significant social stigma; restrictions on liberty; denial of his Constitutional right to bear arms; loss of property; interference with familial relationships; and financial burdens.

114.    All the acts and omissions committed by the Defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

**FEDERAL CLAIMS**

**COUNT I**
**42 U.S.C. § 1983 False Arrest**
*Against the Individual Defendants*

115.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

116.    The Individual Defendants, acting individually and/or in concert with each other and others unnamed, seized Mr. Bellinger and initiated and/or continued criminal proceedings against Mr. Bellinger, knowing that such actions were undertaken without reasonable suspicion or probable cause to believe that Mr. Bellinger had committed any crime, and caused him to be deprived of his liberty, in violation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

117.    Christopher C. Bellinger III committed no crime nor did any crime even occur.

118.    Given the totality of the circumstances involving Mr. Bellinger's arrest, no reasonable officer could have believed that there existed probable cause to arrest Plaintiff.

119.    The prosecution finally terminated in Mr. Bellinger's favor on February 1, 2024 when all charges were dismissed.

120.    The Individual Defendants performed the above-described acts under color of state law, intentionally and with deliberate indifference to Mr. Bellinger's clearly established constitutional rights.  No reasonable officer in 2023 would have believed this conduct was lawful.

121.    By virtue of the foregoing, and pursuant to 42 U.S.C. § 1983, the Individual Defendants are liable for the violations of Mr. Bellinger's constitutional rights and his resulting injuries.

<u>**COUNT II**</u>
**42 U.S.C. § 1983 Malicious Prosecution**
*Against the Individual Defendants*

122.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows:

123.    The Individual Defendants acting individually and/or in concert with each other and

others unnamed, acted knowingly, willfully, intentionally, and with actual malice to initiate

and/or to continue criminal proceedings against Mr. Bellinger, without probable cause to believe

that Mr. Bellinger was guilty of any crime or could be successfully prosecuted, thereby violating

his clearly established rights under the Fourth, Fifth, and Fourteenth Amendments to the United

States Constitution to be free of unreasonable searches and seizures.

124.    Specifically, the Individual Defendants, acting individually and in concert, fabricated

evidence and intentionally withheld from and misrepresented to prosecutors exculpatory facts

that vitiated probable cause against Mr. Bellinger and would have impeached witnesses for the

prosecution.  These Individual Defendants also failed to conduct a constitutionally adequate

investigation in light of decisive evidence indicating that the purported basis for Mr. Bellinger's

arrest was false.

125.    The criminal proceedings terminated in Mr. Bellinger's favor when all charges were

dismissed on February 1, 2024.

126.    The Individual Defendants performed the above-described acts under color of state law,

intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr.

Bellinger's clearly established constitutional rights.  No reasonable officer in 2023 would have

believed this conduct was lawful.

127.    By virtue of the foregoing, and pursuant to 42 U.S.C. § 1983, the Individual Defendants are liable for the violations of Mr. Bellinger's constitutional rights and his resulting injuries.

### COUNT III
**42 U.S.C. §§ 1983 and 1981 Selective Enforcement and False Arrest and Malicious Prosecution Due to Race/Color/National Origin**
*Against the Individual Defendants*

128.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

129.    There was no legal basis for the September 8, 2023 unjustified traffic stop and subsequent arrest of Plaintiff Christopher C. Bellinger III other than that he is an African American man and he was operating a late model luxury vehicle on the public streets patrolled by officers from the PAPD.

130.    At the time of the September 8, 2023 traffic stop Plaintiff Christopher C. Bellinger III was not charged with any violation of any traffic law, nor has he ever been charged with such violation alleged to have occurred on September 8, 2023.

131.    Defendants, individually and collectively, through their agents did stop, seize, interrogate and arrest Plaintiff Christopher C. Bellinger III on the basis of his race and/or color.

132.    Defendants, individually and collectively, through their agents did deprive Plaintiff of equal protection on the basis of color/race in the stop, seizure, and evisceration of his ability to maintain a concealed carry permit for a firearm(s), as white persons.

133.    Plaintiff was singled out for arrest and prosecution as a result of racial animus exhibited by the Individual Defendants.

134.    The Individual Defendants performed the above-described acts under color of state law, intentionally and with deliberate indifference to Mr. Bellinger's clearly established constitutional rights.  No reasonable officer in 2023 would have believed this conduct was lawful.

135.    By virtue of the foregoing, and pursuant to 42 U.S.C. § 1983, the Individual Defendants are liable for the violations of Mr. Bellinger's constitutional rights and his resulting injuries.

**COUNT IV**
**42 U.S.C. § 1983 Denial of Second Amendment Rights**
*Against the Individual Defendants*

136.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

137.    The acts and conduct of the Defendants, jointly and/or severally, individually and/or collectively, in falsely arresting and criminally charging Christopher C. Bellinger III with a crime that he did not commit – and indeed did not occur – and relying on his false arrest to seize his legal firearm interfered with and effectively denied Plaintiff his rights guaranteed under the Second Amendment.

138.    By seizing and refusing to return his lawful weapon to Plaintiff Christopher C. Bellinger III, Defendants, jointly and/or severally, individually and/or collectively, violated the property rights of Plaintiff Christopher C. Bellinger III guaranteed to him under the Fifth and Fourteenth Amendments to the Constitution of the United States.

139.    As a direct and proximate result of Defendants' actions, Christopher C. Bellinger III was falsely arrested and prosecuted, suffered the loss of his firearm, and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT V**
**42 U.S.C. § 1983 Unreasonable Seizure Under the Fourth Amendment, Denial of Due Process Under the Fifth, Sixth, and Fourteenth Amendments, and Denial of Right to be Free of Excessive Fines Under the Eighth Amendment**
*Against the Individual Defendants*

140.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

141.    The Individual Defendants acting individually and/or in concert with each other and others unnamed, acted deliberately, willfully, recklessly, and/or with deliberate indifference to the truth, to fabricate or manufacture false and misleading police reports, witness statements, and charging instruments (collectively, the "Fabricated Evidence").

142.    The Individual Defendants forwarded, or caused to be forwarded, the Fabricated Evidence to prosecutors in the MCAO, intending that it be used against Mr. Bellinger during a criminal prosecution.

143.    The Individual Defendants knew that the Fabricated Evidence, if considered by a jury, would be likely to influence a jury's decision at trial to convict Mr. Bellinger.

144.    As a result of the Individual Defendants' conduct in forwarding, or causing to be forwarded, the Fabricated Evidence to the MCAO, prosecutors in that office initiated a criminal prosecution of Mr. Bellinger, and he lost his liberty and property, including his automobile and his lawful handgun.

145.    The Individual Defendants' conduct violated Mr. Bellinger's right to be free from unreasonable seizure, as guaranteed by the Fourth Amendment to the United States Constitution, and his rights to procedural and substantive due process and a fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as his rights to be free of excessive fines, as guaranteed by the Eighth Amendment to the United States Constitution.

146.    The above misconduct was outrageous and shocking to the conscience.

147.    By virtue of the foregoing, the Individual Defendants are liable to Mr. Bellinger, pursuant to 42 U.S.C. § 1983, for the violation of his constitutional rights and his resultant injuries.

<u>**COUNT VI**</u>
**42 U.S.C. § 1983 Failure to Intercede**
*Against the Individual Defendants and Defendant Cattano*

148.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows:

149.    By their conduct and under color of state law, the Individual Defendants and Defendant

Cattano had opportunities to intercede on behalf of Christopher C. Bellinger III to prevent his

false arrest, malicious prosecution, false custody, and deprivation of liberty without due process

of law, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or

refused to do so.

150.    These Defendants' failures to intercede violated Plaintiff's clearly established

constitutional right to be free from unreasonable search and seizure and not to be deprived of

liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendments. No

reasonable police officer in 2023 would have believed that failing to intercede to prevent these

Defendants from causing Christopher C. Bellinger III to be arrested and prosecuted without

probable cause, were lawful.

151.    Christopher C. Bellinger III committed no crime nor was any crime committed. The

prosecution finally terminated in Mr. Bellinger's favor on February 1, 2024, when all the charges

were dismissed.

152.    By virtue of the foregoing, the police Defendants are liable to Mr. Bellinger, pursuant to

42 U.S.C. § 1983, for the violation of his constitutional rights and his resultant injuries.

## COUNT VII
### 42 U.S.C. § 1983 Civil Rights Conspiracy
*Against the Individual Defendants and Defendant Cattano*

153.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows:

154.    The Individual Defendants and Defendant Cattano acting within the scope of their

employment and under color of state law, agreed among themselves and with other individuals,

to act in concert in order to deprive Christopher C. Bellinger III of his clearly established Fourth

and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false

arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process

of law.

155.    In furtherance of the conspiracy, Defendants engaged in and facilitated numerous overt

acts, including, without limitation, the following:

      a.  Falsely subjecting Christopher C. Bellinger III to a traffic stop with no legal basis;

      b.  Falsely arresting and imprisoning Christopher C. Bellinger III, knowing that they

         lacked probable cause;

      c.  Fabricating inculpatory evidence in reports and communications with the

         prosecution;

      d.  Committing perjury in the preparation of required police reports and sworn

         affidavits;

      e.  Intentionally or with deliberate indifference failing to comply with their duty to

         disclose exculpatory material during the pendency of the case; and

      f.  Causing the seizure and forfeiture of Mr. Bellinger's property without due process

         of law.

156.    Christopher C. Bellinger III is completely innocent and committed no crime nor did one

even occur. The prosecution finally terminated in Mr. Bellinger's favor on February 1, 2024,

when all charges were dismissed.

157.    As a direct and proximate result of Defendants' actions, Christopher C. Bellinger III was

wrongly arrested and prosecuted and suffered the other grievous and continuing damages and

injuries set forth above.

**COUNT VIII**
**42 U.S.C. § 1983 Supervisory Liability**
*Against Defendants Cattano and Jimenez*

158.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows:

159.    The Individual Defendants acted with impunity in an environment in which they were not

adequately trained, supervised, nor disciplined by Defendants Cattano and Jimenez and other

supervisors, in this case and as a matter of practice.

160.    Defendants Cattano and Jimenez and other supervisors acted with gross negligence,

recklessness, and/or deliberate indifference to the constitutional rights of citizens by failing to

provide adequate training, supervision, and discipline of the defendant police officers, and

thereby caused the individual defendant police officers to deprive Christopher C. Bellinger III of

his clearly established constitutional rights, including his rights to be free from unreasonable

searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of

liberty without due process of law.

161.    Had Defendants Cattano and Jimenez and other supervisors not provided grossly

inadequate training, supervision, and discipline of the defendant police officers, these defendants

would not and should not have fabricated inculpatory evidence, committed perjury, withheld

exculpatory evidence, and intentionally and maliciously caused Christopher C. Bellinger III to be arrested and prosecuted without probable cause. Defendants Cattano and Jimenez and other supervisors were directly involved in the investigation of Christopher C. Bellinger III and directly supervised the specific investigative acts taken by the individual police officer defendants in this case.

162.    The grossly negligent, reckless, and/or deliberately indifferent conduct of Defendants Cattano and Jimenez and other supervisors under color of state law violated their clearly established duty, in 2023, to supervise other defendants, and no reasonable police supervisor in 2023 would have believed that such grossly negligent, reckless, and/or deliberately indifferent supervision in the face of actual or constructive notice of misconduct by their subordinate officers was lawful.

163.    Christopher C. Bellinger III committed no crime nor did one even occur. The prosecution finally terminated in Mr. Bellinger's favor on February 1, 2024, when all charges were dismissed.

164.    As a direct and proximate result of these Defendants' actions, Christopher C. Bellinger III was wrongly arrested and prosecuted and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT IX**
**42 U.S.C. § 1983 Monell Claim**
**Monell Unconstitutional Policy, Custom, or Pattern and Practice of Promoting,**
**Facilitating, or Condoning Improper, Illegal, and Unconstitutional Investigative**
**Techniques and Failure to Supervise, Discipline and Train**
*Against Defendant City of Perth Amboy*

165.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

166.    Prior to and at the time of the unlawful investigation, arrest and prosecution, and conviction of Christopher C. Bellinger III, the Perth Amboy Police Department (PAPD), by and through its final policymakers, maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques, including but not limited to the following:

      a.   the fabrication of inculpatory evidence;

      b.   the suppression of exculpatory evidence;

      c.   the intentional failure to conduct adequate investigations of crimes;

      d.   engaging in the affirmative concealment and cover up of this type of misconduct;

      e.   illegally entering citizens' homes;

      f.   illegally searching citizens' persons, homes, and other private spaces;

      g.   engaging in racially biased misconduct, including race-based traffic stops and arrests;

      h.   theft of arrestees' personal property.

167.    Prior to and at the time of the unlawful investigation, arrest and prosecution, the PAPD, by and through its final policymakers, maintained a policy, custom, or pattern and practice of failing to adequately supervise, discipline and train PAPD detectives and officers in connection with fundamental investigative tasks implicating the constitutional rights of witnesses and suspects, including but not limited to the conduct of undercover narcotics investigations, conducting custodial interrogations and witness interviews, documenting and disclosing exculpatory evidence to prosecutors, and the affirmative ongoing obligation to come forward with exonerating evidence.

168.    The PAPD's policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques, and its policy, custom, or pattern and practice of failing adequately supervise, discipline and train PAPD detectives and officers was reflected by the multiple acts of misconduct and illegality committed by multiple PAPD detectives and supervisors.

169.    The PAPD's policy, custom, or pattern and practice of investigative misconduct and failure to supervise and train was also reflected in numerous prior cases and investigations within the PAPD's precinct and beyond which, upon information and belief, were known to the PAPD defendants and policymakers prior to and during the Christopher C. Bellinger III investigation, including but not limited to those described herein, *e.g.,* at Paragraph 28 and 30, *supra*. Such unconstitutional municipal customs, practices and/or policies were the moving force behind the false evidence used against Christopher C. Bellinger III, causing his arrest and prosecution, as well as all the other grievous injuries and damages set forth above.

### COUNT X
**42 U.S.C. § 1983 *Monell* Claim**
***Monell* Unconstitutional Policy, Custom, or Pattern and Practice of Promoting, Facilitating, or Condoning Improper, Illegal, and Unconstitutional Techniques in the Prosecution of Criminal Cases and Failure to Supervise, Discipline and Train Prosecutors**
*Against Defendant City of Perth Amboy*

170.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

171.    Prior to and at the time of the unlawful investigation, arrest and prosecution, and conviction of Christopher C. Bellinger III, the MCPO, by and through its final policymakers, maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative and prosecutorial techniques, including but not limited to the following:

a.  The duty not to initiate a criminal prosecution that is not based on probable cause;

b.  The duty not to create or to otherwise use false, misleading or unreliable evidence, testimony, statements or arguments during criminal proceedings;

c.  The obligation to correct false, inaccurate, incomplete or misleading evidence, testimony, statements and argument whenever such misconduct is discovered to have occurred;

d.  The continuing obligation to timely and fully disclose material favorable to the defense as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 450 U.S. 150 (1972), and progeny;

e.  The duty not to seize and/or forfeit citizens' property without due process of law.

172.   Prior to and at the time of the unlawful investigation, arrest and prosecution, the MCPO, by and through its final policymakers, maintained a policy, custom, or pattern and practice of failing to adequately supervise, discipline and train MCPO prosecutors and other employees in connection with fundamental investigative and prosecutorial tasks implicating the constitutional rights of suspects and defendants, including but not limited to the evaluation of criminal cases for probable cause; the documentation and disclosure of favorable material as set forth in *Brady*, *Giglio*, and progeny and the affirmative ongoing obligation to come forward with exonerating evidence; and ensuring that civil forfeitures are conducted in accordance with all legal and constitutional requirements.

173.   The MCPO's policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative and prosecutorial techniques, and its policy, custom, or pattern and practice of failing adequately supervise, discipline and train

MCPO prosecutors and employees was reflected by the multiple acts of misconduct and illegality committed by multiple MCPO prosecutors and employees.

174.     The PAPD's policy, custom, or pattern and practice of investigative misconduct and failure to supervise and train was also reflected in numerous prior cases and investigations within the MCPO's jurisdiction and beyond which, upon information and belief, were known to the Defendants and policymakers prior to and during the Christopher C. Bellinger III investigation, including but not limited to those described herein, *e.g.,* at Paragraph 29, *supra*. Such unconstitutional municipal customs, practices and/or policies were the moving force behind the false evidence used against Christopher C. Bellinger III, causing his arrest and prosecution, as well as all the other grievous injuries and damages set forth above.

## STATE LAW CLAIMS

### COUNT IX
**Malicious Prosecution**
*Against the Individual Defendants*

175.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

176.     All defendants, despite knowing that probable cause did not exist to arrest and prosecute Christopher C. Bellinger III for the crimes charged, intentionally, recklessly, and with malice caused Christopher C. Bellinger III to be arrested and prosecuted for them. Furthermore, these Defendants intentionally withheld from and misrepresented to prosecutors facts that further vitiated probable cause against Christopher C. Bellinger III.

177.     Christopher C. Bellinger III committed no crime nor did one even occur. The prosecution finally terminated in his favor on February 1, 2024, when all charges were dismissed.

178.    As a direct and proximate result of these Defendants' actions, Christopher C. Bellinger III was wrongly arrested, taken into custody and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT X
### New Jersey Civil Rights Act
*Against the Individual Defendants*

179.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

180.    The Individual Defendants are liable to Plaintiff Christopher C. Bellinger III under New Jersey's Civil Rights Act, N.J.S.A. 10:6-2 et seq., because they deprived Plaintiff Christopher C. Bellinger III of due process and equal protection rights, privileges or immunities secured to him by the Constitution or laws of the United States as well as substantive rights, privileges or immunities secured by the Constitution or laws of the State of New Jersey, specifically when the Individual Defendants arrested Plaintiff without probable cause on the basis of his race/color, provided false evidence and statements to the prosecution, defense counsel, and court, including statements from an unreliable witness, Defendant Jimenez.

181.    As a direct and proximate result of these Defendants' actions, Christopher C. Bellinger III was wrongly arrested, taken into custody and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT XI
### Intentional, Reckless, or Negligent Infliction of Emotional Distress
*Against the Individual Defendants and Defendant Cattano*

182.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

183.    The improper, deliberate, and traumatizing conduct of the Individual Defendants and Defendant Cattano in deliberately causing, or recklessly disregarding the risk of causing, the

wrongful arrest, prosecution, conviction, incarceration, and concomitant severe emotional distress, was extreme and outrageous, and directly and proximately caused the grievous injuries and damages set forth above.

184.    These Defendants engaged in these acts within the scope of their employment.

185.    These claims are tolled as these Defendants concealed from Christopher C. Bellinger III – and still are concealing to this day – their conduct giving rise to this cause of action.

186.    As a direct and proximate result of these Defendants' actions, Christopher C. Bellinger III was wrongly arrested, taken into custody and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT XII
### State Law Negligence
*Against the Individual Defendants and Defendant Cattano*

187.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

188.    The Individual Defendants and Defendant Cattano are liable for negligence, having breached their duty of reasonable care to Christopher C. Bellinger III.

189.    Specifically, and by way of example, these Defendants:

   a.    Failed to accurately report how Christopher C. Bellinger III became a suspect in the crime;

   b.    Failed to accurately report the circumstances of what occurred on the date of Christopher C. Bellinger III's arrest; and

   c.    Failed to properly investigate leads in the investigation which would have shown that Christopher C. Bellinger III was not and had not committed a crime.

190.    These Defendants' negligence and gross negligence directly and proximately caused Christopher C. Bellinger III to be wrongfully arrested and prosecuted.

191.    These Defendants engaged in these acts within the scope of their employment.

192.    As a direct and proximate result of these Defendants' actions, Christopher C. Bellinger III was wrongly arrested, taken into custody and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT XIII**
**Respondeat Superior Claim**
*Against Defendant City of Perth Amboy*

193.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

194.    At all times relevant to this Complaint, all Defendants acted as agents of the City of Perth Amboy, in furtherance of the business, including law enforcement functions, of the City of Perth Amboy, and within the scope of their employment or agency with the City of Perth Amboy.

195.    The conduct by which the Police Defendants committed the torts of false arrest, malicious prosecution, intentional, reckless or negligent infliction of emotional distress, and negligence was not undertaken for the Police Defendants' personal motives, but rather was undertaken while the Police Defendants were on duty, carrying out their routine investigative functions as detectives and police officers.

196.    Under the doctrine of *respondeat superior*, the City of Perth Amboy is liable for their agents' state law torts of malicious prosecution, intentional, reckless or negligent infliction of emotional distress, and negligence.

197.    As a direct and proximate result of these Defendants' actions, Christopher C. Bellinger III was wrongly arrested, taken into custody and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT XIV**
**Respondeat Superior Claim**
*Against Defendant City of Perth Amboy*

198.    Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

199.    The conduct of all Defendants, described above, also violated Mr. Bellinger's rights under the New Jersey State Constitution, to due process of law and to be free from unreasonable searches and seizures.

200.    Christopher C. Bellinger III committed no crime nor did one occur. The prosecution finally terminated in Mr. Bellinger's favor on February 1, 2024, when all charges were dismissed.

201.    As a direct and proximate result of these Defendants' actions, Mr. Bellinger was wrongly arrested and incarcerated and suffered the other grievous and continuing damages and injuries set forth above.

202.    Defendant City of Perth Amboy is liable under *respondeat superior* for the actions of its employees within the scope of their employment.

203.    As a direct and proximate result of these Defendants' actions, Christopher C. Bellinger III was wrongly arrested, taken into custody and suffered the other grievous and continuing damages and injuries set forth above.

**WHEREFORE**, Christopher C. Bellinger III prays as follows:

1. That the Court award compensatory damages to him and against the defendants, jointly and severally, in an amount to be determined at trial;

2. That the Court award punitive damages to him against all individual defendants, in an amount to be determined at trial, that will deter such conduct by defendants in the future;

3. For a trial by jury;

4. For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

5. For any and all other relief to which he may be entitled.


Dated: New York, New York
        August  8, 2024


                                        /s/ Zachary Intrater
                                        Zachary Intrater
                                        NJ Bar No. 332262023
                                        Agnifilo Intrater LLP
                                        445 Park Avenue, 7th Floor
                                        New York, New York 10022
                                        (646) 205-4350
                                        zach@agilawgroup.com
                                        *Attorney for Plaintiff Christopher C.*
                                        *Bellinger III*

*Of Counsel*:
Karen A. Newirth
Newirth Law PLLC
43 West 43rd Street, Suite 160
New York, New York 10036
(917) 426-5551
karen@newirthlaw.com
*Not admitted in New Jersey*

/s/ Irving Cohen
Irving Cohen
80 Broad Street, 19th floor
New York, New York 10004
(212) 964-2544
icohenlaw@msn.com
*Not admitted in New Jersey*

VERIFICATION

STATE OF NEW JERSEY  )
                     ) ss.:
COUNTY OF MIDDLESEX )

     CHRISTOPHER C. BELLINGER III, being duly sworn, states:

     I am the plaintiff in the within action. I have read the foregoing Complaint and know its

contents. The factual allegations are made to my personal knowledge or upon information and

belief. The complaint is true to my knowledge, except as to matters alleged on information and

belief, and as to those matters, I believe them to be true.

 

                                         CHRISTOPHER C. BELLINGER III

Sworn to before me this ___ day of August, 2024.

_Megan Wilson_
Notary Public

MEGAN WILSON
Notary Public, State of New Jersey
Comm. # 50203941
My Commission Expires 10/24/2027