# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER CURTIS BELLINGER III, | Hon. Jamel K. Semper, U.S.D.J.<br>Hon. Cathy L. Waldor, U.S.M.J. |
| Plaintiff(s), | Civil Action No. 2:24-cv-08442 |
| v. | |
| THE CITY OF PERTH AMBOY, PERTH AMBOY POLICE DEPARTMENT, CHIEF LAWRENCE CATTANO, in his official capacity, and LT. CARMELO JIMENEZ, DET. BENJAMIN BATISTA, DET./SGT. DAVID GUZMAN, DET. KEVIN SAVOIA, DET. YANELBA REYES, DET. LUIS ALMANZAR, P.O JESSICA DEJESUS, individually and in their official capacity, and "JOHN DOES" #1-3, individually and in their official capacity (the name "JOHN DOE" being fictitious, as the true names are presently unknown), | **Motion Day: November 18, 2024** |
| Defendant(s). | |

---

**PERTH AMBOY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(B)**

---

**MURPHY ORLANDO LLC**
494 Broad Street, 5th Floor
Newark, NJ 07102
201.451.5000
*Attorneys for Defendants the City of Perth Amboy,*
*Perth Amboy Police Department, Chief Lawrence Cattano,*
*Lt. Carmelo Jimenez, Det. Benjamin Batista, Det./Sgt.*
*David Guzman, Det. Kevin Savoia, Det. Yanelba Reyes,*
*Det. Luis Almanzar, and P.O. Jessica DeJesus*

*On the Brief:*
    John W. Bartlett, Esq. (#023042001)
    Debra Rydarowski, Esq. (#004582007)

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

SUMMARY OF THE ALLEGATIONS ............................................................................... 2

LEGAL ARGUMENT ......................................................................................................... 3

   I.     PLAINTIFF'S COMPLAINT FAILS TO SATISFY THE STANDARDS TO SURVIVE A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6). ....................................................... 3

   II.    THE PERTH AMBOY POLICE DEPARTMENT AND CHIEF CATTANO CANNOT BE
   SUED  IN CONJUNCTION WITH THE MUNICIPALITY. ................................................... 5

   III.   PLAINTIFF'S COMPLAINT AGAINST THE INDIVIDUAL DEFENDANTS IS SUBJECT
   TO    DISMISSAL AS AN IMPROPER GROUP PLEADING. ............................................. 6

   IV.   QUALIFIED IMMUNITY PROTECTS THE INDIVIDUAL DEFENDANTS. ........................ 7

   V.    EACH OF PLAINTIFF'S FEDERAL CLAIMS FAILS TO STATE A CLAIM. ....................... 9

     A.   Plaintiff's "False Arrest" Claim (Count One) Fails. ................................................... 9

     B.   Count Two, Plaintiff's "Malicious Prosecution" Claim, Fails. .................................... 10

     C.   Count Three Should Be Dismissed As Improperly Compound And Because It Fails To State A Claim And To Overcome Defendants' Qualified Immunity. ...................................... 10

     D.   Count Four, For Denial of Plaintiff's Second Amendment Rights, Fails. ..................... 12

     E.   Count Five Should Be Dismissed As Improperly Compound, As A Group Pleading, And Because It Fails To State A Claim And To Overcome Qualified Immunity. ............................. 13

     F.   Count Six Fails To State A Claim Against Any Defendant. .......................................... 14

     G.   Plaintiff's "Civil Rights Conspiracy" Count Fails To State A Claim. ......................... 15

     H.   Count Eight, For Supervisory Liability Against Cattano And Jiminez, Fails. ............... 16

     I.   Plaintiff's <u>Monell</u> claim, Count Nine, Fails Because Plaintiff Fails To Support Any Allegation Of An Official Policy, Practice, Or Custom. ...................................................................... 17

     J.   Plaintiff's Second <u>Monell</u> Claim Is Not Pleaded Against The City, Or, If It Is, Should Be Dismissed For The Same Reasons As Count Nine. ....................................................... 20

VI.      EACH OF PLAINTIFF'S STATE LAW COUNTS FAILS TO STATE A CLAIM...................21

A.    Plaintiff's Claim Under the New Jersey Civil Rights Act (Count Twelve) Fails For All The Same Reasons As His § 1983 Claims. ........................................................................21

B.    Plaintiff's Common-Law Tort Claims Are Barred By The N.J. Tort Claims Act. ....................22

    1.    Dismissal Is Required Because Plaintiff Did Not File A Notice Of Claim With The City Or Name The City As A Responsible Party In His Notice Of Claim. ........................................22

    2.    Plaintiff's Notice of Claim Was Untimely..............................................................23

    3.    All Tort Claims Arising From Events Other Than Plaintiff's Arrest And Prosecution Must Be Dismissed...........................................................................................24

    4.    Plaintiff Failed To Allege Damages That Satisfy The Minimum Requirements Under The NJTCA To Recover Against A Public Entity. .........................................................25

C.    Plaintiff's Emotional Distress Claim (Count Thirteen) Also Fails To State a Claim Under New Jersey Law. ........................................................................................26

D.    Count Fourteen Simply Re-Packages Defendants' Alleged Constitutional Violations As "Negligence," And Should Be Dismissed. ....................................................................28

E.    In Counts Fifteen And Sixteen, Plaintiff Concedes That All His Claims Against The City Rely Upon The Theory Of Respondeat Superior, Which Is Unavailable As To His Civil Rights Claims And Fails As To His Tort Claims.........................................................................28

CONCLUSION........................................................................................................29

## TABLE OF AUTHORITIES

**Federal Cases**

A.M. ex rel. J.K.M. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572 (3d Cir. 2004) ...................... 17

Adams v. City of Camden, 461 F.Supp.2d 263, 267 (D.N.J. 2006) .............................................. 20

Anderson v. Creighton, 483 U.S. 635 (1987) ............................................................................... 7

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ............................................................................... *passim*

Atwater v. City of Lago Vista, 532 U.S. 318 (2001) ....................................................................... 9

Baez v. Lancaster Cnty., 487 Fed.Appx. 30 (3d Cir. 2012) ........................................................... 5

Baker v. Monroe Twp., 50 F.3d 1186 (3d Cir. 1995) .................................................................... 15

Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151 (3d Cir. 2001) ....................................... 15

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ................................................................. 3-4, 19

Bielevicz v. Dubinon, 915 F.2d 845 (3d Cir. 1990) ..................................................................... 18

Blaylock v. City of Philadelphia, 504 F.3d 405 (3d Cir. 2007) ..................................................... 8

Booker v. New Jersey, No. 04-4262 (WHW), 2006 WL 8458223 (D.N.J. Jan. 10, 2006) ........... 26

Brown v. Makofka, 644 Fed.Appx. 139 (3d Cir. 2016) ................................................................. 9

Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257 (1989) ............... 14

Bussinelli v. Twp. of Mahwah, No. 23-21519, 2024 WL 3755914 (D.N.J. Aug. 12, 2024) ........... 6

Connick v. Thompson, 563 U.S. 51 (2011) ................................................................................... 17

Cuvo v. De Biasi, 169 Fed.Appx. 688 (3d Cir. 2006) .................................................................... 5

Darby v. N.J. Dep't of Corrs., No. 20-1360 (MAS) (TJB), 2023 WL 6890911
    (D.N.J. Oct. 19, 2023) ............................................................................................................ 6

DeBellis v. Kulp, 166 F.Supp.2d 255 (E.D. Pa. 2001)...................................................... 5

Dennis v. City of Phila., No. 18-2689, 2024 WL 1604207 (E.D. Pa. Apr. 12, 2024).................. 20

Est. of Kamal by and through Kamal v. Twp. of Irvington, 790 F.Appx. 395 (3d Cir. 2019) ....... 4

Est. of Roman v. City of Newark, 914 F.3d 789 (3d Cir. 2019) ................................... 18

Falat v. Cnty. of Hunterdon, No. 12-6804, 2013 WL 1163751 (D.N.J. Mar. 19, 2013) ................ 6

Fallen v. City of Newark, No. CV 15-2286, 2017 WL 368500 (D.N.J. Jan. 24, 2017)............... 27

Garcia v. Perth Amboy, et al., 23-cv-22903-BRM-MAH (D.N.J Sept. 4, 2024)........................ 19

Geissler v. City of Atl. City, 198 F. Supp. 3d 389 (D.N.J. 2016)................................. 23

Goodall-Gaillard v. N.J. Dep't of Corrs., 625 Fed.Appx. 123 (3d Cir. 2015) ........................ 11-12

Gonzalez v. Borough of Red Bank, No. CV-1813009-FLW-ZNQ,
     2020 WL 2029338 (D.N.J. Apr. 28, 2020).................................................... 19

Groh v. Ramirez, 540 U.S. 551 (2004) ........................................................... 7

Harlow v. Fitzgerald, 457 U.S. 800 (1982).................................................... 7-8

Harvard v. Cesnalis, 973 F.3d 190 (3d Cir. 2020)............................................... 10

Hunter v. Bryant, 502 U.S. 224 (1991)....................................................... 6, 8-9

Janowski v. City of North Wildwood, 259 F.Supp.3d 113 (D.N.J. 2017)......................... 5, 17

Jett v. Dallas Indep. School Dist., 491 U.S. 701 (1989) ...................................... 11

Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs., 693 F.3d 359 (3d Cir. 2012) .. 12

Lankford v. City of Clifton Police Dep't, 546 F. Supp. 3d 296 (D.N.J. 2021) ............................ 15

Lesende v. Borrero, No. 06-4967 (DRD), 2010 WL 892183 (D.N.J. Mar. 8, 2010) ................... 25

<u>Losch v. Borough of Parkesburg, Pa.</u>, 736 F.2d 903 (3d Cir. 1984) ............................................ 18

<u>Lozano v. New Jersey</u>, 9 F.4th 239 (3d Cir. 2021) ................................................................ 7, 10

<u>Malley v. Briggs</u>, 475 U.S. 335 (1986) ................................................................................ 7

<u>McGovern v. City of Philadelphia</u>, 554 F.3d 114 (3d Cir. 2009) .................................. 11

<u>McLeod v. Fifth Jud. Dist. of Pa.</u>, No. 20-1362 (MAS) (TJB),
    2022 WL 13986832 (D.N.J. Oct. 24, 2022) ............................................................ 6-7

<u>Mitchell v. Forsyth</u>, 472 U.S. 511 (1985) .............................................................. 9

<u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658 (1978) .............................. *passim*

<u>Oklahoma City v. Tuttle</u>, 471 U.S. 808 (1985) .......................................................... 18

<u>Padilla v. Twp. of Cherry Hill</u>, 110 Fed. Appx. 272 (3d Cir. 2004) .................................. 5

<u>Panarello v. City of Vineland</u>, 160 F. Supp. 3d 734 (D.N.J. 2016) .................................. 24

<u>Pearson v. Callahan</u>, 555 U.S. 223 (2009) ................................................................ 7

<u>Pierson v. Ray</u>, 386 U.S. 547 (1967) ...................................................................... 10

<u>Pharaoh v. Dewees</u>, No. 14-3116, 2016 WL 2593842 (E.D. Pa. May 4, 2016) ........................ 20

<u>Rasmussen v. United States</u>, No. CV146726KSHCLW, 2015 WL 9581874
    (D.N.J. Dec. 30, 2015) ............................................................................ 27

<u>Rode v. Dellarciprete</u>, 845 F.2d 1195 (3d Cir. 1988) .............................................. 6, 28

<u>S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.</u>,
    181 F.3d 410 (3d Cir. 1999) ........................................................................ 4

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121 (3d Cir. 2010) .................................. 3-4, 17, 19

<u>Signorile v. City of Perth Amboy</u>, 523 F.Supp.2d 428 (D.N.J. 2007) .................................. 8

Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) ........................................................ 14

Startzell v. City of Philadelphia, 533 F.3d 183 (3d Cir. 2008) .................................... 12

Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720 (3d Cir. 1989) .......................... 17

Strauss v. City of Chicago, 760 F.2d 765 (7th Cir. 1985) ............................................ 20

Suber v. Wright, 574 Fed.Appx. 207 (3d Cir. 2014) .................................................... 12

Thomas v. Cumberland Cnty., 749 F.3d 217 (3d Cir. 2014) .................................. 17, 29

Thomas v. East Orange Bd. of Edu., 998 F.Supp.2d 338 (D.N.J. 2014) ................. 25-27

Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410 (3d Cir. 2000) ....................... 14

Trafton v. City of Woodbury, 799 F.Supp.2d 417 (D.N.J. 2011) ................................. 21

United States v. Allison, No. CR 23-76, 2024 WL 3385083 (W.D. Pa. July 11, 2024) ................. 8

United States v. Bajakajian, 524 U.S. 321 (1998) ....................................................... 14

United States v. Parker, No. 05-CR-702, 2006 WL 964488 (E.D. Pa. Apr. 13, 2006) .................. 8

United States v. Rahimi, 144 S. Ct. 1889 (2024) ......................................................... 17

United States v. Willis, No. CR 23-353, 2024 WL 2158253 (E.D. Pa. May 14, 2024) ................. 8

Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313 (11th Cir. 2015) .............. 11

White v. City of Vineland, 500 F.Supp.3d 295 (3d Cir. 2020) ...................................... 15

Wooden v. City of Phila., No. CV 19-1054, 2022 WL 17724423 (E.D. Pa. Dec. 15, 2022) ........ 20

**State Cases**

Ayers v. Jackson Twp., 106 N.J. 557 (1987) ............................................................... 25

Barbieri v. Mayer, No. A-0362-14T1, 2015 WL 9263849 (App. Div. Dec. 21, 2015) ......... 24

Bayer v. Township of Union, 414 N.J. Super. 238 (App. Div. 2010) ........................................... 23

Clagett v. Mack-Cali Realty Corp., No. A-2036-21, 2024 WL 2312822
   (App. Div. May 22, 2024)................................................................................................ 23

D.D. v. Univ. of Med. & Dentistry of New Jersey, 213 N.J. 130 (2013)...................................... 22

DelaCruz v. Borough of Hillsdale, 183 N.J. 149 (2005)............................................................ 26

Gilhooley v. Cnty. of Union, 164 N.J. 533 (2000)........................................................................ 25

Hoag v. Brown, 397 N.J. Super. 34 (App. Div. 2007) ................................................................. 25

Jablonowska v. Suther, 195 N.J. 91 (2008).............................................................................26-27

Lacy v. Cooper Hosp./Univ. Med. Ctr., 745 F.Supp. 1029 (App. Div. 1990) .............................. 27

Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 573 (2009)...................................................... 29

Lipman v. Arfield, 33 A.2d 703, 704 (N.J. 1943) ...................................................................... 11

Madej v. Doe, 194 N.J. Super. 580 (Law Div. 1984).................................................................. 23

Marion v. Borough of Manasquan, 231 N.J. Super. 320 (App. Div. 1989) ................................. 25

McDade v. Siazon, 208 N.J. 463 (2011) ................................................................................22-23

Mercado v. State, 212 N.J. Super. 487 (Law Div. 1985)............................................................ 25

O'Donnell v. New Jersey Turnpike Auth., 236 N.J. 335 (2019).................................................... 22

Perez v. Zagami, LLC, 218 N.J. 202 (2014) ............................................................................. 21

Randall v. State, 277 N.J. Super. 192 (App. Div. 1994) ............................................................ 25

State v. Melendez, 240 N.J. 268 (2020).................................................................................... 12

Thigpen v. City of E. Orange, 408 N.J. Super. 331 (App. Div. 2009) ........................................ 26

Tumpson v. Farina, 218 N.J. 450 (2014) ................................................................ 21, 29

Velez v. City of Jersey City, 180 N.J. 284 (2004) ........................................................ 24

Winberry Realty P'ship v. Borough of Rutherford, 247 N.J. 165 (2021) ..................... 29

Zois v. N.J. Sports & Exposition Auth., 286 N.J. Super. 670 (App. Div. 1996) ................. 24

**Federal Statutes and Rules**

28 U.S.C. § 1367(c)(3) .............................................................................................. 21

42 U.S.C. § 1981 ..................................................................................................... 10-11

42 U.S.C. § 1983 ..................................................................................................... *passim*

FED. R. CIV. PRO. 8 ..................................................................................................... 11

FED. R. CIV. PRO. 12(b)(6) ..................................................................................... *passim*

**State Statutes**

N.J.S.A. 2C:64-1 ..................................................................................................... 12-13

N.J.S.A. 10:6-2 ........................................................................................................... 21

N.J.S.A. 40A:14-118 ..................................................................................................... 5

N.J.S.A. 59:1-1 ........................................................................................................... 22

N.J.S.A. 59:1-3 ........................................................................................................... 23

N.J.S.A. 59:8-2 ........................................................................................................... 23

N.J.S.A. 59:8-4 ........................................................................................................... 24

N.J.S.A. 59:8-7 ........................................................................................................... 22

N.J.S.A. 59:8-8 ........................................................................................................ 22-24

N.J.S.A. 59:8-9 ............................................................................................................... 24

N.J.S.A. 59:9-2 ............................................................................................................... 25

Defendants[1] move to dismiss Plaintiff Christopher Curtis Bellinger's Verified Complaint pursuant to FED. R. CIV. PRO. 12(b)(6).

## PRELIMINARY STATEMENT

In a floridly-pleaded, 43-page, 16-count Verified Complaint, Christopher Curtis Bellinger III ("Plaintiff" or "Bellinger") proposes innocent explanations for his conduct on the day of his arrest and offers a tale of woe—including loss of his credit rating, automobile lease, and business opportunities—resulting from his allegedly false arrest. All of the incidents described, however, including the confiscation of his vehicle and handgun, were ordinary police procedure following the arrest. The arrest itself was supported by probable cause, as amply set forth in documents Plaintiff appended to his Complaint. That probable cause alone, and the regularity of the procedures that followed, show all of Plaintiff's constitutional and tort claims to be without merit.

The failure of Plaintiff's pleading is evident on its face: Plaintiff describes in detail how his arrest occurred after he stopped by the side of the road and engaged in a transaction with another man, Joseph Appice. According to Plaintiff, the purpose of the roadside meet-up was for him to "pay Mr. Appice for services previously rendered," to wit, $180 for "carpentry work on properties Mr. Bellinger was renovating." [Dkt. 1, ¶¶ 38-41]. However, the transaction was preceded by the two men engaged in a driving pattern police recognized as "counter surveillance measures . . . to detect any police presence," leading police to "believe a narcotic transaction had taken place." [Dkt. 1-7 at 3]. After the transaction, which the police observed, police stopped Appice and discovered him to be in possession of crack cocaine in a crumpled-up napkin but **<u>not</u>** of the money Bellinger claims he had just paid Appice. [Dkt. 1-7 at 4-5]. For his part, Bellinger was found to be

---

[1] Consistent with Plaintiff's pleading, the natural persons named in their personal as well as official capacity (that is, Jimenez through DeJesus) are referred to herein as the "Individual Defendants," and, with the City, Police Department, and Chief Cattano, collectively, as "Defendants."

in possession of $206 in cash and a Sig Sauer 9mm handgun and ammunition in an illegal large-capacity magazine, as well as other crumpled-up napkins, and two phones. [Id.; Dkt. 1-8].

While this is not a litigation about the drug and weapons charges against Bellinger that resulted from that day's events, it is—by Bellinger's own account—about whether the police decision to stop and arrest him, to issue a complaint summons, and then to re-arrest him four days later on a related charge, were valid or were the unconstitutional products of police misconduct and racial bias. [Dkt. 1, ¶¶ 1-2]. From that question flows the resolution of all of Plaintiff's federal claims. The clear standards applicable in this Court, based upon Third Circuit, New Jersey, and other case law, indicate that (a) the police stop of Bellinger was supported by reasonable suspicion and his arrest by probable cause, and (b) therefore that his constitutional claims are meritless. The standards further indicate that, due to deficiencies in his pleading and his pre-suit handling of the State law requirements to provide timely notice of his claims, Plaintiff's claims against Defendants cannot proceed. Rather, the Verified Complaint is subject to dismissal in its entirety. Accordingly, movants now ask this Court to enter appropriate relief pursuant to FED. R. CIV. PRO. 12(b)(6).

## SUMMARY OF THE ALLEGATIONS[2]

According to Plaintiff's Verified Complaint ("Complaint"), on September 8, 2023, Perth Amboy Police arrested and subsequently charged Plaintiff for the "sale of a controlled dangerous substance." [Dkt. 1, ¶¶ 44-51, 63]. While Plaintiff asserts the legal conclusion that the Individual Defendants acted without probable cause, his Complaint and exhibits clearly show otherwise. See supra, 1-2. The sequence of events Plaintiff describes—officers receive tip of suspected drug deal, officers observe actions consistent with a drug transaction, then officers locate crack cocaine on

---

[2] For this motion only, Plaintiff's allegations are assumed to be true. See FED. R. CIV. P. 12(b)(6).

one participant and over $200 in cash on the other—obviously give rise to probable cause, and in doing so demonstrate the frivolous nature of his claims in this case.

The first eight counts of Plaintiff's Verified Complaint sound under 42 U.S.C. § 1983, invoking the Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution. Plaintiff then asserts two claims under Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978) ("Monell")—one of which appears originally to have been drafted against the Middlesex County Prosecutor, even though that office is not named as a defendant. Finally, Plaintiff asserts (but mis-numbers) six state law causes of action, most sounding in tort.

For the many reasons set forth below, each of Plaintiff's claims fails, and the Verified Complaint should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

## LEGAL ARGUMENT

## I.   PLAINTIFF'S COMPLAINT FAILS TO SATISFY THE STANDARDS TO SURVIVE A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the facts alleged in a complaint "must be enough to raise a right to relief above the speculative level"—that is, they must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010) (citations omitted).

The Court of Appeals for this Circuit has promulgated a three-pronged test of the sufficiency of a complaint. See Santiago, 629 F.3d at 130. First, the Court considers "the elements a plaintiff must plead to state a claim." Id. Second, the Court distinguishes mere legal conclusions,

which "are not entitled to an assumption of truth." <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 680). That is, a complaint's "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," <u>Iqbal</u>, 556 U.S. at 678, cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570; <u>see also</u> <u>Est. of Kamal by and through Kamal v. Twp. of Irvington</u>, 790 F.Appx. 395, 398 (3d Cir. 2019) ("[A]llegations [that] merely restate the legal elements of a . . . claim . . . are 'not entitled to the assumption of truth' and are insufficient to take its claim 'from conceivable to plausible.'"). Third, after recognizing legal conclusions and threadbare recitals for what they are—insufficient—and discounting them accordingly, the Court is to consider the complaint's remaining well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement for relief." <u>Santiago</u>, 629 F.3d at 130 (quoting <u>Iqbal</u>, 556 U.S. at 679). Where a plaintiff does not plead factual allegations sufficient to show the existence of each element of the asserted claim(s) against the defendant, dismissal is appropriate.  A Court reviewing a Rule 12(b)(6) motion may only consider the facts alleged in the pleadings, the documents attached as exhibits, and matters of judicial notice such as public records. <u>S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999).

A review of Plaintiff's Amended Complaint shows a fulsome narrative, rich in what appear to be factual details and even a photograph. More carefully examined however, Plaintiff's pleading is threadbare and conclusory at key points, relying on unsupported legal conclusions but treating them as facts. Just as important, it demonstrates the existence of probable cause for Plaintiff's arrest—a factor which is fatal to all the claims that rely on the events that followed the arrest.

Thus, even assuming all the allegations in Plaintiff's Complaint are true, it fails to state any claim upon which relief could be granted. This is so for each of the separate and independently adequate reasons set forth below, and dismissal of the Amended Complaint is therefore warranted.

## II. THE PERTH AMBOY POLICE DEPARTMENT AND CHIEF CATTANO CANNOT BE SUED IN CONJUNCTION WITH THE MUNICIPALITY.

"In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." Padilla v. Twp. of Cherry Hill, 110 Fed.Appx. 272, 278 (3d Cir. 2004) (quoting DeBellis v. Kulp, 166 F.Supp.2d 255, 264 (E.D. Pa. 2001)); see also N.J.S.A. 40A:14-118 (police departments are "an executive and enforcement function of municipal government"). Here, the Complaint names both the City of Perth Amboy and the PAPD—although not even one of the Complaint's counts is asserted to be against the Police Department. Because the PAPD "is merely an administrative arm" of the City, claims against it should be dismissed regardless of how the Court resolves this motion as to the City itself.

Similarly, official-capacity suits are merely "another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690, n. 55. Thus, "where claims against in officer in his official capacity are duplicative of claims against the municipality, those claims are properly dismissed as redundant." Janowski v. City of North Wildwood, 259 F.Supp.3d 113, 131 (D.N.J. 2017); Baez v. Lancaster Cnty., 487 Fed.Appx. 30, 32 (3d Cir. 2012); Cuvo v. De Biasi, 169 Fed.Appx. 688, 693 (3d Cir. 2006). Here, in addition to the City of Perth Amboy, Plaintiff's Complaint also names Chief Cattano **solely in his official capacity**, [Dkt. 1, ¶ 18]. The claims against Chief Cattano are premised on the exact conclusory allegations and underlying facts as the claims against the City. Thus, the claims against the Chief must be dismissed as duplicative of the claims against the City. See Janowski, 259 F.Supp.3d at 131.

Because Plaintiff's claims against the Perth Amboy Police Department and Chief Cattano in his official capacity are duplicative of the claims against the City of Perth Amboy, they should be dismissed in their entirety, with prejudice.

## III.    PLAINTIFF'S COMPLAINT AGAINST THE INDIVIDUAL DEFENDANTS IS SUBJECT TO DISMISSAL AS AN IMPROPER GROUP PLEADING.

Time and time again, this Courts has made clear that "group pleadings"—those that direct broad allegations against many defendants without specifying the actions or alleged bases for liability of each party—are impermissible and complaints that contain them "are insufficient to survive a motion to dismiss." Bussinelli v. Twp. of Mahwah, No. 23-21519, 2024 WL 3755914, at *3 (D.N.J. Aug. 12, 2024); see McLeod v. Fifth Jud. Dist. of Pa., No. 20-1362 (MAS)(TJB), 2022 WL 13986832, at *2 (D.N.J. Oct. 24, 2022) (group pleadings "are insufficient to sustain a claim as a matter of law"); Darby v. N.J. Dep't of Corrs., No. 20-1360 (MAS) (TJB), 2023 WL 6890911, at *4 (D.N.J. Oct. 19, 2023). This is especially true in civil rights cases, where every defendant "must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Iqbal, 556 U.S. at 676 ("a plaintiff must plead that **each** . . . defendant, through the official's **own individual actions**, has violated the Constitution.") (emphasis added).

"Allegations of participation or actual knowledge and acquiescence . . . must be made . . . with appropriate particularity." Rode, 845 F.2d at 1207. When a complaint names multiple defendants, the plaintiff cannot merely refer to all defendants "without specifying 'which defendants engaged in what wrongful conduct.'" Bussinelli, No. CV 23-21519, at *3 (quoting Falat v. Cnty. of Hunterdon, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013)). For instance, in Bussinelli, the Court dismissed a complaint that only asserted legal conclusions about nine named defendants' involvement "without specifying facts as to the particular misconduct alleged or their specific role in the alleged misconduct." Id. "This style of pleading fails to place individual defendants on notice of the particular claims against them." Id.

Here, Plaintiff brings claims against thirteen Defendants: ten named and three fictitious. In eleven of the sixteen counts, Plaintiff impermissibly pleads against all seven Individual Defendants

6

without putting any one of them on notice of their specific personal involvement. Half the Individual Defendants' names do not even appear in the pleading except in the section "PARTIES," and most of the rest are named only in Plaintiff's recounting of ordinary police procedure, such as directing Plaintiff to get out of his car during the traffic stop (Det./Sgt. Guzman [see Dkt. 1, ¶¶ 52-53]) or communicating with fellow officers (Det. Batista, [id.]). In all other respects, accusations against the officers come in the form of legal conclusions—for example, that Det./Sgt. Guzman stopped Plaintiff without "any legal basis" and arrested him with "no probable cause" [see id., ¶¶ 51, 53]—which are insufficient as a matter of law and fail in the specificity required by this Court's repeated admonitions against group pleading. See supra, at 4, 6.

Plaintiff having failed to "identify each defendant's role for the alleged wrong," McLeod, supra, at *2, the Complaint should be dismissed as against each of the individual Defendants.

## IV.    QUALIFIED IMMUNITY PROTECTS THE INDIVIDUAL DEFENDANTS.

As this Court is well aware, government officers "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). The scope of qualified immunity is wide, providing "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Its protections shield officers even for acts based on "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). This specifically includes instances where officers "reasonably but mistakenly conclude that probable cause is present." Anderson v. Creighton, 483 U.S. 635, 641 (1987); see also Lozano v. New Jersey, 9 F.4th 239, 246 (3d Cir. 2021) (qualified

immunity applies where it was "objectively reasonable" for the officer to believe probable cause existed). In short, where officers act in a good faith attempt to carry out the law, they are entitled to qualified immunity. Signorile v. City of Perth Amboy, 523 F.Supp.2d. 428, 433 (D.N.J. 2007).

"The qualified immunity standard is one of 'objective legal reasonableness.'" Blaylock v. City of Phila., 504 F.3d 405, 411 (3d Cir. 2007) (quoting Harlow, 457 U.S. at 816-17). An officer's "subjective motivation" is irrelevant. Id. Rather, the Court must consider whether, in light of the information the officers possessed, "a reasonable officer could have believed that probable cause existed." Hunter v. Bryant, 502 U.S. 224, 228 (1991). **<u>Observation of a single hand-to-hand drug transaction has been held sufficient to constitute reasonable suspicion to stop and probable cause to arrest.</u>** United States v. Willis, No. CR 23-353, 2024 WL 2158253, at *5 (E.D. Pa. May 14, 2024) (emphasis added); see also United States v. Allison, No. CR 23-76, 2024 WL 3385083, at *8 (W.D. Pa. July 11, 2024) (probable cause after observing defendant engage in an apparent hand-to-hand transaction and then found narcotics on suspected buyer); United States v. Parker, No. 05-CR-702, 2006 WL 964488, at *3 (E.D. Pa. Apr. 13, 2006) (officer "had probable cause to arrest and . . . search Defendant incident to the lawful arrest because [the officer] had observed Defendant engaged in what a reasonable officer would believe to be a drug transaction").

Here, Plaintiff's own telling of events is more than enough to find that "a reasonable officer could have believed that probable cause existed" for all the conduct alleged to have been wrongful: the stop, the arrest, and the confiscation of the arrestee's chattels including his firearm. [See Dkt. 1, ¶¶ 38-54; Dkt. 1-7]. Thus, manifestly, the Individual Defendants are entitled to qualified immunity. See, e.g., Hunter, 502 U.S. at 228-29. Such a finding is further supported by the incident reports of Det. Batista and Det./Sgt. Guzman, both of which were filed with Plaintiff's Verified Complaint and thus may be considered by the Court in its ruling. See supra, 4.

Since "qualified immunity is '**an immunity from suit rather than a mere defense to liability** . . . it is effectively lost if a case is erroneously permitted to go to trial.'" Id. (emphasis added) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Accordingly, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," "prior to discovery." Hunter, 502 U.S. at 227.

Accordingly, the police officers and officials in this case are protected by qualified immunity and—that question being amenable to resolution on a Rule 12(b) motion—the Individual Defendants are entitled to dismissal of the Complaint against them.

## V.    EACH OF PLAINTIFF'S FEDERAL CLAIMS FAILS TO STATE A CLAIM.

### A.  Plaintiff's "False Arrest" Claim (Count One) Fails.

Plaintiff's claim for "false arrest" fails to state a claim. A "*federal* false-arrest claim under § 1983 fails [when] the officers certainly had probable cause to believe [the person arrested] had violated" the law. Brown v. Makofka, 644 Fed.Appx. 139, 143 (3d Cir. 2016) (emphasis in original).[3] "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

Here, as amply demonstrated above, officers had probable cause to stop Bellinger after his streetside transaction with Appice, and did so in good faith. Supra, 2-3. Further, a Complaint Summons was issued, supported by an Affidavit of Probable Cause, and the matter was identified and pursued for prosecution by attorneys of the Union County Prosecutor's Office. [Dkt. 1, ¶¶ 90-99; Dkt. 1-7]. Good faith and probable cause, defenses to common law actions for false arrest and

---

[3] In Brown, in fact, the violation was nothing more than an infraction of New Jersey's motor vehicle laws, and the federal false arrest claim failed even though the offense warranting the stop was different from the one for which Brown was arrested and charged. See id.

imprisonment, are also available to police officers in a § 1983 action. <u>Pierson v. Ray</u>, 386 U.S. 547, 555 (1967). Accordingly, Count One fails and should be dismissed.

### B.  Count Two, Plaintiff's "Malicious Prosecution" Claim, Fails.

Count Two of the Complaint alleges malicious prosecution against all individual Defendants in violation of 42 U.S.C § 1983. [Dkt. 1, ¶¶ 122-27]. To establish a claim of malicious prosecution, a plaintiff must show:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in [the] plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

<u>Lozano</u>, 9 F.4th at 247 (quoting <u>Harvard v. Cesnalis</u>, 973 F.3d 190, 203 (3d Cir. 2020)). Here, probable cause clearly existed and, for that reason alone, Count Two must be dismissed. But, even if probable cause did not exist, this claim still fails because the officers are entitled to qualified immunity. <u>See supra</u> § IV; <u>Lozano</u>, 9 F.4th at 246 (quoting <u>Anderson</u>, 483 U.S. at 641) ("Ultimately, officers are entitled to qualified immunity when they 'reasonably but mistakenly conclude that probable cause is present.'"). Further, Plaintiff fails to set forth any factual material showing any individual Defendant acted maliciously or for any reason other than bringing Plaintiff to justice based upon the transaction observed and the discovery of crack cocaine in Mr. Appice's vehicle immediately thereafter. For these reasons, Count Two must be dismissed.

### C.  Count Three Should Be Dismissed As Improperly Compound And Because It Fails To State A Claim And To Overcome Defendants' Qualified Immunity.

Count Three—for "§§ 1983 and 1981 Selective Enforcement, and False Arrest and Malicious Prosecution Due to Race/Color/National Origin"—fails for myriad reasons.

First, as its very title concedes, the count is improperly compound. The Rules of Civil

Procedure and standards of pleading require that each count be singular in order to put the defendant(s) on notice of the allegations against them. One of the improper types of pleading identified by some Courts as a "shotgun pleading" that does not "separate[e] into a different count each cause of action or claim for relief." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015). "[T]his type of shotgun pleading likely runs afoul of Rule 10(b)." Id. at 1323, n.13; see FED. R. CIV. PRO. 8. Here, a single count asserts claims under two federal statutes and three different theories of tort, then leaves Defendants guessing whether the alleged basis of their unconstitutional or tortious conduct is Plaintiff's "[r]ace," "[c]olor," or "[n]ational [o]rigin"— or, reading further into the count, whether he was "an African American man . . . operating a late model luxury vehicle"! [Dkt 1. ¶ 129]. Plaintiff's failure to follow the rules of pleading has resulted in Defendants not being put on adequate notice as to the allegations asserted against them. So improperly pled, this Count is subject to dismissal. See, e.g., Lipman v. Arfield, 33 A.2d 703, 704 (N.J. 1943) (granting defense motion to strike the complaint for alleging incompletely two causes of action in the same count). Count Three should be dismissed for that cause alone.

Further, Plaintiff fails to present an actionable theory of selective enforcement. While § 1981 "provid[es] extensive rights," it does not create a cause of action. McGovern v. City of Phila., 554 F.3d 114, 116 (3d Cir. 2009) (citing Jett v. Dallas Indep. School Dist., 491 U.S. 701, 731 (1989)); Goodall-Gaillard v. N.J. Dep't of Corrs., 625 Fed.Appx. 123, 128 (3d Cir. 2015) ("§ 1981 does not provide a private right of action against state actors."). Rather, "the exclusive federal remedy against state actors" is Section 1983. McGovern, 554 F.3d at 116. To raise a claim of selective enforcement thereunder, a plaintiff must establish "(1) that other similarly situated violators of [an] ordinance or law were treated differently, and (2) that this disparate treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor.'"

Goodall-Gaillard, 625 Fed.Appx. at 127. This includes identifying the "ordinance or law at issue." Id. The plaintiff must "provide evidence of **discriminatory purpose, not mere unequal treatment** or adverse effect." Suber v. Wright, 574 Fed.Appx. 207, 212 (3d Cir. 2014) (quoting Jewish Home v. Ctrs. for Medicare & Medicaid Servs., 693 F.3d 359, 363 (3d Cir. 2012)) (emphasis added). "[P]arties are 'similarly situated' for Equal Protection Clause purposes when 'they are alike in all relevant aspects.'" Id. (quoting Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008)). Here, Plaintiff's conclusory pleading fails to provide any "evidence of discriminatory purpose," or to demonstrate that he was subjected to different treatment than a similarly-situated violator of a different "[r]ace," "[c]olor," or "[n]ational [o]rigin." [Complt., ¶ 129].

Finally, like all of Plaintiffs' claims that rely upon § 1983, this Count is subject to the qualified immunity defense that so manifestly protects Defendants in this case. See supra, § IV.

**D.  Count Four, For Denial of Plaintiff's Second Amendment Rights, Fails.**

In Count Four, Plaintiff baldly alleges that Defendants "rel[ied] on his [allegedly] false arrest to seize his legal firearm" and thereby "interfered with and effectively denied Plaintiff his rights guaranteed under the Second Amendment." [Dkt. 1, ¶ 137]. Plaintiff further asserts that, by seizing his firearm, Defendants "violated the property rights . . . guaranteed to him under the Fifth and Fourteenth Amendments to the Constitution of the United States." [Id. at ¶ 138]. But Plaintiff has no basis for this compound claim, and therefore it must be dismissed.

Under New Jersey law, "firearms which are unlawfully possessed, carried, acquired or used" are nevertheless "**subject to forfeiture and no property right shall exist in them**." N.J.S.A. 2C:64-1 (emphasis added). Officers are permitted to seek forfeiture of "property that has been used or is intended to be used in furtherance of unlawful activity." State v. Melendez, 240 N.J. 268, 279 (2020); see United States v. Rahimi, 144 S. Ct. 1889, 1903 (2024) ("An individual

12

found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment."). Here, the PAPD seized the firearm that was in Plaintiff's possession **upon his arrest** and then held the firearm "until the dismissal of all charges against him on February 1, 2024." [Dkt. 1, ¶ 36]. As amply demonstrated, Defendants arrested and charged Plaintiff based on probable cause of his involvement in a drug transaction. Supra, 2-3. Thus, by possessing a firearm while engaging in an unlawful activity—or, at the very least, in a circumstance where Defendants reasonably believed he was engaging in unlawful activity—Plaintiff lost any property rights in his firearm; the firearm was subject to being seized upon his arrest and held by law enforcement authorities pending resolution of the charges against him. See N.J.S.A. 2C:64-1. In other words, seizing Plaintiff's firearm was entirely lawful.

Moreover, by Plaintiff's own admission, the firearm was returned to him once the charges against him were dismissed. [Dkt. 1, ¶ 36]. Thus, Plaintiff has no basis to raise a Second Amendment claim as his rights were not violated and as Count Four is now moot.

Finally, consider the policy implications of Plaintiff's position: Plaintiff asserts that an arrested person's firearm—the central piece of physical evidence, and instrumentality of the crime—**should be returned to him while his criminal prosecution is still on-going** for possession or for using the firearm in the commission of other crimes. That position is an invitation to the destruction of evidence by criminal defendants and should not be entertained by this Court.

### E.  Count Five Should Be Dismissed As Improperly Compound, As A Group Pleading, And Because It Fails To State A Claim And To Overcome Qualified Immunity.

Count Five of the Complaint, in which Plaintiff asserts "42 U.S.C. § 1983 Unreasonable Seizure Under the Fourth Amendment, Denial of Due Process Under the Fifth, Sixth, and Fourteenth Amendments, and Denial of Right to be Free of Excessive Fines under the Eighth Amendment," fails for a combination of the reasons already stated. Like Count Three, it is

improperly compound and therefore subject to dismissal. See supra, 10-11. It is also dismissible as an improper group pleading: it accuses all the "Individual Defendants" of knowledge and actions without offering specific allegations against any single Defendant. See supra, § III.

Plaintiff fails entirely to make out a claim under the "excessive fines" clause of the Eighth Amendment. "By its plain language, the Excessive Fines Clause . . . is violated only if the disputed fees are both 'fines' and 'excessive.'" Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 420 (3d Cir. 2000) (citing United States v. Bajakajian, 524 U.S. 321 (1998)). "The term 'fine' refers to punishment for a criminal offense," and a fine is "excessive" only when it is "grossly disproportional to the gravity of a defendant's offense." Id. at 420-21 (quoting Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 265 (1989); Bajakajian, 524 U.S. at 333). Here, Bellinger's loss of "his liberty and property, including his automobile and his lawful handgun" [Dkt. 1, ¶ 144], is not a fine at all: it is not a monetary penalty, and the handling of the automobile and handgun post-arrest are nothing more than ordinary police procedure. Thus, he fails to state an Eighth Amendment claim. Plaintiff also fails to state a due process claim: the Count fails even to say what process he alleges he was denied other than his right not to be arrested after police observed his transaction with Appice and found narcotics on Appice. Supra, 2-3.

Finally, for all the reasons set forth above, Defendants' conduct is protected by the doctrine of qualified immunity. See supra, § IV. Accordingly, Count Five should be dismissed.

### F.  Count Six Fails To State A Claim Against Any Defendant.

In Count Six, Plaintiff asserts a claim for "Failure to Intercede" against the Individual Defendants and Chief Cattano. [Dkt. 1, ¶¶ 148-52]. To establish this claim under § 1983, a plaintiff must show a constitutional violation took place in the presence of an officer and that the "officer had a reasonable opportunity to intervene and simply refused to do so." Smith v. Mensinger, 293

F.3d 641, 650 (3d Cir. 2002); <u>White v. City of Vineland</u>, 500 F.Supp.3d 295, 304-05 (3d Cir. 2020) ("the plaintiff must have demonstrated that his underlying constitutional rights were violated, that the officer had a duty to intervene, and that the officer must have had a realistic and reasonable opportunity to intervene"). This requires the "officer had 'actual knowledge and acquiescence.'" <u>Mensinger</u>, 293 F.3d at 650 (quoting <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1194 (3d Cir. 1995)).

Count Six fails for myriad reasons, not least of which is the fact that—because, like so many other claims, it is improperly asserted against an undifferentiated group of officers—Plaintiff fails to identify the moments at which a constitutional violation was taking place, that each Defendant was even present at that moment, and how under the circumstances any "officer . . . had a realistic and reasonable opportunity to intervene" but did not. <u>White</u>, 500 F.Supp.3d at 344-05. Indeed, nothing in Plaintiff's account even attempts to place Chief Cattano or other specific officers into any sort of narrative flow that would support this claim. Rather, Plaintiff provides only bald conclusory allegations and recitations of the elements. [<u>See</u>, <u>e.g.</u>, Dkt 1 at ¶ 149]. This fails the most basic tests of a pleading under Rule 12(b)(6). <u>See</u> <u>supra</u>, § I.

Count Six also fails for all the same reasons as Plaintiff's other claims: Perth Amboy police officers acted on probable cause and in compliance with New Jersey law in everything they did.

**G.  Plaintiff's "Civil Rights Conspiracy" Count Fails To State A Claim.**

Next, Plaintiff reimagines his narrative as a conspiracy entitling him to relief under § 1983. "The elements of a conspiracy are that two or more persons conspire to deprive a person of constitutional rights, one or more of the conspirators performs any overt act in furtherance of the conspiracy, and the overt act injures the plaintiff or deprives him of any rights or privileges . . ." <u>Lankford v. City of Clifton Police Dep't</u>, 546 F.Supp.3d 296, 317 (D.N.J. 2021) (citing <u>Barnes Found. v. Twp. of Lower Merion</u>, 242 F.3d 151 (3d Cir. 2001)). To raise such a claim, the plaintiff must establish "the existence of a conspiracy and a deprivation of civil rights in furtherance of the

conspiracy by a party to the conspiracy" as well as "the period of the conspiracy, the object of the conspiracy, and certain overt acts of the alleged conspirators taken to achieve that purpose." Id.

All the "overt acts" Plaintiff alleges amount to mere legal conclusions themselves—such as that the Individual Defendants "[f]alsely arrest[ed] and imprison[ed]" Bellinger, "[f]abricat[ed] inculpatory evidence," and "[c]omit[ted] perjury." [Dkt. 1, ¶ 153]. Stripped of the conclusory adverbs that lard each sub-paragraph, Plaintiff simply describes his own arrest and prosecution. No rationale or "object of the conspiracy" is ever offered, nor does Plaintiff adequately specify the acts of each officer—particularly Chief Cattano—to make out a claim. For all these reasons, and in the absence of an underlying constitutional violation, Count Seven must fail.

### H. Count Eight, For Supervisory Liability Against Cattano And Jiminez, Fails.

Count Eight, which asserts "§ 1983 Supervisory Liability" against Chief Cattano and Lieutenant Jimenez, also fails for multiple reasons. At its core, it is an attempt to bootstrap an unavailable claim against the City—*respondeat superior* liability for the actions of the Individual Defendants—by baldly asserting that the officers' alleged misconduct was the result of a sense of "impunity" resulting from an "environment in which they were not adequately trained supervised, nor disciplined by Defendants Cattano and Jimenez and other supervisors." [Dkt. 1, ¶ 159]. In fashioning the allegation to include unnamed "other supervisors," Plaintiff essentially admits his failure to meet the threshold pleading standard: Because there is no vicarious liability under § 1983, "a plaintiff must plead that **each** Government-official defendant, through the official's **own individual actions**, has violated the Constitution." Iqbal, 556 U.S. at 676 (emphasis added). To even arguably state a claim, Plaintiff's pleading would have to specify (1) how each officer "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations," or, (2) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which

directly caused [the] constitutional harm." A.M. ex rel. J.K.M. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)); see also, e.g., Santiago, 629 F.3d at 135 (dismissing supervisor liability claim against police chief because plaintiff failed to allege that he was a final policymaker, that a single act or single decision of the chief constituted municipal policy, and that that policy was the source of plaintiff's injury). In Plaintiff's Complaint, however, Cattano's name appears only in the "PARTIES" section and in paragraphs which offer no specific or individual narrative but only "[t]hreadbare recitals of the elements of a cause of action" and "conclusory statements." Iqbal, 556 U.S. at 678; [See, e.g., Dkt. 1, ¶¶ 20-22]. Lieutenant Jimenez's role in Plaintiff's narrative has nothing to do with his status as a supervisor or policymaker, but only as a source of allegedly-incorrect police information. [Id., ¶¶ 23, 56].

"Moreover, '[w]here the policy concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to "deliberate indifference" to the rights of persons with whom those employees will come into contact.'" Janowski, 259 F.Supp.3d at 128 (alteration in original) (quoting Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014)). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011). Here, having failed even to specify a supervisory action, Plaintiff cannot have stated a valid cause of action for supervisory liability.

Plaintiff therefore has no valid supervisory liability claim against Chief Cattano or Lieutenant Jimenez and Count Eight should be dismissed.

### I. Plaintiff's Monell claim, Count Nine, Fails Because Plaintiff Fails To Support Any Allegation Of An Official Policy, Practice, Or Custom.

As the Supreme Court made clear in Monell v. Dep't of Social Servs., 436 U.S. 658, 694

(1978), "there can be no § 1983 liability under a *respondeat superior* theory." Rather, local governments "may be sued under § 1983 only for acts implementing an official policy, practice or custom." <u>Losch v. Borough of Parkesburg, Pa.</u>, 736 F.2d 903, 910 (3d Cir. 1984); <u>see</u> <u>Monell</u>, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

In such a case, the plaintiff must identify the challenged policy or custom and "show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." <u>Bielevicz</u>, 915 F.2d at 850. Then, the plaintiff must establish that "the policy or custom was the 'proximate cause' of his injuries" by "demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges." <u>Est. of Roman v. City of Newark</u>, 914 F.3d 789, 798 (3d Cir. 2019); <u>Losch</u>, 736 F.2d at 910. Where a plaintiff seeks to establish municipality liability based on a custom, he or she must demonstrate "that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure . . . led to their injury." <u>Bielevicz</u>, 915 F.3d at 851. Importantly, "a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985).

Plaintiff fails to satisfy any of the clearly established requirements of a <u>Monell</u> claim. He does not identify a policy or custom, nor does he identify an official decisionmaker. He also does not, and cannot, establish "an affirmative link" between his alleged injuries and a policy or custom of the City of Perth Amboy. Instead, Plaintiff makes only broad and baseless allegations that the

PAPD, "by and through its final policymakers, maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques," which he then enumerates without any factual support. [Dkt. 1, ¶ 166].

These assertions amount to nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. They are mere legal *shibboleths*, which "are not entitled to an assumption of truth." Santiago, 629 F.3d at 130 (quoting Iqbal at 680). Without more, these allegations cannot "nudge[] [Plaintiff's] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Knowing that he cannot provide any factual basis for his allegations, Plaintiff turns to prior lawsuits from the last ten years against the City of Perth Amboy and/or the PAPD—none of which even remotely support Plaintiff's allegation of an unlawful policy or custom. [Id. at ¶ 28].

First, Plaintiff references a 2023 lawsuit in which plaintiff Jose Garcia brought false arrest and malicious prosecution claims against Perth Amboy. [Id. (citing Garcia v. Perth Amboy, 23-cv-22903-BRM-MAH)]. However, this Court **granted the defendants' motion to dismiss**, ruling on Sept. 4, 2024, that the plaintiff's allegations and arguments—that he had been wrongfully prosecuted due to police officers' investigatory missteps—were **insufficient to overcome officers' qualified immunity**. Thus, Garcia supports this motion and not Plaintiff's claims.

Plaintiff then cites several cases where the City of Perth Amboy settled with other plaintiffs, as if nominal settlements, most of them a decade old, provide a basis to conclude that today's Defendants were or would have been found to violate the law. [Dkt. 1, ¶¶ 28, 30]. On the contrary, this and other Courts have recognized that cases settle for many reasons, and the mere settlement of a case is not proof of any wrongdoing. See, e.g., Gonzalez v. Borough of Red Bank, No. CV-1813009-FLW-ZNQ, 2020 WL 2029338, at *9 (D.N.J. Apr. 28, 2020) (evidence of lawsuits that

"were never adjudicated on the merits" is insufficient to establish <u>Monell</u> liability); <u>Dennis v. City of Phila.</u>, No. 18-2689, 2024 WL 1604207, at *4 (E.D. Pa. Apr. 12, 2024) ("[A] history of lawsuits that do not establish liability is insufficient to support a <u>Monell</u> claim."); <u>Wooden v. City of Phila.</u>, No. CV 19-1054, 2022 WL 17724423, at *5 (E.D. Pa. Dec. 15, 2022) ("[S]ettled lawsuits are not probative of custom because there is no finding of liability."); <u>Pharaoh v. Dewees</u>, No. 14-3116, 2016 WL 2593842, at *5 (E.D. Pa. May 4, 2016) (quoting <u>Strauss v. City of Chicago</u>, 760 F.2d 765, 769 (7th Cir. 1985) ("[T]he fact that lawsuits . . . were filed, 'without more, indicates nothing,'")). Indeed, as the Court is surely aware, typical settlement agreements contain express language disclaiming any admission of liability.

Moreover, Plaintiff offers nothing more than the case names, settlement amount, and the claims alleged. He does not offer a single fact to establish that any of the named cases involved a policy or custom of the PAPD and, if they did, how that policy or custom was the same as the alleged policy or custom Plaintiff says caused **<u>his</u>** alleged injuries. Simply asserting that, at some time in the past, other individuals have also brought false arrest or malicious prosecution claims against the City does not give rise to <u>Monell</u> liability. Plaintiff's references to prior cases are a transparent attempt to impose liability on the City for the alleged acts of individual employees—a claim that is barred at law. <u>See</u>, <u>e.g.</u>, <u>Adams v. City of Camden</u>, 461 F.Supp.2d 263, 267 (D.N.J. 2006) (municipalities cannot be held liable under § 1983 on a *respondeat superior* theory).

Because the Complaint fails to identify a policy or custom that has "the force of law" and because it fails to establish a "causal link" between any such policy or custom and Plaintiff's injury, Plaintiff's claims against Perth Amboy should be dismissed in their entirety, with prejudice.

### J.  Plaintiff's Second <u>Monell</u> Claim Is Not Pleaded Against The City, Or, If It Is, Should Be Dismissed For The Same Reasons As Count Nine.

The heading of Plaintiff's "Count X" states that is it pleaded "Against Defendant City of

Perth Amboy." However, substantially all of its narrative paragraphs are directed against the Middlesex County Prosecutor's Office ("MCPO"). [See Dkt. 1, ¶¶ 171-73; but see ¶ 174]. Curiously, and despite the fact that Plaintiff makes various allegations against MCPO, including that he was "maliciously prosecuted" [see, e.g., id. ¶¶ 80-81, 111, 122-24], the MCPO is not named as a defendant in this action. Count Ten should therefore be dismissed. If Plaintiff did intend to plead Count Ten against the City, it is subject to dismissal for all the same reasons as Count Nine.

## VI.    EACH OF PLAINTIFF'S STATE LAW COUNTS FAILS TO STATE A CLAIM.

Upon dismissing all of Plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over the remining claims. 28 U.S.C. § 1367(c)(3). Plaintiff's state law claims are also subject to dismissal for the reasons set forth below.

### A.    Plaintiff's Claim Under the New Jersey Civil Rights Act (Count Twelve)[4] Fails For All The Same Reasons As His § 1983 Claims.

Count Twelve of Plaintiff's pleading asserts a claim under the N.J. Civil Rights Act, N.J.S.A. 10:6-2 ("NJCRA"). Like virtually all of Plaintiff's counts, it is an improper group pleading that fails to provide any Defendant with adequate notice of the wrongs he or she allegedly committed. See supra, § III. It also fails for all the same reasons as Plaintiff's § 1983 claims.

New Jersey Courts have recognized the NJCRA as a State law analogue of § 1983, and therefore look to federal law on § 1983 as precedent. See Perez v. Zagami, LLC, 218 N.J. 202, 212 (2014); Tumpson v. Farina, 218 N.J. 450, 474 (2014); Trafton v. City of Woodbury, 799 F.Supp.2d 417, 443-44 (D.N.J. 2011). As such, NJCRA claims are subject to all of the same standards and defenses as § 1983 claims. In this case, that means Count Twelve should be dismissed for all the

---

[4] Beginning after the heading "STATE LAW CLAIMS," Plaintiff has erroneously numbered the Counts of his Complaint. Plaintiff pleaded ten federal counts (I-X), but then began his state law counts incorrectly at nine (IX) rather than correctly at eleven (XI). To avoid confusion between claims, this brief renumbers Plaintiff's state law claims as eleven through sixteen (XI-XVI).

reasons already set forth, including but not limited to the protections of qualified immunity enjoyed by the Individual Defendants. See supra, § IV.

### B. Plaintiff's Common-Law Tort Claims Are Barred By The N.J. Tort Claims Act.

Plaintiff's failure to comply with the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. ("NJTCA" or "TCA"), dooms all of his pendent state-law tort claims: Counts XI, XIII, and XIV.

The guiding principle of the NJTCA is that "immunity from tort liability is the general rule and liability is the exception." D.D. v. Univ. of Med. & Dentistry of New Jersey, 213 N.J. 130, 134 (2013). The NJTCA "imposes strict requirements upon litigants seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463, 468 (2011). A claimant must file a timely notice of a claim that satisfies those requirements, or the claim is "forever barred." N.J.S.A. 59:8-8. In four different respects, Plaintiff's failure to comply with the NJTCA's strict requirements dooms his tort claims to dismissal as "forever barred."

### 1. Dismissal Is Required Because Plaintiff Did Not File A Notice Of Claim With The City Or Name The City As A Responsible Party In His Notice Of Claim.

The Complaint must be dismissed because Plaintiff's notice of claim is deficient for two reasons. First, Plaintiff did not serve notice **upon the City**. Secondly, and distinctly, Plaintiff did not **name the City** as a responsible party in the notice it did file.

One of the NJTCA's requirements is that, if the claim is against a local public entity, the notice "shall be filed with that entity." N.J.S.A. 59:8-7. The New Jersey Supreme Court in McDade required "strict application" of the notice requirement, holding that the notice of claim must be served on the specific local entity alleged to be liable. McDade, 208 N.J. at 476; see also O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 345 (2019) ("notice . . . must 'be filed **directly** with the **specific local entity at issue**.'") (emphasis added) (quoting McDade, 208 N.J. at 476). McDade affirmed summary judgment for the township municipal utility authority, holding that timely service upon

the incorrect public entity (the township) "did not absolve plaintiffs of the obligation to promptly identify the [proper municipal entity] and serve a timely notice of claim." McDade, 208 N.J. at 479; see also Madej v. Doe, 194 N.J. Super. 580 (Law Div. 1984).

Here, Plaintiff's claims are claims asserted against the City and its employees, but Plaintiff **never served the City with a Notice of Tort Claim**. Rather, Plaintiff served the Office of the Attorney General, the Middlesex County Counsel, the Middlesex County Prosecutor, and Perth Amboy Police Department. [Dkt. 1, ¶ 110]. Under N.J.S.A. 59:1-3 and 59:8-2, a city is a distinct "local public entity." Madej at 588. Therefore, Plaintiff was required to serve a separate notice of claim upon the City. He failed to do so. Thus, the Complaint must be dismissed as against the City.

Moreover, Plaintiff's notice does not name the City as an entity alleged to have caused Plaintiff's injuries. [See Dkt. 1-16]. This, too, is cause for dismissal against the City. See Clagett v. Mack-Cali Realty Corp., No. A-2036-21, 2024 WL 2312822 (App. Div. May 22, 2024) (notice served upon the City that did not name the City as a responsible party did not put the City on notice to investigate a claim against it; affirming dismissal for deficient notice).

### 2. Plaintiff's Notice of Claim Was Untimely.

Counts XIII, XIV, and XV—the last of which is fashioned as a "*respondeat superior*" claim against the City based upon the preceding tort claims against the Individual Defendants— all allege torts against public entities and individuals. A notice of claim was therefore required to be filed within **ninety days from the date of accrual** of the asserted cause of action. N.J.S.A. 59:8-8.

New Jersey case law is clear that these torts accrue on the date of the arrest. See Geissler v. City of Atl. City, 198 F.Supp.3d 389, 401-02 (D.N.J. 2016) (dismissing as untimely plaintiff's claims for negligence and emotional distress); Bayer v. Twp. of Union, 414 N.J. Super. 238, 259 (App. Div. 2010) ("[T]he law is well settled that a claim for false arrest accrues on the date of the arrest."). Here, Plaintiff alleges he was arrested on September 8, 2023, and again on September

12, 2023. Thus, the NJTCA's 90-day notice period expired December 2023. Plaintiff did not file his notice of claim until April 11, 2024. [Dkt. 1, ¶ 110].

The notice requirements of the TCA function as a statute of repose; a plaintiff who fails to comply with the prescribed procedure is "**forever barred** from recovering against a public entity or public employee." N.J.S.A. 59:8-8 (emphasis added); Barbieri v. Mayer, No. A-0362-14T1, 2015 WL 9263849, *3 (App. Div. Dec. 21, 2015). While the notice period may be extended up to a year under "extraordinary circumstances," N.J.S.A. 59:8-9, even that time has now passed. Moreover, Courts have consistently declined to find extraordinary circumstances based upon a Plaintiff's ignorance of the ninety-day deadline or his counsel's inattentiveness or administrative failings. See, e.g., Zois v. N.J. Sports & Expo. Auth., 286 N.J. Super. 670, 674 (App. Div. 1996).

Accordingly, Plaintiff's tort claims are "forever barred" and should be dismissed.

### 3. All Tort Claims Arising From Events Other Than Plaintiff's Arrest And Prosecution Must Be Dismissed.

The NJTCA requires that the notice state the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide a "general description of the injury, damage or loss incurred so far as it may be known at the time of the presentation of the claim." N.J.S.A. 59:8-4(c) and (d); see Velez v. City of Jersey City, 180 N.J. 284, 294 (2004). In Panarello v. City of Vineland, 160 F.Supp.3d 734 (D.N.J. 2016), the District Court interpreted these provisions to bar **all** of plaintiffs' tort claims that arose subsequent to arrestee's arrest because plaintiffs' notice of claim failed to refer to anything beyond warrantless entry and excessive force at the time of his arrest. Id. at 744-47. Here, Plaintiff's notice describes circumstances surrounding his arrest and prosecution but fails to provide notice of any of his claims arising from circumstances outside of those events, including claims regarding his property. Thus, as in Panarello, all tort claims arising from events other than Plaintiff's arrest and prosecution are "forever barred."

**4.    Plaintiff Failed To Allege Damages That Satisfy The Minimum Requirements Under The NJTCA To Recover Against A Public Entity.**

The NJTCA bars pain and suffering damages unless specific threshold qualifications—referred to as the "verbal threshold"—of both severity and cost are satisfied. See Hoag v. Brown, 397 N.J. Super. 34, 57 (App. Div. 2007). To recover damages for pain and suffering against a public entity, a plaintiff must prove a "permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00." N.J.S.A. 59:9-2(d); Gilhooley v. Cnty. of Union, 164 N.J. 533, 541 (2000) ("(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial"). The severity and cost requirements of the TCA are conjunctive. Lesende v. Borrero, No. 06-4967 (DRD), 2010 WL 892183, *7 (D.N.J. Mar. 8, 2010), order vacated in part on reconsideration, No. 06-4967 (DRD), 2010 WL 2015252 (D.N.J. May 19, 2010).

The verbal threshold in the NJTCA is intended to bar recovery for mere "subjective feelings of discomfort." Ayers v. Twp. of Jackson, 106 N.J. 557, 571 (1987); see also Mercado v. State, 212 N.J. Super. 487, 493-94 (Law Div. 1985). For a plaintiff to overcome the threshold, "not only must there be verifiable objective manifestations of emotional distress, but those manifestations must be verified by physical examination and observation of a physician." Randall v. State, 277 N.J. Super. 192, 197 (App. Div. 1994); see also Marion v. Borough of Manasquan, 231 N.J. Super. 320 (App. Div. 1989). In Ramirez v. United States, 998 F.Supp. 425, 437-38 (D.N.J. 1998), the Court granted county officials' motion to dismiss a plaintiff's tort claims for false arrest and imprisonment, intentional and negligent infliction of emotional distress, and negligence, reasoning that, because the plaintiff "made no allegation that he has sustained any physical injury or received any medical treatment because of his arrest and imprisonment," he therefore did not "allege[] recoverable damages under the New Jersey Tort Claims Act." Likewise, Plaintiff here has made

no allegation of any physical injury or received any medical treatment. Accordingly, the NJTCA

requires that Plaintiff's tort claims be dismissed. See, DelaCruz v. Borough of Hillsdale, 183 N.J.

149, 164-65 (2005); Thigpen v. City of E. Orange, 408 N.J. Super. 331, 342-44 (App. Div. 2009).

### C. Plaintiff's Emotional Distress Claim (Count Thirteen) Also Fails To State a Claim Under New Jersey Law.

Plaintiff's thirteenth Count alleges intentional, reckless, or negligent infliction of emotional

distress against the Individual Defendants and Chief Cattano. [Dkt. 1, ¶¶ 128-86]. This claim fails

for multiple reasons. As explained above, it is barred due to Plaintiff's failure to comply with the

NJTCA and to satisfy the verbal threshold. It is also an improper group pleading that fails to give

Defendants any notice of the specific wrongs he or she allegedly committed and must be dismissed

for that reason. See supra, § III. Additionally, because Chief Cattano is named only in his official

capacity, a claim of intentional infliction of emotional distress against him cannot be sustained.

Warnett v. Corr. Med. Svcs., No. 07–1291, 2008 WL 930739, at *7 (D.N.J. Mar.31, 2008)

("[C]ourts in this District have interpreted Section 59:2–10 of the New Jersey Tort Claims Act to

bar public entities from liability for claims of . . . intentional infliction of emotional distress.")).

Beyond that, Plaintiff fails to provide any factual basis to satisfy the elements of claims of

intentional or negligent infliction of emotional distress ("IIED"/"NEID").

To bring a NEID claim, the "plaintiff must demonstrate that the defendant's negligent

conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to

emotional distress that resulted in substantial bodily injury or sickness." Thomas v. E. Orange Bd.

of Edu., 998 F.Supp.2d 338, 355 (D.N.J. 2014) (citing Jablonowska v. Suther, 195 N.J. 91 (2008));

Booker v. New Jersey, No. 04-4262 (WHW), 2006 WL 8458223, at *4 (D.N.J. Jan. 10, 2006)

(same) "[W]here fright does not cause substantial bodily injury or sickness, it is to be regarded as

too lacking in seriousness and too speculative to warrant the imposition of liability." Thomas, 998

F.Supp.2d at 355-54 (quoting Jablonowska, 195 N.J. at 103). The Complaint containing no such allegation, Plaintiff's claim of negligent infliction of emotional distress must fail.

Similarly, the Complaint does not establish the requirements of an IIED claim. See Lacy v. Cooper Hosp./Univ. Med. Ctr., 745 F.Supp. 1029, 1034 (App. Div. 1990). Notably, the standard for establishing an IIED claim is high—and Plaintiff falls far short of meeting it. See Rasmussen v. United States, No. CV146726KSHCLW, 2015 WL 9581874, at *7 (D.N.J. Dec. 30, 2015) (dismissing complaint alleging that an FBI agent "intentionally made numerous false accusations against him," resulting in his arrest and incarceration for "nearly two months" and "destroyed his reputation as a business owner and entrepreneur"); compare Fallen v. City of Newark, No. CV 15-2286, 2017 WL 368500, at *6 (D.N.J. Jan. 24, 2017) (establishing a claim of IIED where plaintiff alleged defendants falsely imprisoned him, verbally abused and threatened him, denied him access to the restroom resulting in plaintiff urinating on himself, and, for six months, refused to listen to the overwhelming exculpatory evidence).

Like in Rasmussen, Plaintiff makes only generalized allegations, devoid of any factual support. This is not a case of verbal or physical abuse or unconscionable mistreatment. Indeed, Plaintiff makes no allegations, nor could he, that Individual Defendants used excessive force, verbally threatened or abused him, or denied him basic needs. Rather, Plaintiff merely asserts, without any factual support, that Individual Defendants acted without probable cause. As explained at length, that is simply not the case. See supra, 2-3, 11-13. And, even if the Officers were mistake in believing probable cause existed, Plaintiff has not offered any facts showing that they acted intentionally to cause Plaintiff emotional distress, let alone that their conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Lacy, 745 F.Supp. at 1034.

Count Thirteen must be dismissed in its entirety. Any finding to the contrary would expose law enforcement to IIED claims any time they act in a good faith belief that probable cause exists.

**D. Count Fourteen Simply Re-Packages Defendants' Alleged Constitutional Violations As "Negligence," And Should Be Dismissed.**

In Plaintiff's "State Law Negligence" claim, he simply re-packages Defendants' alleged Constitutional violations as acts of negligent policing. But "failure to accurately" perform police functions [Dkt. 1, ¶ 189] is not the same as "negligently" performing police functions. The Count also fails for myriad other reasons, including its status as an improper group pleading—insufficient to place any specific defendant on notice that s/he is being sued for any specific act or failure to act. Supra, § III. Moreover, as pleaded against Chief Cattano the claim is functionally one for "*respondeat superior*" and subject to dismissal for the reasons set forth below as well.

**E. In Counts Fifteen And Sixteen, Plaintiff Concedes That All His Claims Against The City Rely Upon The Theory Of Respondeat Superior, Which Is Unavailable As To His Civil Rights Claims And Fails As To His Tort Claims.**

A "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode, 845 F.2d at 1207. Thus, in Count Fifteen Plaintiff pleads the City's liability here only as to his tort claims. Because those are subject to dismissal due to all of Plaintiffs' failures to comply with the NJTCA, and the other reasons established above, Count Fifteen should likewise be dismissed.

The same is true with respect to Count Fourteen as Plaintiff asserts it against Chief Cattano: no specific negligent act is alleged against the Chief, nor is he even sued in his individual capacity, making that count effectively a "*respondeat superior*" claim against him for the alleged negligence of his officers. For all the reasons Count Fifteen is subject to dismissal, Count Fourteen should also be dismissed as against Chief Cattano.

The Complaint's final count, Count Sixteen, raises a second *respondeat superior* claim against the City in connection with Count Twelve, his N.J. Civil Rights Act claim. [Dkt. 1, ¶ 199]. However, inasmuch as New Jersey Courts interpreting the NJCRA look to federal law on § 1983 as precedent, Tumpson, 218 N.J. at 474, the New Jersey Supreme Court has likewise ruled that liability under the NJCRA cannot be predicated solely based on a *respondeat superior* theory. Winberry Realty P'ship v. Borough of Rutherford, 247 N.J. 165, 190-91 (2021); see also Thomas, 749 F.3d at 222; Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 573 (2009) (respondeat superior liability eliminated where there was no official policy used to violate plaintiff's due process rights).

Accordingly, Count Sixteen fails both because Count Twelve fails, see supra, § VI.A, and because *respondeat superior* liability is not available on a state civil rights claim.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that Plaintiff's Verified Complaint should be dismissed as against the City of Perth Amboy, the Perth Amboy Police Department, Chief Lawrence Cattano, Lt. Carmelo Jimenez, Det. Benjamin Batista, Det./Sgt. David Guzman, Det. Kevin Savoia, Det. Yanelba Reyes, Det. Luis Almanzar, and P.O. Jessica DeJesus (collectively, "Defendants"), pursuant to FED. R. CIV. PRO. 12(b)(6).

Respectfully submitted,

**MURPHY ORLANDO LLC**
*Attorneys for Defendants*

By:  /s/  *John W. Bartlett*
        John W. Bartlett, Esq.

Dated: October 18, 2024