# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER CURTIS BELLINGER III, | Hon. Jamel K. Semper, U.S.D.J. |
| Plaintiff, | Hon. Cathy L. Waldor, U.S.M.J. |
| v. | Civil Action No. 2:24-cv-08442 |
| THE CITY OF PERTH AMBOY, et al., | |
| Defendants. | |

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO PERTH AMBOY DEFENDANTS' MOTION TO DISMISS

Kristen Santillo
Gelber & Santillo PLLC
24 Church Street, 2nd Floor
Montclair, NJ 07042
(212) 227-4743
ksantillo@gelbersantillo.com
*Attorney for Plaintiff*
*Christopher C. Bellinger*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................1

LEGAL STANDARD ...............................................................................................................5

ARGUMENT ..........................................................................................................................7

    I. Plaintiff's Complaint Is Not An Improper Group Pleading ...............................................7

    II. There Was No Probable Cause to Stop, Search, Arrest, and Prosecute Plaintiff.................9

    III. Qualified Immunity Does Not Apply .............................................................................12

    IV. Plaintiff Plausibly Alleged His Federal Claims ............................................................13

        A. False Arrest .....................................................................................................13

        B. Malicious Prosecution ......................................................................................15

        C. Racial Discrimination .......................................................................................16

        D. Unreasonable Search and Seizure ......................................................................17

        E. Excessive Fines ...............................................................................................18

        F. Denial of Due Process ......................................................................................19

        G. Failure to Intervene .........................................................................................20

        H. Conspiracy .....................................................................................................21

        I. Supervisor Liability .........................................................................................23

        J. Municipal Liability (City of Perth Amboy) .........................................................24

        K. Municipal Liability (MCPO) .............................................................................25

    V. Plaintiff Plausibly Alleged His State Claims ..................................................................26

        A. Malicious Prosecution ......................................................................................26

        B. Due Process ....................................................................................................28

        C. IIED ...............................................................................................................28

        D. NIED .............................................................................................................29

        E. Respondeat Superior .........................................................................................30

    VI. In The Alternative, Plaintiff Should Be Granted Leave to Amend ..................................30

CONCLUSION ......................................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

## **CASES**

*9 Realty LLC v. City of Phila.*, No. 21-cv-030; 2021 WL 2342929 (E.D. Pa. June 8, 2021) ....... 23

*A v. Nutter*, 737 F.Supp.2d 341 (E.D. Pa. 2010) .......................................................................... 24

*Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405 (1994) ............................................... 29

*Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998) ......................................................................... 18

*Alicea v. City of Philadelphia, No*, 22-cv-3437; 2022 WL 17477143 (E.D. Pa. Dec. 6, 2022) ... 24

*Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004) ................................... 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 6, 6

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ............................................................................. 6

*Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249 (3d Cir. 2010) .............................................. 19

*Bilecki v. Mather Inv'rs, LLC*, 2008 WL 4376372 (W.D. Mich. Sept. 22, 2008) .......................... 7

*Brackbill v. Ruff*, 2018 No. 17-CV-1046 (M.D. Pa. May 22, 2018) ...................................... 19, 20

*Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989) ............... 17

*Bryant v. Cty. of Cumberland*, 472 N.J. Super. 626 (N.J. App. Div. 2022) ................................ 26

*Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355 (N.J. 1988) ............................................... 27

*Bussinelli v. Twp. of Mahwah*, No. 23-21519, 2024 WL 3755914 (D.N.J. Aug. 12, 2024) ....... 9, 9

*Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180 (3d Cir. 2009) ..................................................... 21

*City of Canton v. Harris*, 489 U.S. 378 (1989) .......................................................................... 24

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) ....................................................... 6

*Connick v. Thompson*, 563 U.S. 61 (2011) ................................................................................. 24

*Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006) ........................................................................... 16

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ........................................................ 19

*Darby v. N.J. Dep't of Corrs.*, 2023 WL 6890911 (D.N.J. Oct. 19, 2023) .................................... 9

*Deforte v. Borough of Worthington*, 364 F. Supp. 3d 458 (W.D. Pa. 2019) ............................... 12

*Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979 (3d Cir. 2014) .............................................. 12

*Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019) ................................................ 23

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................. 29

*Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019) ............................................................. 23

*Garcia v. Perth Amboy, et al.*, 23-cv-22903 ................................................................ 4

*Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427 (3d Cir. 2005) ................................................................. 16, 21

*Gladden v. City of Phila.*, 2022 WL 605445 (2022) ........................................................ 21

*Gormley v. Wood-El*, 93 A.3d 344 (N.J. 2014) ............................................................ 27

*H2O Plus, LLC v. Arch Pers. Care Products, L.P.*, 10-3089, 2011 WL 2038775 (D.N.J. May 22, 2011) ................................................................. 7

*Halsey v. Pfeiffer*, 750 F.3d 273 (2014) ................................................................. 13, 14

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................... 11, 12

*Harvard v. Cesnalis*, 973 F.3d 190 (3d Cir. 2020) ........................................................ 15

*Holder v. City of Allentown*, 987 F.2d 188 (3d Cir. 1993) ............................................... 16

*Hotaling & Co., LLC v. Berry Solutions Inc.*, 2021 WL 4860096 (2021) ................................... 9

*Illinois v. Wardlow*, 528 U.S. 119 (2000) ............................................................... 16

*Janowsky v. City of North Wildwood*, 259 F. Supp. 3d 113 (D.N.J. 2017) ................................. 1

*JD Glob. Sales v. Jem D Int'l Partners*, No. 2:21-cv-19943 (D.N.J. July 17, 2023) ...................... 8

*Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346 (2014) .................................................. 7

*Kelley v. Reyes*, 2020 No. 19-cv-17911 (D.N.J. July 1, 2020) ............................................ 22

*Kossler v. Crisanti*, 564 F.3d 181 (3d Cir. 2009) ........................................................ 10

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ........................................................ 21

*Lascurain v. City of Newark*, 349 N.J. Super. 251 (App. Div. 2002) .......................................... 28

*LoBiondo v. Schwartz*, 970 A.2d 1007 (N.J. 2009) ........................................................ 25

*Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903 (3d Cir. 1984) .......................................... 24

*Malley v. Briggs*, 475 U.S. 335 (1986) ........................................................ 12

*Mazuka v. Rice Twp. Police Dep't*, 655 Fed. App'x 892 (3d Cir. 2016) .......................................... 14

*McDade v. Siazon*, 208 N.J. 463 (2011) ........................................................ 25

*McLeod v. Fifth Jud. Dist. of Pa.*, 2022 WL 13986832 (D.N.J. Oct. 24, 2022) ........................ 6, 9

*Merkin v. Honda N. Am., Inc.*, 2017 No. 17-cv-03625 (D.N.J. Nov. 9, 2017) .............................. 8

*Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782 (3d Cir. 2000) .................................... 14, 17, 18

*Morales v. Busbee*, 972 F. Supp. 254 (D.N.J. 1997) ........................................................ 15

*Mulholland v. Cty. of Berks*, 706 F.3d 227 (3d Cir. 2013) ........................................................ 23

*Newson v. City of New York*, 2019 WL 3997466 (E.D.N.Y. Aug. 23, 2019) .............................. 23

*Ogrod v. City of Phila.*, 598 F.Supp.3d 253 (E.D. Pa. 2022) ........................................................ 21

*Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272 (3d Cir. 2004) .................................... 1

*Palma v. Atlantic Cty.*, 53 F. Supp. 2d 743 (D.N.J. 1999) ........................................................ 14

*Parkell v. Danberg*, 833 F.3d 313 (3d Cir. 2016) ........................................................ 22

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) .................................... 6

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ........................................................ 12

*Pollock v. City of Phila.*, 403 F. App'x 664 (3d Cir. 2010) ........................................................ 13

*R.K. v. Y.A.L.E. Schools, Inc.*, 621 F. Supp. 2d 188 (D.N.J. 2008) .......................................... 21

*Rink v. Ne. Educ. Intermediate Unit 19*, 2015 No. 14-cv-02154 (M.D. Pa. Dec. 15, 2015) ........ 11

*Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir. 1988) ....................................................... 9

*Rose v. Bartle,* 871 F.2d 331 (3d Cir. 1989) ................................................................. 10

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010)........................................... 22

*Santos v. New York City*, 847 F.Supp.2d 573 (S.D.N.Y. 2012)....................................... 23

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................................... 12

*Shamberger v. Glover*, 2012 WL 12517917 (D.N.J. May 23, 2012).......................... 12, 14

*Sharrar v. Felsing*, 128 F.3d 810 (3d Cir. 1997) ........................................................ 10

*Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979 (D.N.J. Dec. 16, 2015)............................ 7

*Siehl v. City of Johnstown*, 365 F. Supp. 3d 587 (W.D. Pa. 2019) ........................... 12, 14

*Skinner v. Switzer*, 131 S. Ct. 1289 (2011) .................................................................. 7

*Slippi-Mensah v. Mills*, 2020 WL 3468039 (D.N.J. June 25, 2020)............................... 10

*Smith v. Mensinger*, 293 F.3d 641 .............................................................................. 19

*State v. Goldsmith*, 251 N.J. 399 (2022) ..................................................................... 17

*State v. Valentine*, 134 N.J. 536 (1994) ...................................................................... 11

*Stolinski v. Pennypacker*, 772 F. Supp. 2d 626 (D.N.J. 2011)....................................... 10

*Taylor v. Metzger*, 152 N.J. 490 (N.J. 1998) ................................................................ 28

*Terry v. Ohio*, 392 U.S. 1 (1968) ................................................................................ 16

*Thomas v. Independence Twp.*, 463 F.3d 285 (3d Cir. 2006) ....................................... 12

*Thorpe v. City of Philadelphia*, 2020 WL 5217396 (E.D. Pa. Sept. 1, 2020) ............... 19, 20, 21

*Timbs v. Indiana*, 203 L.Ed 2d 11 (2019) .................................................................... 18

*United States v. Cheeseman*, 600 F.3d 270 (3d Cir. 2010)........................................... 17

*United States v. Lanier*, 520 U.S. 259 (1997)............................................................... 19

*United States v. Myers*, 308 F.3d 251 (3d Cir. 2002) ................................................... 10

*Vengalattore v. Cornell Univ.*, 36 F.4th 87 (2d Cir. 2022) ........................................................ 23

*Voytko v. Ramada Inn*, 445 F. Supp. 315 (D.N.J. 1978) .............................................................. 14

*Washington v. Davis*, 426 U.S. 229 (1976) ................................................................................. 15

*White v. Brommer*, 2011 No. 09-cv-04353 (E.D. Pa. Aug. 17, 2011) ......................................... 11

*Wiley v. City of Newark, New Jersey*, 2017 WL 4678202 (D.N.J. Oct. 16, 2017) ...................... 26

*Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000) ............................................................................ 10

*Wright v. City of Phila.*, 229 F. Supp. 3d 322 (E.D. Pa. 2017) .................................................... 22

*Yu-Chin Chang v. Upright Fin. Corp.*, 2020 WL 473649 (D.N.J. Jan. 28, 2020) .......................... 7

*Zahra v. Town of Smithfield*, 48 F.3d 674 (2d Cir. 1995) ............................................................ 15

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50 (D. Mass. 2014) ........................... 8

## **FEDERAL RULES**

Federal Rules of Civil Procedure Rule 8 ............................................................................ 6, 6, 7

Federal Rules of Civil Procedure Rule 12(b) ........................................................................... 5

Federal Rules of Civil Procedure Rule 15(a) ....................................................................... 1, 29

## **STATE STATUTES**

N.J.S.A. 40A:14-118 ................................................................................................................ 26

N.J.S.A. 10:6-2(c) .................................................................................................................... 27

N.J.S.A. 59:8-7 ........................................................................................................................ 25

N.J.S.A. 59:8-8 ........................................................................................................................ 26

N.J.S.A. 59:8-10 ...................................................................................................................... 26

## PRELIMINARY STATEMENT

Defendants paint Mr. Bellinger's complaint as though he alleges nothing at all. To them, it is virtually impossible to understand what happened, who was involved, or what damages he suffered as a result. That characterization–much like the lie that set off Mr. Bellinger's months of humiliation and harm–is a fiction offered to evade liability by ignoring or misconstruing the complaint's well-pled facts. Across his federal and state claims, Mr. Bellinger has provided the Defendants with exactly what they are entitled to at this stage of litigation: notice of the allegations against each and every single one of them. For this reason, Defendants' motion to dismiss should be denied.[1] In the alternative, Mr. Bellinger should be granted leave to amend his pleading pursuant to Federal Rule of Civil Procedure Rule 15(a) to correct any deficiencies identified by this Court.

## STATEMENT OF FACTS

Plaintiff Christopher Curtis Bellinger III is a law-abiding African-American citizen of Perth Amboy, New Jersey. ECF 1 at ¶ 1. He is a husband, father, and business owner. *Id.* at ¶¶ 1, 32-33. Prior to September 8, 2023, he had never been arrested or accused of a crime. *Id.* at ¶ 9. Mr. Bellinger owns and operates NDO Construction. *Id.* at ¶ 33. Through his business, he purchases homes that he renovates to sell at a profit. *Id.* For this work, he engages subcontractors and manual laborers to assist with renovations. *Id.* On the afternoon of September 8, 2023, Mr. Bellinger arranged to meet one such subcontractor–Joseph Appice–to pay Mr. Appice for carpentry work Mr. Appice had performed on NDO Construction properties. *Id.* at ¶¶ 38-39, 44.

---

[1] Mr. Bellinger concedes that the City of Perth Amboy is the proper defendant for any claims brought against the Perth Amboy Police Department and Chief Cattano, as both defendants act as arms or agents of the City. *See Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004); *Janowsky v. City of North Wildwood*, 259 F. Supp. 3d 113, 131 (D.N.J. 2017). Plaintiff agrees to voluntarily dismiss Count IV (Denial of Second Amendment Rights).

Mr. Bellinger owed Mr. Appice $180 for this work. *Id.* at ¶ 41. Mr. Bellinger and Mr. Appice agreed to meet near Harned Street and Pfeiffer Boulevard in Perth Amboy. *Id.* at ¶ 40. This location is conveniently located half a mile from Mr. Bellinger's home and around the corner from his daughter's after school program. *Id.* at ¶ 42. This is a quiet, suburban area that is not known for crime or drug activity. *Id.* at ¶ 43. Mr. Bellinger drove his luxury SUV there–a black 2019 Audi Q7 with New Jersey license plate J45-RVM. *Id.* at ¶ 44. When he arrived, Mr. Bellinger parked near Mr. Appice's 2013 Subaru Forester. *Id.* at ¶ 45. Mr. Appice exited his vehicle and walked to the passenger side of Mr. Bellinger's car. *Id.* at ¶ 46. Mr. Bellinger stayed inside his vehicle while the two men spoke for a few minutes. *Id.* at ¶ 47. Mr. Bellinger handed Mr. Appice the $180 he owed him. *Id.* at ¶ 48. Mr. Appice returned to his vehicle, and Mr. Bellinger drove away. *Id.* at ¶ 49.

All the while, undercover officers from the Perth Amboy Police Department were watching Mr. Bellinger. *Id.* at ¶ 50. According to Defendant Batista's incident report, he, Defendant Guzman, and Defendant Savoia, dressed in plain clothes and in an unmarked police vehicle, received "real time information" from Defendant Jimenez of a "potential drug deal" taking place in the area. ECF 1-7 at 2. This "real time information" was purportedly based on Defendant Jimenez's claim that 18 months prior, he saw a black Audi Q7 with New Jersey license plate J45-RVM distributing narcotics in the area. *Id.* at 8.

That was a lie. Mr. Bellinger's registration for his Audi and license plate J45-RVM were issued to him in March 2023–just six months before his arrest. ECF 1-3 at 1. Defendants fabricated Defendant Jimenez's purported prior observation to cover up illegally stopping and arresting Mr. Bellinger. ECF 1 at ¶ 24. Again and again, this lie is repeated throughout Defendant Batista's incident report, ECF 1-7 at 3, Defendant Batista's affidavit of probable

cause, ECF 1-8 at 5, Defendant Guzman's incident report, ECF 1-7 at 8, and Defendant Almanzar's incident report, *see id.* at 15. Guzman admitted in his incident report that, when he tried to corroborate Jimenez's information, he could not do so. *Id.* at 8. No incident report states that Batista, Savoia, or any other officer ever saw the men exchange any goods or money. *Id.* at 3-5, 8-9, 12, 15.

After stopping Mr. Bellinger, Guzman, Batista, Almanzar, and Reyes conducted an illegal search of Mr. Bellinger's vehicle. *Id.* at 9. All they found was $206, two crumbled up napkins, two iPhones, and Mr. Bellinger's lawful Concealed Carry Permit alongside his associated handgun. *Id.* at 15.

Mr. Bellinger was booked and fingerprinted. ECF 1 at ¶ 61. Police seized his vehicle, handgun, $50,000 Rolex, personal and business cell phones, wallet, cash, and house keys. *Id.* He was charged with sale of a controlled substance based on crack cocaine allegedly found in Mr. Appice's possession. *Id.* at ¶ 63. As he left the precinct, he was told that he would not receive his vehicle, Rolex, cell phones, or handgun until after the criminal case was over. *Id.* at ¶ 64.

Just four days after his initial arrest, six plainclothes Perth Amboy Police Department officers arrived at Mr. Bellinger's home. *Id.* at ¶ 66. The officers falsely claimed to have a warrant for Mr. Bellinger's arrest for possession of a firearm while committing a narcotics offense and entered the Bellinger home without consent. *Id.* at ¶¶ 66-67. He was handcuffed, searched, and removed from his home in full view of his wife and children. *Id.* at ¶ 68. Once back at the precinct, officers admitted to Mr. Bellinger that there was no warrant for his arrest. *Id.* at ¶ 69. The State has never produced a warrant to justify this arrest. *Id.* at ¶ 71.

Mr. Bellinger faced up to twenty years in prison for these false charges. *Id.* at ¶ 92. The State conveyed a pre-indictment plea deal that would require Mr. Bellinger to plead guilty to

possession of a firearm while committing a controlled dangerous substance offense in exchange for a recommended term of probation. *Id.* at ¶ 94. Despite the steep potential sentence he faced, Mr. Bellinger steadfastly maintained his innocence. *Id.* at ¶ 95. He rejected the plea deal. *Id.* at ¶¶ 95-96. Mr. Appice, facing his own criminal case, likewise refused to plead guilty. *Id.* at ¶ 98. When the Middlesex County Prosecutor's Office offered Mr. Appice a favorable plea deal in exchange for Mr. Appice inculpating Mr. Bellinger, Mr. Appice refused to implicate Mr. Bellinger in a crime he did not commit. *Id.* at ¶ 99. The Middlesex County Prosecutor's Office never informed Mr. Bellinger that Mr. Appice refused to implicate him in a crime. *Id.* at ¶ 100. On February 1, 2024, Mr. Bellinger's case was dismissed, as was Mr. Appice's. *Id.* at ¶¶ 101-102.

Mr. Bellinger's experience is no anomaly. The Perth Amboy Police Department and Middlesex County Prosecutor's Office have a long history of manufacturing fabricated justifications for illegal stops, falsely arresting innocent persons, suppressing exculpatory evidence, and maliciously prosecuting persons to cover up these fabrications. In multiple lawsuits, plaintiffs have alleged that they were falsely arrested and maliciously prosecuted by the PAPD based on fabricated evidence. *Id.* at ¶ 28; *see Garcia v. Perth Amboy, et al.*, 23-cv-22903; *Rodriguez v. City of Perth Amboy, et al.*, No. MID-L-6473-13; *Faltings v. Perth Amboy*, No. 13-cv-1976. Racial discrimination is likewise pervasive. ECF 1 at ¶ 30.

In multiple lawsuits, plaintiffs have alleged that the Middlesex County Prosecutor's Office engaged in the same practices experienced by Mr. Bellinger. They were prosecuted without probable cause based on false, fabricated, misleading, or unreliable evidence, and prosecutors withheld or failed to timely disclose exculpatory evidence. *Id.* at ¶ 29. Notably, both Defendant Jimenez and Defendant Dejesus have been named in suits alleging that they engaged

in the same misconduct present in Mr. Bellinger's case. ECF 1 at ¶ 28. Jimenez, in particular, has a known history with the Perth Amboy Police Department and Middlesex County Prosecutor's Office of making false statements in police records. ECF 1-9. Yet, his word, which Guzman could not corroborate, was the sole justification for Mr. Bellinger's arrest. ECF 1 at ¶ 60.

Mr. Bellinger's personal property was illegally seized during his false arrest and held for the duration of his malicious prosecution. His personal and business phones were seized, which impacted his ability to communicate with lenders, real estate brokers, subcontractors, and laborers. *Id.* at ¶ 72. Mr. Bellinger's Audi Q7 was seized as part of his false arrest. When he attempted to retrieve his vehicle from the police department, he was told that he would need to obtain a letter from Driveway Finance Corporation, his lienholder, to retrieve his car. *Id.* at ¶ 75. While Bellinger attempted to obtain this letter, the Middlesex County Prosecutor's Office sent a letter to Driveway stating that Mr. Bellinger had used the vehicle "in furtherance of criminal activity" and that Driveway was "responsible for taking all reasonable steps to prevent the vehicle from being utilized in the furtherance of criminal activity." *Id.* at ¶¶ 78-79; ECF 1-12. The Prosecutor's Office did not follow the appropriate procedures for civil forfeiture and initiated this process before his criminal case ended. ECF 1 at ¶ 81. Perth Amboy Police Department improperly released the vehicle to Driveway.  ECF 1 at ¶. As a result, Driveway put up the vehicle for private sale and notified Mr. Bellinger that it would be sold unless he paid the full purchase price plus expenses. *Id.* at ¶ 82. Mr. Bellinger could not do so, as he devoted his funds to fight his criminal case. *Id.* at ¶ 83. Mr. Bellinger's $50,000 Rolex was never returned to him. *Id.* at ¶¶ 104-109. Mr. Bellinger suffered reputational damage, severe mental and emotional stress, and more as a result of his wrongful arrest. *Id.* at ¶¶ 111-113.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Even after *Iqbal* and *Twombly*, Rule 8 is still the lodestar in any evaluation of the sufficiency of a pleading. *Id.* A pleading need only contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "plausibility" requirement is equivalent to Rule 8's "showing"). Defendants are entitled to "fair notice of the claims against them, not detailed factual allegations" at this stage. *Iqbal*, 556 U.S. at 678; *Phillips*, 515 F.3d at 233.

The Third Circuit uses a three-step approach to evaluate the sufficiency of a complaint. First, the court "tak[es] note of the elements [the] plaintiff must plead to state a claim." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations omitted). Second, the court separates legal conclusions from factual allegations. *Id.* Conclusory allegations include "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *McLeod v. Fifth Jud. Dist. of Pa.*, No. 20-1362, 2022 WL 13986832, at *2 (D.N.J. Oct. 24, 2022) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). Third, "w[h]en there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 787. Courts "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (internal quotations and citations omitted). It does not matter that the movant might see plaintiff's allegations as "outlandish" or impossible.

6

*Connelly*, 809 F.3d at 789-90 (internal citations omitted) (quoting *Iqbal*, 556 U.S. at 681) (stating that *Twombly* and *Iqbal* expressly rejected the notion of excluding "even outlandish allegations from a presumption of truth"). A complaint is sufficient to survive a motion to dismiss if it "simply, concisely, and directly" states the alleged events that entitle the plaintiff to relief. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014); *see also Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011).

## ARGUMENT

### I.    Plaintiff's Complaint Is Not An Improper Group Pleading

Defendants broadly assert that almost every claim in Plaintiff's complaint is an improper group pleading. To them, the complaint provides no notice as to the allegations against the individual officers. Not so.

Contrary to Defendants' account, group pleadings are not *per se* improper. *Kong v. Johnson & Johnson*, No. 23-3091, at *9 (D.N.J. Apr. 16, 2024); *see also Bilecki v. Mather Inv'rs, LLC*, No. 08-1, 2008 WL 4376372, at *2 (W.D. Mich. Sept. 22, 2008). An improper group pleading is so "impermissibly vague" that it "injects an inherently speculative nature into the pleadings, forcing both the [d]efendants and the Court to guess who did what to whom when." *Id.* (quoting *Yu-Chin Chang v. Upright Fin. Corp.*, No. 19-18414, 2020 WL 473649, at *3 (D.N.J. Jan. 28, 2020)). By contrast, a proper group pleading "when, read in the context of other specific allegations … is sufficient to put a defendant on notice that the grouped allegation is brought, at least in part, against the specific defendant." *See Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (citing Fed. R. Civ. P. 8(a)(2)); *H2O Plus, LLC v. Arch Pers. Care Products, L.P.*, 10-3089, 2011 WL 2038775, *2 (D.N.J. May 22, 2011) (finding the complaint satisfied Rule 8 where the pleading referred to the defendants

collectively, but, when read as a whole, the complaint and attached exhibits identified which claims were made against which defendants). Put differently, courts evaluate the full pleading and attached exhibits together to determine whether defendants have notice of the allegations against them. If those allegations provide sufficient notice, any further specificity is left for discovery. *See JD Glob. Sales v. Jem D Int'l Partners*, 2:21-cv-19943, at *18 (D.N.J. July 17, 2023). To that end, "[a]t the motion to dismiss stage, a complaint generally will only be dismissed where it is 'entirely implausible' or impossible for the grouped defendants to act as alleged." *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53 (D. Mass. 2014).

Defendants cannot sincerely claim that Mr. Bellinger's complaint leaves them guessing to the degree that would justify dismissal. Defendants Batista, Guzman, and Savoia surveilled Mr. Bellinger. ECF 1 at ¶ 50. Defendant Jimenez provided the "real time information" claiming that Mr. Bellinger was involved in a "potential drug deal" and that his vehicle and license plate had been seen in the area distributing narcotics 18 months prior. ECF 1-7 at 2, 8. Jimenez is known within the Perth Amboy Police Department to have fabricated evidence in the past. ECF 1 at ¶ 28. Guzman attempted to corroborate Jimenez's information and could not. ECF 1-7 at 3. Yet, Batista, Guzman, Savoia, Almanzar, and Reyes still conducted an illegal search of Mr. Bellinger's vehicle and arrested him, despite finding no evidence of a narcotics deal. *Id.* at 9. Without any concrete evidence to justify the search, the officers arrested Mr. Bellinger. ECF 1 at ¶ 61. Then, Batista in his incident report and probable cause affidavit, Guzman in his incident report, and Almanzar in his incident report repeated that lie again and again to cover-up this misconduct. ECF 1-8 at 5; ECF 1-7 at 8, 15. It is enough at this stage of litigation that the well-pled facts make the Defendants "aware of the allegations made and who they pertain to." *Merkin*

*v. Honda N. Am., Inc.*, No. 17-cv-03625, at *14 (D.N.J. Nov. 9, 2017); *Hotaling & Co., LLC v. Berry Solutions Inc.*, 2021 WL 4860096, * 6-7 (D.N.J. Oct. 19, 2021).

Defendants' case illustrations on this point are largely irrelevant. *Bussinelli*'s complaint contained next to no factual allegations and merely asserted claims against all defendants purely based on "information and belief." No. 23-21519, 2024 WL 3755914, at *3 (D.N.J. Aug. 12, 2024). "This style of pleading fails to place individual defendants on notice of the particular claims against them." *Id.*; *Darby v. N.J. Dep't of Corrs.*, No. 20-1360, 2023 WL 6890911, at *4 (D.N.J. Oct. 19, 2023) (same). By contrast, Plaintiff's complaint outlines specific times, locations, and conduct by each Defendant. In *McLeod*, there were several defendants who were "named but not mentioned throughout any of the Complaint's factual allegations." *McLeod v. Fifth Jud. Dist. of Pa.*, No. 20-1362, 2022 WL 13986832, at *4 (D.N.J. Oct. 24, 2022). Plaintiff instead identifies the role of each Individual Defendant. *Rode* involved a case where an employee failed to allege that the defendant governor had personal knowledge of the harassment the employee experienced, and to hold otherwise would hold the government personally responsible for the conduct among thousands of employees. 845 F.2d 1195, 1207 (3d Cir. 1988). Here, Defendants are a discrete group of less than twenty officers involved at various points in Plaintiff's arrest and prosecution. In sum, Defendants' claim that this is an improper group pleading fails.

**II.        There Was No Probable Cause to Stop, Search, Arrest, and Prosecute Plaintiff**

Defendants repeat that probable cause existed for Mr. Bellinger's arrests, which should render the bulk of his claims meritless. That claim requires one to ignore the lie that kicked off this series of events – a lie about which Defendants' motion to dismiss is silent.

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "The determination of whether there was probable cause to arrest requires a 'common sense approach' based on 'the totality of the circumstances.'" *Slippi-Mensah v. Mills*, No. 15-7750, 2020 WL 3468039, at *6 (D.N.J. June 25, 2020) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)). It is a fact-intensive inquiry best left to a jury, rather than resolved at the motion to dismiss stage pre-discovery. *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 638 (D.N.J. 2011).

First, Defendants' arguments fail, because probable cause cannot be based on fabricated evidence. Probable cause exists if there is a "fair probability" that the person committed the crime at issue. *Kossler v. Crisanti*, 564 F.3d 181, 195 (3d Cir. 2009). Consequently, probable cause may be subverted where an officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood" and "[s]uch statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000); *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989) (fraud is the quintessential evidence to refute the prima facie evidence of probable cause established by a grand jury indictment). Here, Defendant Jimenez's "real-time information" to Defendants Guzman, Batista, and Savoia was a lie. ECF 1 at ¶ 51. Jimenez fabricated evidence that Mr. Bellinger's vehicle-plate combination was seen in the area a year and a half before this arrest, despite clear proof that no such vehicle-plate combination existed until six months before this arrest. *Id.* at ¶¶ 57-58. This lie was repeated again and again throughout the Defendants' incident reports and probable cause affidavit. *See generally* ECF 1-7; ECF 1-8. It was the

justification for stopping, searching, and twice arresting Mr. Bellinger. And it cannot provide any legitimate basis for probable cause.

Second, Defendants cannot manufacture probable cause out of other circumstances preceding Mr. Bellinger's arrest. "Probable cause requires more than mere suspicion." *White v. Brommer*, No. 09-cv-04353, at *20 (E.D. Pa. Aug. 17, 2011). Location alone is not enough. *See State v. Valentine*, 134 N.J. 536, 547 (1994) (internal citation omitted) ("[A] stop in a high-crime area does not by itself justify a *Terry* frisk."). An officer's "training and experience" is not enough. *State v. Patterson*, No. A-3325-22, at *20-21 (N.J. App. Div. Aug. 26, 2024) ("[A]n officer's broad and general reference to training and experience does not [justify a stop]."). And Defendants' attempt to paint a "single hand-to-hand transaction" as sufficient is not enough. There is no indication in the incident reports or probable cause affidavit that the arresting officers actually observed any transaction at all. *See generally* ECF 1-7; ECF 1-8. All they report is that Mr. Appice approached Mr. Bellinger's vehicle and left. ECF 1-7 at 3.

## III.    Qualified Immunity Does Not Apply

Defendants assert that they are entitled to qualified immunity across multiple claims. They argue that the officers believed that there was probable cause for Mr. Bellinger's arrest and that belief is enough to absolve them of liability. This is faulty, circular reasoning. This kind of "short, conclusory" analysis does not justify a qualified immunity defense. *Rink v. Ne. Educ. Intermediate Unit 19*, No. 14-cv-02154, at *19 (M.D. Pa. Dec. 15, 2015).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation

of a constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "To be clearly established, the very action in question need not have previously been held unlawful." *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 993 (3d Cir. 2014). Instead, the "right's contours must be 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating [the right]." *Deforte v. Borough of Worthington*, 364 F. Supp. 3d 458, 478 (W.D. Pa. 2019) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014)). Defendants have the burden of proof on a qualified immunity defense. *Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006). If there was a question whether defendants acted in good faith, that is a jury question, not one to resolve at the motion to dismiss stage. *See Harlow*, 457 U.S. at 816.

Defendants argue that qualified immunity protects all but the "plainly incompetent." That is only half the truth. "As a matter of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335 (1986). Fabricating the basis for probable cause, as outlined in the previous section, *see* Section II *supra*, is no "mere mistake in judgment." *Siehl v. City of Johnstown*, 365 F. Supp. 3d 587, 601-02 (W.D. Pa. 2019) (denying motion to dismiss malicious prosecution claim based on assertion of qualified immunity where defendant officers fabricated reports); *Shamberger v. Glover*, No. 10-3236, 2012 WL 12517917, at *10 (D.N.J. May 23, 2012) (finding that qualified immunity did not shield officer who coerced statements that he knew to be false); *Costino v. Anderson*, No. 14-6940, at *22 (D.N.J. Dec. 20, 2016) (denying motion to dismiss false arrest claim based on qualified immunity where the complaint alleged that the defendant officer fabricated evidence to engineer a false arrest and unfounded prosecution). At the time of this arrest, it was clearly established that officers cannot fabricate evidence to establish probable

cause. *Halsey v. Pfeiffer*, 750 F.3d 273, 296 (2014). Defendants knowingly violated the law by fabricating evidence to justify Plaintiff's unlawful arrests, and any qualified immunity defense must be rejected.

## IV.    Plaintiff Plausibly Alleged His Federal Claims

### A.    False Arrest and Malicious Prosecution

Defendants argue that they had probable cause to stop, search, and arrest Mr. Bellinger on both occasions, which is an absolute defense to any false arrest or malicious prosecution claim. If not, they argue that they are protected by qualified immunity. Neither is true.  First, as discussed previously, *see* Section II *supra*, there was no probable cause for either arrest, or to justify initiating criminal proceedings against Mr. Bellinger.

#### 1.  False Arrest

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A plaintiff has a Fourth Amendment claim for false arrest under Section 1983 if their arrest was made without probable cause. *Pollock v. City of Phila.*, 403 F. App'x 664, 669 (3d Cir. 2010). As discussed in prior sections, *see* Section II *supra*, Defendants fabricated evidence to secure Mr. Bellinger's arrest. Defendant Jimenez falsely claimed that Mr. Bellinger was engaged in a drug deal because Jimenez claimed that Mr. Bellinger's vehicle-plate combination was seen distributing narcotics a year and a half prior, despite the impossibility of that vehicle-license combination existing at that time. ECF 1 at ¶¶ 51, 56-58. This was a fiction repeated again and again through the Defendants' incident reports and probable cause affidavit. *Id.* at ¶ 56. Then, four days after the arrest, officers once again arrested Mr. Bellinger with no warrant. *Id.* at ¶¶ 66-71. In all, Mr. Bellinger has plausibly alleged a false arrest claim.

Nor does qualified immunity apply.  For false arrest claims, "the qualified immunity analysis turns on whether the police officers reasonably but mistakenly concluded that probable

cause existed to arrest, detain and initiate the criminal prosecution." *Palma v. Atlantic Cty.*, 53 F. Supp. 2d 743, 769 (D.N.J. 1999). "[T]he right to be free from arrest without probable cause . . . is a bedrock constitutional principle and a clearly established right." *Mazuka v. Rice Twp. Police Dep't*, 655 Fed. App'x 892, 894 (3d Cir. 2016). As discussed in prior sections, *see* Section II, III *supra*, an officer who fabricates evidence to secure an arrest without probable cause cannot be protected by qualified immunity. *See Siehl*, 365 F. Supp. 3d at 601-02; *Shamberger*, 2012 WL 12517917, at *10; *Costino*, No. 14-6940, at *22.

### 2. Malicious Prosecution

A plaintiff asserting a malicious prosecution claim under Section 1983 must establish: (1) the defendant initiated a criminal proceeding; (2) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding; (3) the criminal prosecution resulted in plaintiff's favor; (4) the proceeding was initiated without probable cause; and (5) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice. *Halsey*, 750 F.3d at 296-97. Malice may be inferred from a lack of probable cause to support the initiation of the criminal proceedings. *Voytko v. Ramada Inn*, 445 F. Supp. 315, 322 (D.N.J. 1978) (applying New Jersey law). As discussed in prior sections, *see* Section II, IV(A) *supra*, Defendants fabricated evidence to secure Mr. Bellinger's arrest and prosecution. Fabricated evidence cannot support probable cause to defeat a malicious prosecution claim. *Siehl*, 365 F. Supp. 3d at 602.

Second, qualified immunity does not apply. As discussed in prior sections, *see* Section II, III *supra*, it was clearly established at the time of this case that officers cannot fabricate evidence to establish probable cause. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 794 (3d Cir. 2000) (internal quotation marks omitted) ("It was clearly established that a violation of common law

14

malicious prosecution along with some deprivation of liberty consistent with the concept of `seizure' constitutes a violation of the constitution."); *see also see also Gonzalez v. Elizabeth Police Dep't*, No. 18-3765, at *18 (D.N.J. Apr. 13, 2021) (denying motion for summary judgment where there existed genuine disputes of material fact as to whether probable cause existed for malicious prosecution claim); *Morales v. Busbee*, 972 F. Supp. 254, 263 (D.N.J. 1997) (denying motion for summary judgment where officer knew arrested individual was not suspect yet continued prosecution). Qualified immunity does not apply.

### B.    Racial Discrimination

Defendants argue that Mr. Bellinger's selective enforcement claim fails to state a claim and is barred by qualified immunity. None of these assertions justify dismissal.

First, Mr. Bellinger alleges a plausible selective enforcement claim. "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). To make out a selective enforcement claim, the plaintiff must allege: "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Zahra v. Town of Smithfield*, 48 F.3d 674, 683 (2d Cir. 1995). The comparator need not be "identical" just "roughly equivalent" and "similarly situated." *Harvard v. Cesnalis*, 973 F.3d 190, 205-06 (3d Cir. 2020). Mr. Bellinger is a Black man who was singled out and labeled as a narcotics dealer, based on nothing more than his presence in a quiet suburb, driving a luxury car, and wearing an expensive watch. *See* ECF 1 at ¶ 1, 43-44. He alleged that the Perth Amboy Police Department has a pattern and practice of racial discrimination, both

within the department and in its interactions with community members. *Id.* at ¶ 30. At the motion

to dismiss stage, that is enough for the claim to proceed. *See Gibson v. Superintendent of N.J.*

*Dep't of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427, 441 n.15 (3d Cir. 2005)

(allowing selective enforcement claim to proceed where plaintiff alleged that plaintiff was

subjected to an unlawful search and seizure based on "an invidious system of discriminatory law

enforcement which selectively targeted minorities for drug crimes.").

Second, qualified immunity does not apply. Qualified immunity cannot insulate the

officers from liability when "it has long been established that discriminatory enforcement of a

statute or law by state and local officials is unconstitutional …" *Holder v. City of Allentown*, 987

F.2d 188, 197 (3d Cir. 1993).

### C.    Unreasonable Search and Seizure

Defendants make no argument as to Mr. Bellinger's unreasonable search and seizure

allegation. This claim should be allowed to proceed past the motion to dismiss stage.

First, Mr. Bellinger plausibly alleges a Fourth Amendment violation. The Fourth

Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A

seizure is "reasonable only where it is justified by a warrant or probable cause." *Couden v. Duffy*,

446 F.3d 483, 494 (3d Cir. 2006). Absent a warrant or probable cause, officers may conduct a

Terry stop–a "brief, investigatory stop when the officer has a reasonable, articulable suspicion

that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Under the

reasonable suspicion standard, "the police officer must be able to point to specific and articulable

facts which, taken together with rational inferences from those facts, reasonably warrant [the]

intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "Neither 'inarticulate hunches' nor an arresting

officer's subjective good faith" will satisfy this constitutional requirement. *Patterson*, No. A-

3325-22, at *11 (quoting *Goldsmith*, 251 N.J. at 399). Mr. Bellinger was arrested on two separate occasions. As discussed in prior sections, *see* Section II, III, IV(A)-(B) *supra*, Mr. Bellinger's first arrest was unsupported by probable cause, and his second arrest was executed without a warrant.

Second, qualified immunity does not apply. "It was clearly established that a violation of common law malicious prosecution along with some deprivation of liberty consistent with the concept of 'seizure' constitutes a violation of the constitution." *Merkle*, 211 F.3d at 794 (internal quotation marks omitted).

### D.    Excessive Fines

Defendants argue that there is no viable Eighth Amendment violation because Mr. Bellinger was not fined. This is false.

First, Mr. Bellinger's property seizures are a "fine" under the Eighth Amendment. The Eighth Amendment protects against "excessive fines" imposed as a criminal consequence. U.S. Const. amend. VIII. The term "fine" refers to punishment for a criminal offense. *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989). It is not restricted to a monetary fee, such as bail. Any statutory forfeiture can qualify as a "fine" for purposes of an Eighth Amendment analysis. *United States v. Cheeseman*, 600 F.3d 270, 283 (3d Cir. 2010). Mr. Bellinger was subjected to a myriad of unlawful fines that were imposed as punishments. Police seized his vehicle, lawfully-possessed handgun, $50,000 Rolex, personal and business cell phones, wallet, cash, and house keys. ECF 1 at ¶ 61. His luxury Audi Q7 was wrongly provided to and ultimately sold by his financing company because law enforcement wrongfully informed them that Mr. Bellinger's vehicle had been involved in criminal activity. *Id.* at ¶¶ 77-87. His $50,000 Rolex was never returned to him. *Id.* at ¶¶ 104-110. Each of these acts constitute fines.

This is enough at this juncture for Plaintiff's Eighth Amendment claim to survive this motion to dismiss.

Second, qualified immunity does not apply. Seizing Mr. Bellinger's property in the absence of probable cause to initiate a criminal prosecution clearly violated his constitutional rights. *See Merkle*, 211 F.3d at 794; *see also Timbs v. Indiana*, 203 L.Ed 2d 11 (2019) (holding that the Excessive Fines Clause is incorporated by the Due Process Clause into the Fourteenth Amendment).

### E.    Denial of Due Process

Defendants assert that there is no due process claim because they have no notice of the precise process that Mr. Bellinger was denied. That is false. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Mr. Bellinger alleges both procedural and substantive due process violations.

First, Mr. Bellinger alleges that his procedural due process rights were violated where Defendants deprived him of his property without prior notice and an opportunity to be heard. *Abbott v. Latshaw*, 164 F.3d 141, 145 (3d Cir. 1998). Mr. Bellinger had a property interest in his vehicle, $50,000 Rolex, and all other items seized, and never returned, in the course of his arrest. ECF 1 at ¶ 61; *Abbott*, 164 F.3d at 145. Process is meant to protect individuals like Mr. Bellinger from erroneous or arbitrary exercises of power. *Id.* at 146. Yet, as alleged in Mr. Bellinger's complaint, law enforcement seized his property based on an unjustified arrest and subjected his vehicle to civil forfeiture before the end of his criminal proceedings, in violation of New Jersey state law. *Id.* at ¶¶ 61, 77-87, 104-110.

Second, this conduct by Defendants violated Mr. Bellinger's substantive due process rights. A substantive due process claim alleges that the government abused its power in a way that "shocks the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-48 (1998). "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). As outlined in the preceding sections, *see* Section IV(E)-(F) *supra*, Mr. Bellinger was deprived of his Fourth Amendment right to be free from unreasonable searches and seizures as well as his Eighth Amendment right to be free from excessive fines.

### F.    Failure to Intervene

Defendants argue that Mr. Bellinger has failed to plead that the Individual Defendants were either present for his unlawful arrest or they refused to intervene. Neither is true.

First, Mr. Bellinger plausibly alleged a failure to intervene claim. A plaintiff alleging a failure to intervene claim does not have to show that a defendant refused to intervene to prevent a constitutional violation. Instead, the standard is that the officer had a reasonable opportunity to intervene and simply failed or refused to intervene. *Smith v. Mensinger*, 293 F.3d 641, 650-51. (3d Cir. 2002).  These claims may survive a motion to dismiss where the plaintiff plausibly alleges that there was a constitutional violation and at least some "fleeting moment in time" for the officer to stop the violation. *Thorpe v. City of Philadelphia*, 2020 WL 5217396, at *10 (E.D. Pa. Sept. 1, 2020); *see Brackbill v. Ruff*, No. 17-CV-1046, at *12 (M.D. Pa. May 22, 2018) (allowing failure to intervene claim to proceed where plaintiff alleged that supervisory defendant had the opportunity to prevent his unlawful arrest). Here, Mr. Bellinger alleges that Defendants

Guzman, Savoia, and Batista were all observing Mr. Bellinger from an unmarked police vehicle. ECF 1 at ¶ 50. Defendant Jimenez provided them with fabricated information. *Id.* at ¶ 51. Guzman attempted to verify Jimenez's information, and he could not corroborate it, because it was a fabrication. *Id.* at ¶ 56. Despite that, the officers proceeded with stopping, searching, and arresting Mr. Bellinger. *Id.* at ¶¶ 51-54. Defendants Almanzar and Reyes arrived and assisted with the illegal search of Mr. Bellinger's vehicle. ECF 1-7 at 13-15. Yet, after finding nothing to substantiate the lie that Mr. Bellinger was dealing narcotics, each officer repeated this fabrication in their incident reports and probable cause affidavit. *See generally id.*; ECF 1-8. Each officer had the opportunity–either to not provide the fabrication in the first place, in Jimenez's case, or to not act upon it when it could not be corroborated, as is the case for all other officers.

Similarly, qualified immunity does not apply. As discussed in prior sections, *see* Section IV(A)-(F) supra, the underlying constitutional violations were clearly established at the time of Mr. Bellinger's arrest and prosecution. Likewise, prior to the events giving rise to this case, it was clearly established that officers are liable for failures to intervene in constitutional injuries. *Thorpe*, 2020 WL 5217396, at *10; *Brackbill*, No. 17-CV-1046, at *12 (holding at the motion to dismiss stage that the law regarding failure to intervene was "clearly established" in the Third Circuit in 2018). Defendants are not entitled to qualified immunity on this claim.

### G.    Conspiracy

Defendants claim that Mr. Bellinger merely provides "legal conclusions" in support of his conspiracy claim. Not so.

"A plausible civil rights conspiracy claim requires allegations that a defendant 'and at least one of the state actors named as defendants in their complaint somehow reached an understanding' to deprive someone of their constitutional rights." *Maldonado v. City of Phila.*,

No. 22-3474, at *16 (E.D. Pa. July 21, 2023) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993)). The complaint "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 18485 (3d Cir. 2009). Typically, civil rights conspiracy claims survive a motion to dismiss where the underlying constitutional claims survive. *See Gibson*, 411 F.3d at 446; *see also Gladden v. City of Phila.*, 2022 WL 605445, at *8 (denying motion to dismiss civil rights conspiracy claim "to the extent premised on . . . claims for fabrication of evidence and deliberate deception"); *Thorpe*, 2020 WL 5217396, at *12-15 (allowing conspiracy claims as to all but one state actor where fabrication-of-evidence claims survived motion to dismiss); *Ogrod v. City of Phila.*, 598 F.Supp.3d 253, 273 (E.D. Pa. 2022) (denying motion to dismiss conspiracy claim where allegations "support[ed] a reasonable conclusion that . . . [d]efendants had a meeting of the minds to arrest and assist in the prosecution of [criminal defendant] in the absence of probable cause and based on falsified evidence"); *R.K. v. Y.A.L.E. Schools, Inc.*, 621 F. Supp. 2d 188, 204 n.17 (D.N.J. 2008) (internal citations omitted) ("The viability of a civil conspiracy claim turns on an actionable 'independent wrong.' Plaintiffs' claims relating to such independent wrongs remain viable in this case ….").

Here, Mr. Bellinger has alleged that Defendants Guzman, Savoia, and Batista received fabricated information from Defendant Jimenez prior to unlawfully stopping and arresting Mr. Bellinger. ECF 1 at ¶ 51. Even though Defendant Guzman attempted to corroborate this fabrication, and could not do so, the officers still proceeded with the arrest. *Id.* at ¶ 56. This fabrication was the sole justification for stopping Mr. Bellinger and conducting an unlawful search of his vehicle, which Defendants Almanzar and Reyes participated in. *See generally* ECF 1-7; ECF 1-8. This lie was repeated throughout these officers' incident reports and probable

cause affidavit. *Id.* That is sufficient at this stage to plausibly allege that these officers engaged in a conspiracy to cover up their unlawful conduct after it was revealed that Guzman's fabrication held no water.

### H.    Supervisory Liability

Defendants assert that the supervisory liability claim fails because Mr. Bellinger provides only legal conclusions in support of his allegations. The Court should reject this argument.

There are two theories of supervisory liability–"one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm" and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)). These claims survive where a plaintiff plausibly alleges that the supervisor either knew or should have known that officers were engaging in misconduct, yet did not act. *See Thorpe*, No. 19-5094, at *18 (denying motion to dismiss where plaintiff plausibly alleged supervisory liability claim where supervisor knew or should have known that detective had a pattern of fabricating evidence); *Wright v. City of Phila.*, 229 F. Supp. 3d 322 (E.D. Pa. 2017); *Kelley v. Reyes*, No. 19-cv-17911, at *13 (D.N.J. July 1, 2020).

Here, Mr. Bellinger has alleged that both the Perth Amboy Police Department and Middlesex County Prosecutor's Office have histories of manufacturing evidence and maliciously prosecuting innocent persons. ECF 1 at ¶¶ 28-30. Mr. Bellinger has pointed to multiple lawsuits filed prior to the events giving rise to his case in which plaintiffs have alleged similar acts of misconduct. *Id.* Defendants Jimenez and Dejesus, in particular, have been the subject of suits

where fabricated evidence was at the core of the plaintiff's allegations. *Id.* at ¶ 59. These create

the plausible inference that supervisors like Defendant Cattano, who were tasked with overseeing

their departments, had notice of misconduct yet did not intervene to prevent Mr. Bellinger's

violation.

I.    **Municipal Liability (City of Perth Amboy)**

Defendants argue that Mr. Bellinger has provided only legal conclusions to support his

*Monell* claim against the City of Perth Amboy. That is not the case.

To plead a *Monell* claim, the plaintiff has to allege either "an unconstitutional policy or

custom which caused his injuries" or show that his injuries "were caused by a failure or

inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest v. Parry*,

930 F.3d 93, 105 (3d Cir. 2019) (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798

(3d Cir. 2019)). The pleading standard for Monell claims is no greater than any other claim.

*Newson v. City of New York*, 2019 WL 3997466, at *7 (E.D.N.Y. Aug. 23, 2019); *3909 Realty

LLC v. City of Phila.*, No. 21-cv-030, 2021 WL 2342929, at *4 (E.D. Pa. June 8, 2021) ("Monell

liability is generally not amenable to resolution at the pleading stage."). To survive at the motion

to dismiss stage, the plaintiff "must allege facts tending to support, at least circumstantially, an

inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F.Supp.2d

573, 576 (S.D.N.Y. 2012). Courts look at the cumulative evidence to determine whether the

claim is sufficiently pled. *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022).

Mr. Bellinger alleges that the City, through its police department, maintained a series of

unconstitutional customs in its policing. A custom is shown when practices are "so permanent

and well-settled as to virtually constitute law." *Mulholland v. Cty. of Berks*, 706 F.3d 227, 237

(3d Cir. 2013) (citations and quotation marks omitted). This includes "deliberate indifference,

lack of compliance, and failure to adhere to … standards." *A v. Nutter*, 737 F.Supp.2d 341, 362 (E.D. Pa. 2010). To survive a motion to dismiss, the plaintiff must "identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984). Mr. Bellinger has alleged such here, asserting that the City was on-notice for a series of lawsuits alleged against its officers who were engaging in misconduct. ECF 1 at ¶ 28-30.

Likewise, Mr. Bellinger maintains that the City, through its police department, failed to train, supervise, and discipline officers for misconduct. For this *Monell* theory, the plaintiff must allege that the failures amount to "deliberate indifference to the rights of persons with whom the police come into contact." *Rodwell v. City of Newark*, No. 22-06427, at *13 (D.N.J. Sep. 5, 2023) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 61, 61 (2011). Alleging that the City was aware of repeated violations, as outlined above, is enough at this stage. *Swainson v. City of Phila.*, No. 22-2163, at *11 (E.D. Pa. Jan. 10, 2023) (citing *Alicea v. City of Philadelphia*, No, 22-cv-3437, 2022 WL 17477143, at *6 (E.D. Pa. Dec. 6, 2022)). This is particularly true where a plaintiff may be unaware of the intricacies of a training program pre-discovery. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004). Mr. Bellinger has plausibly alleged this theory.

### J.    Municipal Liability (MCPO)

Defendants likewise assert that Mr. Bellinger's *Monell* theories against the Middlesex County Prosecutor's Office are insufficient. This is false.

Mr. Bellinger asserts that the Prosecutor's Office maintained a custom of promoting, facilitating, and condoning prosecutions initiated without probable cause, using false or misleading evidence in the course of prosecution, and failing to make timely disclosures of exculpatory evidence. As outlined in the prior section, *see* Section IV(J) *supra*, it is sufficient at this stage that a plaintiff identify the custom and provide supporting evidence. Here, Mr. Bellinger has provided multiple lawsuits against the Prosecutor's Office that contain similar allegations to his own. ECF 1 at ¶ 30. Likewise, he has asserted that the Prosecutor's Office suppressed Mr. Appice's exculpatory statements. *Id.* at ¶¶ 98-100.

Mr. Bellinger has likewise asserted that the Prosecutor's Office failed to train, supervise, and discipline prosecutors on these matters. As outlined in the prior section, *see* Section IV(J) *supra*, it is sufficient at this stage that he identifies these deficiencies and supporting evidence.

## V.    Plaintiff Plausibly Alleged His State Claims

### A.    Malicious Prosecution

Defendants argue that Mr. Bellinger's malicious prosecution claim should be dismissed because he failed to provide notice of his claim or timely file. Neither claim is true.

First, Mr. Bellinger provided proper notice of his malicious prosecution claim. For a malicious prosecution claim, the plaintiff must allege "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1023 (N.J. 2009). The notice must be "filed directly with the specific local entity at issue." *McDade v. Siazon*, 208 N.J. 463, 468, 32 A.3d 1122 (2011). The statute specifically identifies how to serve the State of New Jersey through the Attorney General or "department or agency involved" in the tort. N.J.S.A. 59:8-7. By contrast, for local

entities, the statute only requires that notice be filed with "that entity" or "the entity." N.J.S.A. 59:8-7, 59:8-10. There is nothing in the statute that "identif[ies] who [] a claimant must serve with notice of claim" when suing a locality. *Bryant v. Cty. of Cumberland*, 472 N.J. Super. 626, 628 (N.J. App. Div. 2022).

Here, Mr. Bellinger complied with the notice requirements. On February 1, 2024, Mr. Bellinger's criminal case was dismissed. ECF 1 at ¶ 101. On April 1, 2024, Mr. Bellinger, through counsel, sent a "litigation hold" letter to the Perth Amboy Police Department, advising it of anticipated litigation. ECF 19-1 (Ex. 1). On April 11, 2024, Mr. Bellinger, through counsel, filed a Notice of Claim upon the Perth Amboy Police Department, the Office of the Attorney General, the Office of the Middlesex County Prosecutor, and the Office of the Middlesex County Counsel. ECF 19-1 (Ex. 3). The City and its police department are not separate entities, as the Defendants themselves argue in their motion. ECF 19-1 at 5; *Wiley v. City of Newark, New Jersey*, No. CV 16-2530, 2017 WL 4678202, at *2 (D.N.J. Oct. 16, 2017) (citing N.J.S.A. 40A:14-118 and cases). When the police department received the litigation hold and then notice, that functioned as serving the City. Defendants cannot have it both ways by arguing that they are one in the same in one part of their motion while arguing they are distinct in another. Mr. Bellinger's notice was properly filed.

Second, Mr. Bellinger timely filed his claim. To proceed with these claims, a claimant must file a notice of claim with the public entity at-issue "not later than the ninetieth day after accrual of the cause of action." N.J.S.A. 59:8-8. A malicious prosecution claim accrues when the prosecution terminates in the plaintiff's favor. *Y.W. v. New Milford Pub. Sch.*, No. A-5978-12T4, at *6 n.3 (N.Y. App. Div. Sep. 18, 2014). As stated above, Mr. Bellinger's case was dismissed

on February 1, 2024, and he filed his notice on April 11, 2024. Therefore, his notice was timely filed within 90 days of accrual.

In the alternative and in lieu of dismissal, this matter should be held in abeyance until Mr. Bellinger's recently filed motion for leave to file an amended notice is resolved.

**B.    Due Process**

Defendants argue that Mr. Bellinger's state law due process claim under the New Jersey Civil Rights Act should be dismissed for the same reasons asserted against the claim's federal counterpart. The same reasons asserted in the foregoing federal analysis justify allowing his state claim to proceed. The New Jersey Civil Rights Act is a "means of vindicating substantive rights and is not a source of rights itself." N.J.S.A. 10:6-2(c). "The Fourteenth Amendment analysis under both statutes is the same." *Gormley v. Wood-El*, 93 A.3d 344, 358 (N.J. 2014). As such, Mr. Bellinger incorporates by reference the federal claim analysis. *See* Section IV(F) *supra*.

**C.    Intentional Infliction of Emotional Distress ("IIED") Claim**

Defendants argue that Mr. Bellinger failed to timely file or provide notice of his claim, and because he failed to plead the essential elements of an IIED claim. This is false.

First, Mr. Bellinger incorporates by reference the New Jersey Tort Claims Act analysis outlined in the malicious prosecution section, as Mr. Bellinger's IIED injuries are connected to both his wrongful arrest and wrongful prosecution. *See* Section V(A) *supra*.

Second, Mr. Bellinger plausibly pleaded his IIED claim. For an IIED claim, a plaintiff "must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 367 (1988) (internal citations omitted). "Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Id.* "The conduct

must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* "[A] single event, under the right circumstances, may be extreme and outrageous." *Taylor v. Metzger*, 152 N.J. 490, 512 (N.J. 1998). Here, Mr. Bellinger has alleged that the Defendants intentionally fabricated a demonstrably false lie that he–an upstanding citizen, entrepreneur, father, and husband who had never been involved in criminal activity–was dealing narcotics. This resulted in two separate false arrests, including one in front of his wife and children during a warrantless search of his home. These actions subjected him to a malicious prosecution, robbed him of his luxury watch, and damaged his reputation in his community and with his business associates. Such actions plausibly show extreme and outrageous conduct done with blatant disregard for the potential consequences of a fabrication.

### D.      Negligent Infliction of Emotional Distress (NIED) Claim

Defendants argue that Mr. Bellinger failed to timely file or provide notice of his NIED claim, and failed to plead each element of an NIED claim. Neither is true.

First, Mr. Bellinger incorporates by reference the New Jersey Tort Claims Act analysis outlined in the malicious prosecution section, as Mr. Bellinger's NIED injuries are connected to both his wrongful arrest and wrongful prosecution. *See* Section V(A) *supra*.

Second, Mr. Bellinger plausibly pleaded his NIED claim. A claim for negligent infliction of emotional distress has four elements: 1) a duty of care was owed by the defendant to the plaintiff; 2) that duty was breached; 3) the plaintiff suffered genuine and substantial emotional distress; and 4) the breach was a proximate cause of the injury. *Lascurain v. City of Newark*, 349 N.J. Super. 251, 277 (App. Div. 2002). Here, Mr. Bellinger alleges that Defendants acted with reckless disregard for the consequences of falsely arresting him without probable cause and then

subjected him to a criminal proceeding based on a fabrication. He would not have been subjected to this but for the Defendants' fabrication, and all damages flow from this misconduct.

### E.    Respondeat Superior

Defendants argue that Mr. Bellinger has failed to allege that they had personal involvement in his injuries to warrant respondeat superior. This is incorrect.

An employer will be held liable for the conduct of its employees when the employee is acting within the scope of their employment. *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 416 (1994). An employee acts within the scope of their employment when their action is of the kind that they were employed to perform. *Id.* An employer may be liable for both negligent and intentional torts that are "reasonably connected with the employment and so within its scope." *Id.* at 419. As outlined in prior sections, each Defendant acted within the scope of their employment when using their positions as law enforcement officers to wrongfully arrest and prosecute Mr. Bellinger. *See* Section II, IV(A)-(I) *supra*.

### VI.    In The Alternative, Plaintiff Should Be Granted Leave to Amend

In the alternative and in lieu of outright dismissal, Plaintiff should be granted leave to amend his pleadings to correct any deficiencies the Court identifies. Fed. R. Civ. P. 15(a). Leave to amend the pleadings is generally freely granted. *Smart Pharmacy, Inc. v. Medco Health Solutions, Inc.*, No. 11-6485, at *3 (D.N.J. July 29, 2014). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice …, [or] futility of amendment" justify denying leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, none of these reasons apply.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order denying Defendants' motion to dismiss in its entirety. In the alternative, Plaintiff respectfully requests leave to amend any claim in lieu of dismissal to remedy any defects.


Dated: December 18, 2024                          Respectfully submitted,

                                                  /s/ Kristen Santillo

                                                  Kristen Santillo
                                                  NJ Bar No. 096832014
                                                  Gelber & Santillo PLLC
                                                  24 Church Street, 2nd Floor
                                                  Montclair, NJ 07042
                                                  (212) 227-4743
                                                  ksantillo@gelbersantillo.com
                                                  *Attorney for Plaintiff Christopher C. Bellinger*

Karen A. Newirth
Newirth Law PLLC
43 West 43rd Street, Suite 160
New York, New York 10036
(917) 426-5551
karen@newirthlaw.com
*Admitted Pro Hac Vice*

Irving Cohen
80 Broad Street, 19th floor
New York, New York 10004
(212) 964-2544
icohenlaw@msn.com
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I, Kristen Santillo, an attorney, hereby certify that on December 18, 2024 I filed the foregoing Brief in Opposition to Defendants' Motion to Dismiss via the Court's CM/ECF system, which affected service on all counsel of record.

/s/ Kristen Santillo
*One of Plaintiff's Attorneys*