**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHRISTOPHER CURTIS BELLINGER III, <br><br> *Plaintiff*, <br><br> v. <br><br> THE CITY OF PERTH AMOBY, PERTH AMBOY POLICE DEPARTMENT, CHIEF LAWRENCE CATTANO in his official capacity, and LT. CARMELO JIMENEZ, DET. BENJAMIN BATISTA, DET./SGT. DAVID GUZMAN, DET. KEVIN SAVOIA, DET. YANELBA REYES, DET. LUID ALMANZAR, P.O. JESSICA DEJESUS, individually and in their official capacity, and "JOHN DOES" #1-3, individually and in their official capacity (the name "JOHN DOE" being fistitious, as the true names are presently unknown, <br><br> *Defendants*. | Civil Action No. 24-8442 <br><br><br> **OPINION** <br><br><br> June 30, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon Defendants the City of Perth Amboy, Perth Amboy Police Department ("PAPD"), Chief Lawrence Cattano, Lt. Carmelo Jimenez, Det. Benjamin Batista, Det./Sgt. David Guzman, Det. Kevin Savoia, Det. Yanelba Reyes, Det. Luis Almanzar, and P.O. Jessica DeJesus's (collectively "Defendants") Motion to Dismiss (ECF 19, "Motion" or "Mot.") Plaintiff Christopher Curtis Bellinger III's ("Plaintiff" or "Bellinger") Complaint (ECF 1, "Compl."). The Court has decided this Motion upon the parties' submissions, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1. For the reasons set forth below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

1

I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action stems from an incident involving Plaintiff and law enforcement on September 8, 2023. (Compl. ¶ 1.) Plaintiff, an African American male, owns and operates NDO Construction, a business through which he "purchases homes to be renovated – often financing them with bank loans" and "engages in contracting work to transform these homes into properties that can be sold at a profit." (*Id.* ¶ 33.) To assist him in his renovations business, Plaintiff "engages sub-contractors and manual workers[.]" (*Id.*) Plaintiff resides at 559 Hazel Avenue, Perth Amboy, New Jersey, a residence he has owned since 2020. (*Id.* ¶¶ 8, 32.)

On September 8, 2023, Plaintiff agreed to meet with Mr. Joseph Appice in the area of Harned Street and Pfeiffer Boulevard in Perth Amboy, near Plaintiff's home. (*Id.* ¶¶ 38-40.) Plaintiff "owed Mr. Appice a balance of $180" for carpentry work previously performed by Mr. Appice. (*Id.* ¶¶ 39, 41.) In the afternoon of September 8, Plaintiff drove to meet Mr. Appice in his 2019 Audi Q7. (*Id.* ¶ 44.) Plaintiff purchased the vehicle on January 23, 2023, via a financing agreement with Driveway Finance Corporation ("Driveway"). (*Id.* ¶ 10.) The vehicle had a New Jersey license plate number J45-RVM, which Plaintiff obtained from the State of New Jersey on or about March 13, 2023. (*Id.* ¶ 11.) On September 8, 2023, Plaintiff carried with him in the glovebox of his Audi a Sig Sauer P365XL Striker handgun, a magazine, ammunition, and a concealed carry permit. (*Id.* ¶ 13.) Plaintiff had obtained a firearm identification card from the State of New Jersey on April 9, 2022. (*Id.* ¶ 12.) He purchased the Sig Sauer handgun on July 29, 2022, and obtained a concealed carry permit from the State of New Jersey on January 3, 2023, which featured an expiration date of January 3, 2025. (*Id.*)

Mr. Appice drove to the scene in his 2013 Subaru Forester. (*Id.* ¶ 44.) After arriving to the area of Harned Street and Pfeiffer Boulevard, Mr. Appice exited his car and approached the

passenger window of Plaintiff's vehicle. (*Id*. ¶ 44-46.) After the two men spoke briefly, Plaintiff paid Mr. Appice the $180 owed for carpentry work. (*Id*. ¶ 47-48.) The men did not exchange any items beyond the $180. (*Id*.) After Mr. Appice returned to his vehicle, Plaintiff drove away from the scene. (*Id*. ¶ 49.)

Shortly thereafter, Plaintiff was stopped by Defendant Detective/Sargeant David Guzman of the PAPD. (*Id*. ¶ 51.) After stopping Plaintiff, Defendant Guzman directed him to exit the vehicle. (*Id*. ¶ 52.) When Plaintiff exited the vehicle, Defendant Detective Benjamin Batista informed Defendant Guzman that "narcotics had been recovered from Mr. Appice" and "that Mr. Appice had been arrested[.]" (*Id*. ¶ 53.) Defendant Guzman then placed Plaintiff under arrest and searched his body and vehicle. (*Id*.) As a result of the search, the PAPD recovered $206.00, two "crumbled up" napkins, two iPhones, and Plaintiff's handgun, magazine, ammunition, holster, and concealed carry permit. (*Id*. ¶ 54.) The search did not recover any "narcotics, narcotic paraphernalia, [or] packaging materials[.]" (*Id*.) Plaintiff was then transported to the Perth Amboy police station. (*Id*. ¶ 60.)

Plaintiff asserts that "Defendant Guzman alleged in his official incident report that 16 months prior to the September 8, 2023 incident, Defendant Jimenez purportedly informed [Defendant Guzman] that Defendant Jimenez 'believed' that the operator of a black Audi Q7 bearing New Jersey registration J45-RVM…frequented the area of Florida Grove Road and Stephen Avenue to distribute narcotics to the operator of a silver 2013 Subaru Forester." (*Id*. ¶ 56.) Plaintiff asserts that this belief was "false" and that the traffic stop was therefore "illegal." (*Id*. ¶ 51.) The incident report indicated that Defendant Guzman was "unable to corroborate" the information from Defendant Jimenez. (*Id*. ¶ 56.) Defendant Batista offered the same information as justification for the arrest "in his sworn affidavit of probable cause." (*Id*.)

At the police station, Plaintiff was "booked and fingerprinted." (Compl. ¶ 61.) In addition to his vehicle and firearm, the PAPD confiscated Plaintiff's "Rolex watch valued at $50,000, his personal and business cellphones, his wallet, cash in the amount of $206.00, and his housekeys." (*Id.*) Plaintiff was charged with "sale of a controlled dangerous substance" and received a summons "to appear in Middlesex Superior Court on October 12, 2023." (*Id.* ¶ 63.) After being released, Plaintiff "sought return of his personal property," but was only able to retrieve his work tools, wallet, and "some of the wallet's contents." (*Id.* ¶ 64.) Plaintiff was unable to retrieve his vehicle, handgun and accessories, or telephones. (*Id.*)

Four days later, on September 12, 2023, "six plainclothes PAPD police officers" arrived unannounced at Plaintiff's home. (*Id*. ¶ 66.) At the time of their arrival, Plaintiff was "exercising in the garage," and Plaintiff's wife "asked the officers to wait outside while she called Mr. Bellinger[.]" (*Id.*) Despite Plaintiff's wife's request, the officers entered the home "uninvited." (*Id.*) The officers claimed that they had a warrant to arrest Plaintiff "for possession of a firearm while committing a controlled dangerous drug offense[.]" (*Id.* ¶ 67.) The officers placed Plaintiff in handcuffs, searched his person, and transported him to "an unmarked PAPD vehicle." (*Id.* ¶ 68.) Plaintiff's wife, three children, and neighbors witnessed the arrest. (*Id.*) After being brought the precinct, Plaintiff received a second summons for the new charge requiring him to report to court on October 12, 2023. (*Id.* ¶¶ 63, 70.) When Plaintiff "inquired where the warrant for his arrest was…one of the [officers] admitted that there was no warrant for [the] arrest." (*Id.* ¶ 69.) The PAPD thereafter never produced to Plaintiff a warrant for his arrest. (*Id.* ¶ 71.)

During the pendency of his criminal case, Plaintiff made numerous attempts to retrieve his personal property. (*Id*. ¶¶ 72-75.) When Plaintiff inquired via telephone about how he might retrieve his car, "an unknown PAPD officer told him that he would need to obtain a letter from

Driveway Finance Corporation...the lienholder on [the] Audi, in order to retrieve his car." (*Id.* ¶ 75.)  While Plaintiff "unsuccessfully attempted to obtain the letter requested by PAPD from Driveway[,]" the department "released the Audi to Driveway without informing" Plaintiff.  (*Id.* ¶ 77-78.)  Plaintiff asserts that the Middlesex County Prosecutor's Office had "advised Driveway that the car was being used by Plaintiff 'in furtherance of criminal activity' and that[,] as the owner of the vehicle, Driveway [was] 'responsible for taking all reasonable steps to prevent the vehicle from being utilized in the furtherance of criminal activity.'" (*Id.* ¶ 79.)

On October 24, 2023, Driveway informed Plaintiff that his car "would be put up for private sale unless [Plaintiff] paid the remaining purchase price of the car[.]" (*Id*. ¶ 82.)  Plaintiff at the time could not afford to pay the remaining balance on the vehicle.  (*Id.* ¶ 83.)  Driveway then "sold the Audi at a significantly reduced price and claimed that [Plaintiff] owed them the difference between the car's value and the sale price, approximately $20,000.00." (*Id.* ¶ 85.)  Plaintiff asserts that "Driveway reported to credit agencies that [he] had defaulted on his loan and that his car had been repossessed," and that his credit rating therefore fell from "over 780 to approximately 609." (*Id.* ¶ 86.)

Plaintiff appeared with his attorney Jason Seidman at numerous court proceedings regarding his criminal case.  (*Id*. ¶¶ 90-91.)  Consistently maintaining his innocence, Plaintiff rejected multiple plea offers extended by the Middlesex County Prosecutor's Office.  (*Id.* ¶¶ 94-97.)  Plaintiff asserts that the Middlesex County Prosecutor's Office did not disclose exculpatory evidence in its possession to Plaintiff or his counsel.  (*Id.* ¶ 100.)  The criminal case against Plaintiff was dismissed on February 1, 2024, and expunged from the record on February 8, 2024.  (*Id.* ¶¶ 101, 103.)  After the charges were expunged from the record, Plaintiff retrieved his wallet, keys, phones, and handgun and accessories from the PAPD.  (*Id.* ¶ 104.)  However, Plaintiff was unable

to retrieve his Rolex watch, and the property clerk instructed him "to contact Internal Affairs regarding his missing watch[.]"  (*Id.*)  Through counsel, Plaintiff subsequently contacted Internal Affairs regarding the missing watch, and, as of July 11, 2024, was informed that the investigation into its whereabouts was ongoing.  (*Id.* ¶ 109.)

While Plaintiff was without his personal property during the pendency of his criminal case, he "was unable to carry out his professional or familial duties – including coordinating and carrying out home renovations; communicating with lenders, real estate brokers, and laborers; and driving his children to and from school and activities."  (*Id*. ¶ 72.)  Plaintiff asserts that without his vehicle, he "was unable to work" and "had to spend excessively on rental cars and, ultimately, a new vehicle[.]"  (*Id.* ¶ 84.)  Plaintiff alleges that the reduction of his credit rating rendered him "unable to borrow funds from the lenders and at the terms he was previously able to."  (*Id.* ¶ 87.) Plaintiff could not "obtain the necessary and planned financing to complete the renovation project he had in progress" at the time of his arrest.  (*Id.*)  After a delay, Plaintiff "had to borrow money from family members, deplete savings, and max out credit cards" to finish the project "at a significant financial and personal cost[.]"  (*Id.*)

Plaintiff filed a Notice of Claim on April 11, 2024 "with the Office of the New Jersey Attorney General, the Office of the Middlesex County Counsel, the Office of the Middlesex County Prosecutor, and the Perth Amboy Police Department."  (*Id*. ¶ 110.)  He filed this federal suit on August 13, 2024.  (*See id*.)  Plaintiff's Complaint brings federal claims for False Arrest in violation of 42 U.S.C. § 1983 ("Section 1983") (Count One); Malicious Prosecution in violation of Section 1983 (Count Two); Selective Enforcement and False Arrest and Malicious Prosecution Due to Race, Color, or National Origin, in violation of Section 1983 and 42 U.S.C. § 1981 ("Section 1981") (Count Three); Denial of Second Amendment Rights in violation of Section 1983

(Count Four); additional violations of Section 1983 and of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution (Count Five); Failure to Intercede in violation of Section 1983 (Count Six); Civil Rights Conspiracy in violation of Section 1983 (Count Seven); a supervisory liability claim (Count Eight); and two *Monell* claims in violation of Section 1983 (Counts Nine and Ten).  (*See id.*)  Plaintiff also asserts state law claims for Malicious Prosecution (Count Eleven); violations of the New Jersey Civil Rights Act (Count Twelve); Intentional, Reckless, or Negligent Infliction of Emotional Distress (Count Thirteen); Negligence (Count Fourteen); and two *respondeat superior* claims (Counts Fifteen and Sixteen).[1]  (*See id.*)

Plaintiff seeks compensatory and punitive damages for his injuries, including "pain and suffering…emotional distress…loss of property; legal expenses…restrictions on liberty; [and] denial of his Constitutional right to bear arms[.]"  (*Id*. ¶¶ 112-14.)  Defendants filed the instant motion to dismiss on October 18, 2024.  (*See* Mot.)  Plaintiff opposed the motion on December 18, 2024.  (ECF 27,"Opposition" or "Opp.")  Defendants filed a reply brief in further support of their motion on January 14, 2025.  (ECF 30, "Reply.")  Plaintiff filed a supplemental brief opposing the motion to dismiss on March 14, 2025.  (ECF 36, "Supplemental Opposition" or "Supp. Opp.")  Defendants replied to Plaintiff's supplemental brief on March 21, 2025.  (ECF 37, "Supplemental Reply" or "Supp. Reply.")

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state

---

[1] Plaintiff's Complaint mislabels the state law counts as Count Nine through Count Fourteen, even though they are the eleventh through sixteenth counts of the Complaint. For the purposes of this opinion, the Court will refer to these counts as Counts Eleven through Sixteen.

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III.    LEGAL ANALYSIS

### a.  Qualified Immunity

Defendants contend that the doctrine of qualified immunity grants them immunity from Plaintiff's suit because, in their view, Defendants had sufficient probable cause to arrest Bellinger. (Mot. at 7-9; Reply at 2-4.) Plaintiff argues that qualified immunity does not shield Defendants

because they arrested him without probable cause, in violation of his clearly established constitutional rights.  (Opp. at 11-13.)  "Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  "Under settled law, [Defendants] are entitled to immunity if a reasonable officer could have believed that probable cause existed. . . . Probable cause existed if 'at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that" Plaintiff had taken part in a narcotics transaction. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Here, Plaintiff has sufficiently alleged that Defendants violated his clearly established constitutional rights (namely, his Fourth Amendment rights to freedom from unlawful arrest, search, and seizure, and his Fifth and Fourteenth Amendment rights to due process) by arresting him without probable cause.  As the basis for their arrest of Plaintiff, Defendants cite apparently false, unverified, uncorroborated "real time information" provided by Defendant Lt. Jimenez that a "Black Audi SUV and a Silver Subaru" had been involved in drug deals in the area.  (*See e.g.*, Compl. Ex. 7.)  This falls well short of the "reasonably trustworthy information" standard for probable cause articulated in the case law.  The other bases Defendants assert in support of their argument for the presence of probable cause, such as Plaintiff's driving behavior (which, notably did not include speeding, driving erratically, or otherwise driving unlawfully) and the fact that the officers saw the two men engaging in a conversation, are effectively "mere hunches" that do not

"create a reasonable suspicion" that unlawful activity warranting a stop, search, and arrest had taken place. *Prado Navarette v. California*, 572 U.S. 393, 397 (2014).

As such, the Court finds that qualified immunity does not apply to shield Defendants from Plaintiff's suit.

### b. Count 1: 42 U.S.C. § 1983 (False Arrest)

Defendants argue that Count 1 of the Complaint must be dismissed because it "fails to state a claim." (Mot. at 9-10; Reply at 6.) The elements of a false-arrest claim are (a) that an arrest occurred; and (b) that the arrest was made without probable cause. *Brown v. Makofka*, 644 F. App'x 139, 143 (3d Cir. 2016) (quoting *See Groman v. Twp. of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995)). The proper inquiry in a claim for false arrest under § 1983 is "not whether the person arrested in fact committed the offense, but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Shelley v. Wilson*, 152 F. App'x 126, 129 (3d Cir. 2005) (quoting *Dowling v. City of Philadelphia,* 855 F.2d 136, 141 (3d Cir.1988)). A "federal false-arrest claim under § 1983 fails [when] the officers certainly had probable cause to believe [the person arrested] had violated" the law. *Makofka*, 644 Fed. App'x at 143. Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested. *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "Whether probable cause existed for an arrest is generally a question of fact for the jury[,]" but where "the court finds that the evidence, viewed in the light most favorable to the plaintiff, reasonably would not support a contrary factual finding, then the court may conclude that probable cause exists as a matter of law. *Id.* at 788–89; *see also Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 651 (W.D. Pa. 2010).

Here, Plaintiff sufficiently alleges that he was arrested without probable cause. The parties do not dispute that Plaintiff was arrested, and as discussed *supra*, Plaintiff plausibly states that the traffic stop that led to his arrest was predicated on unreliable information and mere hunches insufficient to support an inference of a reasonable suspicion of criminal activity, let alone probable cause for his arrest. (Compl. ¶¶ 115-121.) At this stage, the pleadings render the Court unable to find that Defendants had probable cause to arrest Plaintiff; further factual is required to make that determination. Accordingly, the Motion is hereby **DENIED** as to Count 1.

### c. Count 2: 42 USC §1983 (Malicious Prosecution)

Defendants argue that Count 2 of the Complaint must be dismissed because they had probable cause to arrest Bellinger. (Mot. at 10.) To establish a claim of malicious prosecution, a plaintiff must show:

> (1) the defendants initiated a criminal proceeding;
>
> (2) the criminal proceeding ended in [the] plaintiff's favor;
>
> (3) the proceeding was initiated without probable cause;
>
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
>
> (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Lozano v. New Jersey*, 9 F.4th 239, 247 (3d Cir. 2021) (quoting *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020)).

Here again, Plaintiff has sufficiently stated a claim. The parties do not dispute that Defendants initiated a criminal proceeding against criminal proceeding against Plaintiff by arresting him and charging him with various offenses. Nor do they dispute that the proceeding ended in Plaintiff's favor, as the charges against him were dropped and expunged from the record. (Compl. ¶¶ 101, 103.) Finally, neither side disputes that Plaintiff suffered a seizure and deprivation

of liberty as a consequence of the legal proceedings against him; the parties only dispute whether the initiation of the proceedings were supported by probable cause and done maliciously or for a purpose other than bringing the plaintiff to justice.

Again, as discussed *supra*, Plaintiff has sufficiently alleged that Defendants lacked probable cause to carry out the initial arrest, which led to the beginning of the legal proceedings against Plaintiff. Plaintiff has also sufficiently alleged that Defendants acted for a purpose other than bringing him to justice insofar as they allegedly "fabricated evidence and intentionally withheld from and misrepresented to prosecutors exculpatory facts that vitiated probable cause against Mr. Bellinger." (*Id*. ¶ 124.) Accordingly, the Motion is hereby **DENIED** as to Count 2.

### d.  Count 3: 42 U.S.C. §§ 1983 and 1981 Selective Enforcement and False Arrest and Malicious Prosecution Due to Race/Color/National Origin

As a threshold matter, 42 U.S.C. § 1981 "does not provide a private right of action against state actors." *Goodall-Gaillard v. N.J. Dep't of Corr.*, 625 F. App'x 123, 128 (3d Cir. 2015) (citing *McGovern v. City of Phila.,* 554 F.3d 114, 120–21 (3d Cir. 2009)). To the extent that Plaintiff's claim in Count 3 sounds under this statute, it is dismissed as improper.

Conversely, 42 U.S.C. § 1983 does provide a private right of action against state actors. To state a claim for selective enforcement, "a plaintiff must establish (1) that other similarly situated violators of [an] ordinance or law were treated differently, and (2) that this disparate treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor." *Goodall-Gaillard*, 625 Fed. App'x at 127 (internal quotations omitted). Selective enforcement of, and selective prosecution under, facially neutral laws "may constitute illegal discrimination even if the [enforcement or] prosecution is otherwise warranted" where the differential treatment is based upon an improper, discriminatory motive. *Desi's Pizza, Inc. v. City of Wilkes–Barre,* 321 F.3d 411, 425 (3d Cir.2003) ("*Desi's Pizza I* "). While a plaintiff must

"provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect," *id.,* it need not be explicit; "[n]ecessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Muhammad ex rel. J.S. v. Abington Twp. Police Dep't*, 37 F. Supp. 3d 746, 752–53 (E.D. Pa. 2014) (quoting *Washington v. Davis,* 426 U.S. 229, 242 (1976)).

Here, Plaintiff's claim fails because his pleading does not satisfy the first prong requiring him to establish that others were treated differently. In the Complaint, Plaintiff points to numerous prior cases involving *similar* circumstances and outcomes of alleged mistreatment by PAPD. (Compl. ¶¶ 28-30.) Nowhere in the Complaint, however, does Plaintiff make reference to instances involving similar circumstances and *different outcomes* sufficient to allege that his treatment in this case rises to the level of selective enforcement. Because Plaintiff fails the first prong of the selective enforcement analysis, the Court need not address the second prong. Accordingly, the Motion is hereby **GRANTED** as to Count 3, and Count 3 is dismissed without prejudice.

### e.   Count 4: 42 U.S.C. § 1983 Denial of Second Amendment Rights

In his Opposition, Plaintiff voluntarily dismissed Count 4 of the Complaint, because he conceded that "the City of Perth Amboy is the proper defendant for any claims brought against the Perth Amboy Police Department and Chief Cattano, as both defendants act as arms or agents of the City." (Opp. at 1, n. 1) (citing *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004); *Janowsky v. City of North Wildwood*, 259 F. Supp. 3d 113, 131 (D.N.J. 2017).) As such, Plaintiff's voluntary dismissal is hereby **GRANTED** as to Count 4, and Count 4 is dismissed without prejudice.

### f.   Count 5: 42 U.S.C. § 1983 Unreasonable Seizure Under the Fourth Amendment, Denial of Due Process Under the Fifth, Sixth, and Fourteenth

Amendments, and Denial of Right to be Free of Excessive Fines Under the Eighth Amendment.

Defendants argue that Count 5 should be dismissed because it is an improperly compound group pleading that fails to state a claim and is barred by qualified immunity. "By its plain language, the Excessive Fines Clause of the Eighth Amendment is violated only if the disputed fees are both "fines" and "excessive." *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 420 (3d Cir. 2000). The term "fine" refers to punishment for a criminal offense. *Id*. "In assessing an excessive fine challenge, the Court engages in a two-step inquiry: (1) whether a 'fine' is at issue— that is, whether the government, acting with punitive intent, has operated to 'extract [a] payment[ ]' in case or in kind from a citizen; and (2) if so, whether that fine is excessive, or grossly disproportionate to the gravity of the offense." *Singh v. Droppa*, 2024 WL 726643, at *3 (D.N.J. Feb. 22, 2024) (quoting *Dailey v. City of Philadelphia*, 819 F. App'x 71, 75 (3d Cir. 2020)) (internal quotations omitted).

Here, the Court need not reach the questions of whether the Plaintiff's forfeitures amounted to fines, and whether those fine were excessive, because the Court agrees with Defendants that Count 5 is an improperly compound pleading that attempts to amalgamate several distinct causes of action into one unwieldy claim that violates the rules of pleading articulated in Federal Rules of Civil Procedure 8, 10, and 12. *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017). Accordingly, the Motion is hereby **GRANTED** as to Count 5, and Count 5 is dismissed without prejudice.

### g.   Count 6: 42 U.S.C. § 1983 (Failure to Intercede)

Defendants argue that Count 6 should be dismissed because "Plaintiff fails to identify the moments at which a constitutional violation was taking place, that each Defendant was even present at that moment, and how under the circumstances any officer had a realistic and reasonable

opportunity to intervene but did not. (Mot. at 15, citing *White v. City of Vineland*, 500 F. Supp. 3d 295, 305-06 (D.N.J. 2020) (internal quotations and punctuation omitted).)

To establish a claim for failure to intercede or intervene under § 1983, a plaintiff must demonstrate "that his underlying constitutional rights were violated, that the officer had a duty to intervene, and that the officer must have had a realistic and reasonable opportunity to intervene." *White v. City of Vineland*, 500 F. Supp. 3d 295, 305-06 (D.N.J. 2020) (citing *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002)); *see also Callaway v. Small*, 576 F. Supp. 3d 232 (D.N.J. 2021) ("a police officer may be held liable under § 1983 [on a failure to intervene or intercede theory] where the officer (1) knows of and acquiesces to (2) the unconstitutional treatment of another in his presence, and (3) fails or refuses to intervene despite having a realistic and reasonable opportunity to intervene").

Here, Plaintiff does not sufficiently allege that any officer had a realistic and reasonable opportunity to intercede in the initial arrest that formed the basis of all subsequent actions by law enforcement against Plaintiff in this case. The Court agrees with Defendants that they did not have the requisite "actual knowledge and acquiescence" necessary to trigger the duty to intervene. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). Accordingly, the Motion is hereby **GRANTED** as to Count 6, and Count 6 is dismissed without prejudice.

### h. Count 7: 42 U.S.C. § 1983 Civil Rights Conspiracy

Defendants contend that Count 7 should be dismissed because he does not adequately plead the elements of a conspiracy. (Mot. at 15-16.) A civil conspiracy under Section 1983 exists where "two or more persons conspire to deprive a person of constitutional rights, one or more of the conspirators performs any overt act in furtherance of the conspiracy, and the overt act injures the plaintiff or deprives him of any rights or privileges of a citizen of the United States while the conspirators acted under color of state law." *Lankford v. City of Clifton Police Dep't*, 546 F. Supp.

15

3d 296, 317 (D.N.J. 2021) (citing *Barnes Foundation v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). To state such a claim, "a plaintiff must show the existence of a conspiracy and a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy," as well as "the period of the conspiracy, the object of the conspiracy, and certain overt acts of the alleged conspirators taken to achieve that purpose." *Lankford*, 546 F. Supp. 3d at 317. Further, "[a] 1983 claim for civil-rights conspiracy must show an understanding or 'meeting of the minds.'" *Murphy v. Middlesex Cnty.*, 361 F. Supp. 3d 376, 389 (D.N.J. 2019) (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)).

Here, the Court agrees with Defendants that Plaintiff has not adequately alleged a civil conspiracy, as he has not pleaded facts sufficient to establish the contours of the conspiracy—the period, the object, and the agreement or meeting of minds. Instead, Plaintiff relies on his previous well-pleaded claims to set the Court up for an inferential leap between the alleged conduct and the thinly supported notion that this incident resulted from a conspiracy. The Court is not inclined to make such a leap. Accordingly, the Motion is hereby **GRANTED** as to Count 7, and Count 7 is dismissed without prejudice.

### i.   Count 8: 42 U.S.C. § 1983 Supervisory Liability

Defendants argue that Count 8 must be dismissed because it targets the wrong Defendants and fails to state a claim for relief.

In general, vicarious liability does not apply to § 1983 actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("vicarious liability is inapplicable to…§ 1983 suits"). However, supervisors can potentially be held liable under § 1983 where they engage in "affirmative conduct," such as the "implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm." *Murphy v. Middlesex Cnty.*, 361 F. Supp. 3d 376, 387 (D.N.J. 2019) (citing *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d

121, 129 n.5 (3d Cir. 2010)).  There are generally two theories of supervisory liability under §

1983. *Murphy* 361 F. Supp. 3d at 387. "Under the first theory, defendants may be sued as policy

makers if it is shown that such defendants, with deliberate indifference to the consequences,

established and maintained a policy, custom, or practice which directly caused [the] constitutional

harm." *Id.* (internal quotation marks omitted) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882

F.2d 720, 725 (3d Cir. 1989)). "Moreover, [w]here the policy concerns a failure to train or

supervise municipal employees, liability under section 1983 requires a showing that the failure

amounts to deliberate indifference to the rights of persons with whom those employees will come

into contact." *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 128 (D.N.J. 2017) (quoting

*Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)). "[D]eliberate indifference is a

stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  "The

second theory of liability provides that a supervisor may be personally liable under § 1983 if he or

she participated in violating the plaintiff's rights, directed others to violate them, or, as the person

in charge, had knowledge of and acquiesced in his subordinates' violations." *Murphy*, 361 F. Supp.

3d at 387 (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). Knowledge

in the context of the second theory of liability "must consist of either 'contemporaneous knowledge

of the offending incident or knowledge of a prior pattern of similar incidents.'" *Murphy*, 361 F.

Supp. 3d at 387 (quoting *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000)).

Here, Plaintiff seeks to invoke the first theory of liability, claiming "Defendants Cattano

and Jimenez and other supervisors acted with gross negligence, recklessness, and/or deliberate

indifference to the constitutional rights of citizens by failing to provide adequate training,

supervision, and discipline of the defendant police officers, and thereby caused the individual

defendant police officers to deprive Christopher C. Bellinger III of his clearly established constitutional rights." (Compl. ¶ 160.) Plaintiff fails to establish how Defendants Cattano and Jimenez maintained a policy that amounted to deliberate indifference. To be sure, Plaintiff does sufficiently allege that Lt. Jimenez himself acted unlawfully by allegedly fabricating the basis of the probable cause for his arrests, but this claim does not establish that Defendants were engaged in a broader policy of unlawful or deliberate indifference. Accordingly, the Motion is hereby **GRANTED** as to Count 8, and Count 8 is dismissed without prejudice.

### j.  Counts 9 & 10: 42 U.S.C. § 1983 *Monell* Claims

Defendants argue that Counts 9 and 10 against the City of Perth Amboy should be dismissed because they fail to support any allegations that the city maintained unlawful practices or customs within the PAPD. (Mot. at 17-21.)

A Section 1983 claim against a municipality cannot be predicated on a *respondeat superior* theory. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). Instead, a municipality "may be sued under § 1983 only for acts implementing an official policy, practice or custom." *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903 (3d Cir. 1984); *see also Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically

endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Est. of Roman*, 914 F.3d at 798 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). Once a plaintiff identifies the policy or custom that led to his or her injury, he or she "must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz*, 915 F.2d at 850 (citing *Andrews*, 895 F.2d at 1480). "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries…by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges." *Est. of Roman*, 914 F.3d at 798 (citations omitted). Where a *Monell* claim against a municipality is predicated on a custom, a plaintiff may establish the existence of said custom and causation by showing that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." *Bielevicz*, 915 F.2d at 851. Additionally, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing...municipal policy, which policy can be attributed to a municipal policymaker." *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)).

Here, Plaintiff has not pleaded facts sufficient to show that the City of Perth Amboy either issued any official statements condoning the behavior of the PAPD, or that this incident is part of a pattern of similar incidents such that Plaintiff can demonstrate the existence of a custom. Plaintiff points to several other cases with somewhat similar facts, but is not able to show that an existing municipal policy is the throughline between those claims and this one. (Compl. ¶¶ 28-30.)

Accordingly, the Motion is hereby **GRANTED** as to Counts 9 and 10, and Counts 9 and 10 are dismissed without prejudice.

> a. **New Jersey Common Law Tort Claims: Count 11 (Malicious Prosecution), Count 13 (Intentional, Reckless, or Negligent Infliction of Emotional Distress), Count 14 (State Law Negligence), Counts 15 & 16 (*Respondeat Superior*)**

Plaintiff asserts several claims sounding in common law tort against the individual defendants, Defendant Cattano, and the City of Perth Amboy. Defendants argue that these claims should be dismissed because they do not requirements established by the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1 *et seq*. At the outset, the Court agrees with Defendants that all tort claims against the City are barred because Plaintiff failed to properly serve the City with a notice of claim. *See* N.J. Stat. Ann. § 59:8-7 ("A claim for injury or damages arising under this act against a local public entity shall be filed with that entity."). "The Legislature required that the notice of claim be filed directly with the **specific** local entity at issue." *McDade v. Siazon*, 208 N.J. 463, 476 (N.J. 2011). "The city is a distinct local public entity." *Madej v. Doe*, 477 A.2d 439, 444 (N.J. Super. Ct. Law Div. 1984). Plaintiff served the notice on the PAPD, the Office of the Attorney General, the Middlesex County Counsel, and the Middlesex County Prosecutor, but not on the City itself. As such, Plaintiff must be barred from asserting these tort claims against the City. Accordingly, the Motion is hereby **GRANTED** as to Counts 15 and 16, and those Counts are dismissed with prejudice.[2]

Furthermore, the NJTCA is clear that "no damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury." N.J. Stat. Ann. 59:9-2(d)(1).

---

[2] Dismissal with prejudice is appropriate here because the New Jersey Tort Claims Act prevents Plaintiff from ever asserting these claims again. N.J.S.A. 59:1-1 *et seq*.

Accordingly, the Motion is hereby **GRANTED** as to Count 13, and Count 13 is dismissed with prejudice.

Defendants claim that the New Jersey common law malicious prosecution claim is time barred because they assert that the time to notify Defendants of the claim began to accrue on the date of Bellinger's arrest. (Supp. Reply at 1-4.) The Court disagrees. As Plaintiff notes, "Plaintiff's state law claims arise from malicious prosecution, which accrues upon the favorable termination of the criminal case." (Supp. Opp. at 1, citing *Thompson v. Clark*, 596 U.S. 36, 39 (2022); *Coello v. DiLeo*, 43 F.4th 346, 354-55 (3d Cir. 2022).) Plaintiff's notice of claim was thus timely and sufficiently described the claimed injury, providing sufficient notice to the individual Defendants.

As with the federal malicious prosecution claim, Defendants claim Plaintiff's malicious prosecution claim under New Jersey common law must be dismissed because Plaintiff failed to state a claim. To state a malicious prosecution claim under Section 1983, the NJCRA, and the common law, a plaintiff must plead that (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice. See *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)) (setting forth elements for a Section 1983 malicious prosecution claim); *Waselik v. Twp. of Sparta*, No. 16-4969, 2017 WL 2213148, at *8 n.15 (stating that a malicious prosecution claim under the NJCRA is construed in parallel to a Section 1983 claim); *Frost v. Cnty. of Monmouth*, No. 17-4395, 2018 WL 1469055, at *9 (D.N.J. Mar. 26, 2018) (setting forth elements of common law malicious prosecution claim). Because this analytical framework mirrors that of

the federal malicious prosecution claim, the Court adopts its analysis in the section on malicious prosecution *supra* to find that Plaintiff has plausibly stated a claim for malicious prosecution under New Jersey law.  Accordingly, the Motion is hereby **DENIED** as to Count 11.

As pleaded in paragraphs 187-192 of the Complaint, Plaintiff's state law negligence claim arises from the date of his initial arrest, not the date of the resolution of his criminal proceedings as is the case with his state law malicious prosecution claim.  As such, Plaintiff's state law negligence claim is barred because he failed to provide timely notice of the claim to Defendants under the NJTCA.  Accordingly, the Motion is hereby **GRANTED** as to Count 14, and Count 14 is dismissed with prejudice.

### b.  Count Twelve - New Jersey Civil Rights Act

The NJCRA "is a state law corollary to 42 U.S.C. § 1983—it creates a private right of action for the violation of civil rights secured under the New Jersey Constitution." *Armstrong v. Sherman*, No. 09-716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010).  For this reason, "[t]his district has repeatedly interpreted NJCRA analogously to § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (collecting cases).  Thus, "the Court will analyze Plaintiffs' NJCRA claims through the lens of § 1983." *Id*.; *see also Norcross v. Town of Hammonton*, No. 04-2536, 2008 WL 9027248, at *4 (D.N.J. Feb. 5, 2008) ("This Court sees no reason to conclude that in the context of a claim for excessive force during an arrest, the standard under the New Jersey Constitution for evaluating those claims is different from that under the United States Constitution." (citations omitted)).

Accordingly, for the reasons outlined in the section *supra* addressing Plaintiff's false arrest claim under Section 1983, the Motion is hereby **DENIED** as to Count 12.

### IV.  <u>CONCLUSION</u>

For the reasons set forth herein, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**.  An appropriate Order follows

/s/ Jamel K. Semper          .
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Cathy L Waldor, U.S.M.J.
       Parties