November 7, 2025

**By ECF**
Hon. Cari Fais, U.S.M.J.
Dr. Martin Luther King Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re: *Bellinger v. City of Perth Amboy, et al.*, No. 2:24-cv-08442 (JKS)(CLW)

Dear Judge Fais:

      The parties jointly submit this letter identifying outstanding discovery disputes that remain after written and telephonic meet-and-confers. The parties exchanged correspondence on August 1, August 11, October 7, and October 31, 2025, and conferred by telephone on several occasions, but remain at an impasse on certain issues and request the Court's intervention. The parties' positions on those issues, as well as the status of discovery generally, are set forth below.

**Production of Electronically Stored Information (ESI)**

Plaintiff's first request for production ("RFP") sought "all photographs, video recordings, or other visual media of Plaintiff, Plaintiff's vehicle, or Plaintiff's personal property"; "all photographs, video recordings, or other visual media" showing the arrestee intake unit/area and the property and/or evidence storage unit/area of PAPD during limited time periods; "all internal and external communications, including emails, text messages, and notes, between Defendants and any third parties or among Defendants themselves regarding Plaintiff prior to his arrest(s)"; and "all surveillance records, photographs, videos, or other materials documenting the activities of Plaintiff and Joseph Appice (separately or together) prior to their arrests" in their native format.

Plaintiff's RFP also included the following instruction: "Whenever possible, Plaintiff requests that all documents be produced in their native format with metadata or PDFs. Pursuant to the Federal Rules of Civil Procedure, Defendant may not convert the data to a form that is more burdensome or less searchable."[1]

*Production of Officers' Electronic Communications*

Plaintiff's Position

---

[1] The reference to PDFs in this instruction indicates a preference for electronically scanned paper rather than physical documents.

In response to Plaintiff's RFP, Defendants produced a series of screenshots of text messages that contain photographs, video recordings, and an apparent link to a Ring device's video recording.[2] The text messages are between Defendants Jimenez and Guzman, and communicate Jimenez's belief that he witnessed Plaintiff engaged in drug transactions; the Defendant Officers' successful search of law enforcement databases for personal information belonging to Plaintiff and his co-defendant; and descriptions of surveillance of Plaintiff and his home. Finally, Defendants produced screenshots of photographs, apparently from the receiving but not the sending Defendant Officer's device, included with the text messages that have time/date stamps. Defense counsel has also represented that (1) counsel reviewed text messages provided to them by the Defendant Officers; and (2) a forensic search of the phones is disproportionate to the needs of the case.

Plaintiff objects to Defendants' failure to produce responsive text messages, photographs, and videos in their native format, and to Defendants' refusal to conduct a forensically sound search of the Defendant Officers' digital devices.

In response to Plaintiff's objection to the form of production and Plaintiff's demand for a forensic search of Defendant Officers' phones, Defendants have taken the position that forensic imaging of the involved officers' cell phones is disproportionate to the needs of the case and that, without forensic imaging, the text messages and their photographs/videos cannot be produced in their native format. Plaintiff asks the Court to order Defendants to conduct a forensic image and search of the Defendant Officers' electronic devices and to produce all responsive documents, communications, images, or videos in their native form.[3]

The broad and liberal scope of discovery under the Federal Rules is well established. *See, e.g., In re Mercedes-Benz Emissions Litig.*, Case No. 2:16-cv-881 (SDW)(JAD), 2020 WL 747195, at *5 (D.N.J. Feb. 14, 2020) (*citing* Fed. R. Civ. Proc. 26(b)(1) and cases). Here, there can be no dispute as to the relevance of the materials sought. As the recent productions make clear, the Defendant Officers' electronic devices contain relevant information that bears directly on the core of this case: the question of probable cause at the heart of Mr. Bellinger's false arrest and malicious prosecution claims, and whether the Defendant Officers falsified documents or fabricated evidence to justify Mr. Bellinger's arrest and initiate and continue his prosecution. *See* Fed. R. Civ. P. 26(b)(1).

As the Special Master in *In re Mercedes-Benz Emissions Litig.* explained, once the requestor has established relevance, a court must assess:

---

[2] These documents were produced in three parts: first in response to Plaintiff's request for production and then twice after the Court's entry of the Daniel's Law order (ECF No. 65).
[3] Defense counsel has informed Plaintiff's counsel that PAPD does not issue electronic devices to officers, thus the only electronic devices in the Defendant Officers' possession are their personal cell phones.

> the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, ... there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery….The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry…. A party resisting discovery on the grounds of burden or expense bears the burden of showing specifically how the request is burdensome.

2020 WL 747195, at *5 (internal citations and quotations omitted).

Here, the Defendant Officers' communications, photographs, and videos from their electronic devices are critical to the needs of the case and the discovery is essential to resolving the issues. The text messages produced so far are the only source of information concerning the Defendant Officers' prior observations of Plaintiff, as none of the official PAPD reports of police action against Plaintiff–which have been separately produced by Defendants–contain the information represented in the text messages, photos, or videos. Given this, there is no risk of redundant or disproportionate discovery. As described in the Complaint, the only mention of any prior suspicion of Plaintiff refers to a prior observation of Plaintiff's car bearing a license plate that Plaintiff did not possess at the time it was allegedly observed by Defendant Officers. (ECF 1 at 6-7). While the amount in controversy is difficult to predict at this time, the issues at stake in the litigation–the deprivation of significant constitutional rights in a coordinated effort by police officers, resulting in a false arrest and malicious prosecution–could not be more consequential. Finally, Defendants include a City with substantial resources. They should be ordered to search and produce all relevant materials in their native format.

Fed. R. Civ. Proc. 34(b)(2)(E)(ii) specifically states that a party must produce ESI in a form "in which is ordinarily maintained" or is "reasonably usable." Fed.R.Civ.P. 34(b)(1)(C) permits a party to specify the form in which ESI is to be produced. Here, Plaintiff specifically requested production in native form and explicitly cited the Federal Rules as a source for this requirement. "[C]ourts routinely order electronic discovery to be produced in native format." *Williams v. First Student, Inc.*, Civil Action No. 1:20-cv-01176, 2022 WL 7534247, at *3 (D.N.J. Oct. 13, 2022). Here, Plaintiff promptly objected to the form of production when it was received.

Production in static, screenshot form, particularly when the requestor has specified native format, is not an acceptable substitute. First, it is not "reasonably usable" because it eliminates relevant metadata, including date and time stamps, geolocation information, and information regarding

alterations to the material.[4] This form also prevents the receiving party from enhancing and further examining the media to evaluate the basis for Defendant Jimenez's (incorrect) conclusion about Plaintiff's activities. All of this is critical in this case. First, the dates, time, and location of the photographs and videos are critical to both the claims and defenses in this case: whether probable cause existed at the time of Plaintiff's arrest; whether the Defendant Officers made false statements or other fabrications; and the Defendant Officers' state of mind at the time of Plaintiff's arrest and prosecution. *See Reilly v. Home Depot U.S.A., Inc.*, 670 F. Supp. 3d 126, 147 (D.N.J. 2023) (metadata as necessary to understand the order of events and what was done to manipulate the scene). Second, the photographs in question appear repeatedly throughout the text chain on different dates, without any visual indication that they are being reproduced, raising questions about the date(s) on which they were taken. Third, messages appear to have been deleted from the text chain. Because Plaintiff is entitled to production in native format and the paper format is not a reasonably usable substitute, Defendants should be ordered to produce responsive material in its native form. *See Younes v. 7-Eleven, Inc.*, No. 13-3500 (RMB/JS), 2015 U.S. Dist. LEXIS 33793, at *12 (D.N.J. Mar. 18, 2015) (Particularized need for metadata established where documents lack basic information like authors and dates, and metadata is relevant to authenticating documents and determining who knew what when).

Nor is counsel's review of text messages produced to them by Defendant Officers an acceptable substitute for a complete, forensically sound duplication and search of the devices by counsel. As the recent disclosure makes clear, Plaintiff was the subject of multiple communications by at least two Defendant Officers for two and a half years (March 2021-September 2023). Given the duration and potential number of communications, we do not believe mere reliance on the Defendant Officers' representations that they have provided all responsive material constitutes a "reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." *See* Advisory Comm. Note to Rule 26(g). *Accord Lifescan, Inc. v. Smith,* 2025 U.S. Dist. LEXIS 113755. It is simply not reasonable to believe that the Defendant Officers could reliably search their phones for the entire time period and identify every responsive exchange, photograph, or video. Finally, without a forensic image and search, it is impossible to know whether messages, photographs, or videos have been altered, deleted, or otherwise corrupted.

---

[4] On November 7, 2025, Defendants produced DEF 0240-0243 which are screenshots of some, but not all, metadata that would be attached to the native, original photographs. The omitted information includes: exact creation and modification timestamps (down to the second and with time zone); GPS and geolocation data; device identifiers and software version information; complete camera and exposure settings; and any chain-of-custody and hash data necessary to verify authenticity. Because this information is intrinsic to the digital file and cannot be reconstructed from the screenshots, production in native format—with all associated EXIF and message metadata intact—is required for meaningful review and use in discovery.

Under Rule 26, the Defendants should be ordered to forensically image and search the Defendant Officers' electronic devices and disclose all responsive materials in their native form.

Defendants' Position:

Plaintiff asserts that a forensic analysis of Defendants' phones is necessary because the text messages produced by Defendants are "the only source of information concerning the Defendant Officers' prior observations of Plaintiff." Prior observations are immaterial. Defendants' firsthand observations of Plaintiff on the date of his arrest were enough to give rise to probable cause as his conduct was consistent with that of someone engaging in a hand-to-hand drug transaction.

Plaintiff also refers to the fact that police reports referenced a license plate he "did not possess at the time" as support for his request for a forensic analysis of Defendants' phone. It is unclear how the two relate. In any event, as discovery has proved, the license plate referenced in the police report **did** previously belong to Plaintiff and the inclusion of his old license plate number was merely an error. Still, this does not support Plaintiff's request here.

Plaintiff is correct in that there were several, albeit brief, communications about him exchanged between Defendants Jimenez and Guzman over a two-and-a-half-year period. That is because, for over two and a half years, Plaintiff repeatedly engaged in what appeared to be hand-to-hand drug transactions **directly in front of Defendant Lieutenant Jimenez's home**. This still does not warrant a forensic analysis of Defendants' cell phones.

Defendants maintain the position that engaging a third-party vendor to conduct a forensic search of the phones of all seven Defendants is disproportionate to the needs of the case. Plaintiff's reference to the City having substantial resources is an irrelevant assumption that belittles the use of taxpayer money and in no way justifies ordering the unduly burdensome and costly discovery of forensic imaging of Defendants' cell phones. All relevant text messages, including the photos and videos shared therein, have been produced along with the time and date stamps and the location of the photos and videos, with the exception, however, of Ring camera footage sent in a text exchange between Defendants Jimenez and Guzman. This footage no longer exists: the footage was recorded in January of 2023, nine months before Plaintiff's arrest and well before Defendants had any knowledge of this lawsuit. Defendants have produced all relevant information, and there is no allegation or factual basis that shows otherwise. Consequently, Plaintiff's request for forensic imaging is unduly burdensome.

Defendants respectfully request that the Court order briefing if it is inclined to hear legal arguments on this request. We also respectfully request that if the Court were to order forensic imaging, that the parties be provided time to hold an e-discovery conference and draft an ESI protocol in accordance with the Local Rules and Federal Rules of Civil Procedure.

***Production of Video Footage from the Stationhouse and from Officers' Body Worn Cameras (BWC)***

Plaintiff's Position:

Plaintiff claims that among his personal property that was taken from him by PAPD at the time of his arrest was a Rolex watch valued at $50,000. (ECF 1 ¶¶ 61, 104-110) Plaintiff further claims that this watch was never returned to him. (*Id.*). Through counsel, Plaintiff filed a litigation hold/preservation letter on [date] and an internal affairs (IA) complaint on [date] relating to the loss of his watch. Plaintiff demanded the preservation of various materials, including stationhouse video recordings showing Plaintiff in the custody of PAPD.

In discovery, Defendants produced recordings of IA investigation interviews, in which two individual Defendant Officers separately testified under oath that, after Mr. Bellinger had been processed and released from custody, he asked to retrieve tools from his vehicle. PAPD brought his vehicle, which had been seized, to an adjacent garage area that was under video surveillance and walked Mr. Bellinger to the vehicle to collect his tools. One officer, [name], testified that the vehicle was brought to the garage area specifically because the area was under video surveillance, and that video surveillance and his BWC, which he specifically turned on, was being used to create a record in the event that Mr. Bellinger later made a claim against PAPD.

No footage from the stationhouse, the garage, or any officer's BWC captures this interaction, which would show that Plaintiff was not wearing his watch at the time he was released from PAPD custody, while earlier BWC footage shows he was wearing his watch at the time of his arrest. (ECF 1 ¶¶ 105-106). Such footage is thus directly relevant to Plaintiff's damages as well as the Defendant Officers' states of mind and/or motives in connection with Plaintiff's arrest and prosecution.

Defendants have advised that stationhouse/garage footage was subject to a retention policy and no longer available at the time Plaintiff submitted the litigation hold and preservation letter. Defendants have further asserted that officers in the precinct intake area are not required to have their BWC turned on and that the escorting officer's BWC footage does not exist. Defendants have agreed to identify with specificity the retention policy governing the stationhouse footage. Defendant has produced no information explaining the absence of the BWC footage. It is particularly noteworthy that official PAPD records reflect entries that "bwc died" on the relevant date and time but indicate that those body worn cameras belonged to other officers.

Plaintiff contends that this footage and related audit logs are highly probative of the events underlying his false-arrest, fabrication-of-evidence, and due-process claims and are therefore discoverable under Rules 26 and 34. Plaintiff requests that the Court direct Defendants to identify with specificity what efforts were made to locate the missing footage, the applicable retention policy, and whether any footage was overwritten or deleted, and when. Plaintiff further requests

that the Court direct Defendants to produce logs and/or audit trails supporting the position that the requested footage no longer exists.

Defendants' Position:

This is the first Defendants are learning that the reason Plaintiff seeks certain stationhouse and body worn camera footage is because of an alleged missing watch. It is entirely unclear what relevance the alleged missing watch has to the remaining claims of false arrest and malicious prosecution. While Plaintiff referenced the watch in the factual background of his Complaint, he did not assert any claim relating to it. Accordingly, discovery concerning the watch is irrelevant.

Plaintiff is in possession of the PAPD's video retention policy. Because that document includes a range of policies beyond video retention, Defendants had previously agreed to identify the specific policy applicable here. Now that Defendants understand the reason for Plaintiff's request—the alleged missing watch—it is Defendants' position that the retention schedule is irrelevant and unlikely to lead to the discovery of admissible evidence. Nevertheless, because it has already been requested from the PAPD, Defendants will produce it upon receipt.

As Defendants set forth in their October 31, 2025, letter to Plaintiff, Defendants are not in possession of any body-worn camera footage for the period in which Defendants Almanzar and Batista escorted Plaintiff to his vehicle on September 8, 2023. Defendants are likewise not in possession of any body-worn camera footage from the officers assigned to the property area at the stationhouse, as those officers are not required to wear body cameras. Lastly, as Plaintiff was advised at the time he filed his IA Complaint and before filing this lawsuit, the stationhouse footage is also no longer available.

Now that Defendants understand that Plaintiff seeks this information for reasons pertaining to his alleged missing watch, and not to any of the four surviving counts of his Complaint, it is Defendants' position that Plaintiff's request is irrelevant, outside the scope of discovery, unlikely to lead to admissible evidence, and unduly burdensome.

### *Production of Internal Affairs, Disciplinary, and Misconduct Records*

Plaintiff's First RFP provides:

> 14. Produce all documents related to the Brady disclosure dated November 17, 2023, including drafts, internal communications, and records of dissemination.

> 15. State whether any Defendant has been the subject of formal or informal complaints, notices of claim, lawsuits, or disciplinary actions related to misconduct, fabrication of evidence, suppression of exculpatory evidence, false statements, mishandling of property, or improper arrests within the past seven (7) years. For each matter, identify the nature of

the complaint, the date filed, names of parties, causes of action, case numbers, courts, outcomes (including settlements or judgments), and any disciplinary findings or actions taken.

18. Produce personnel, disciplinary, and internal affairs records relating to any of the individual Defendants reflecting complaints, investigations, or findings related to truthfulness, use of force, bias, civil rights violations, or misconduct relevant to the allegations in this case, covering the period from September 2018 to the present. Include records concerning:
   a.   Pre-employment psychological screening tests and evaluations;
   b.   Job descriptions, performance evaluations, and training records;
   c. Complaints, investigations, and disciplinary actions, regardless of final disposition;
   d. Truthfulness, hiring, promotion, and retraining.

**Plaintiff's Position:**

Defendants responded as follows to requests 14 and 15:

> Defendants object to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and to the extent that it seeks information that is not material or necessary to any claim or defense in this action. Defendants further object to this request on the grounds that Plaintiff is already in possession of all responsive documents. Defendants further object to this request as it seeks discovery which, if it exists, is not in the possession of Defendants but rather of from the Middlesex County Prosecutor's Office.

Defendants responded as follows to request 18:

> Defendants object to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and to the extent that it seeks information that is not material or necessary to any claim or defense in this action. Defendants further object to this request as it seeks documents protected from disclosure by the Attorney General's Internal Affairs Policy & Procedures Guidelines. Subject to and without waiving any objections, Defendants will produce Internal Affairs documents pertaining to the complaint filed by Plaintiff.

Defendants produced 23 pages of documents which, according to Defendants, represents the "IA Jackets" of each Defendant Officer except Defendant Jimenez, who is retired. The documents reflect the name of the training completed by each officer, the folder from which the training came, the revision date and the sign date. In response to Plaintiff's objection to this production as lacking, Defendants stated:

> With the exception of Lt. Jimenez, who is now retired, Defendants produced their IA jackets reflecting their completed trainings. (DEF0175-0198). Plaintiff's request for the

> entire IA jacket of all six Defendants is overly broad and unduly burdensome. The only misconduct history that is even arguably relevant would be any history of wrongful arrests. Defendants will review the matter and produce additional responsive documents if any exist.

Letter of August 11, 2025 at 2.

On October 31, 2025, Defendants updated their response:

> To the extent Plaintiff is requesting the full investigatory file underlying the Brady disclosure pertaining to Lt. Jimenez, Plaintiff is not entitled to this material as that is a criminal procedural requirement not applicable in a civil action. Additionally, this information is protected from disclosure by Section 9.6.1 of the Attorney General's Internal Affairs Policy & Procedures Guidelines.
>
> \*\*\*
>
> Defendants object to Plaintiff's request for the complete Internal Affairs file for all seven officers as this request is overly broad, unduly burdensome, and seeks information that is neither material nor necessary to any claim or defense in this action. The only potentially relevant disciplinary history would be any history of wrongful arrests or malicious prosecution. A search for such matters revealed a single false arrest allegation against Lt. Jimenez from 2001, in which Lt. Jimenez was exonerated. Given that the matter occurred nearly twenty-five years ago, the file exists only in paper form, and Defendants are continuing efforts to locate it.

Letter of October 31, 2025 at 1, 2.

Plaintiff's demands for police personnel files were narrowly tailored to the allegations of the Complaint—which alleges not just false arrest and malicious prosecution, but also fabrication of evidence, suppression of *Brady/Giglio* material, theft, and false statements in sworn reports. These claims make internal affairs (IA), disciplinary, and misconduct records that reflect allegations or findings of false arrest, fabrication of evidence, suppression of *Brady/Giglio* material, theft, and false sworn statements materials relevant to the issues of credibility, intent, and lack of mistake. In searching for, and agreeing to produce, allegations of false arrest and malicious prosecution, Defendant concedes the relevance of the personnel files to the instant matter. Plaintiff therefore seeks production of all responsive IA, disciplinary, and misconduct files for each Defendant Officer, including any investigations involving dishonesty, falsification, or interference with evidence, subject to appropriate confidentiality protections under the Discovery Confidentiality Order.

With respect to the substantiated claim against Lt. Jimenez, Plaintiff disagrees that Section 9.6.1 of the Attorney General's Internal Affairs Policy & Procedures Guidelines unconditionally bars disclosure of the requested materials. In fact, those guidelines include a provision for disclosure pursuant to court order. *See* Section 9.6.1(d) of the Attorney General's Internal Affairs Policy & Procedures Guidelines[5]. In the underlying criminal case, Plaintiff's counsel was advised through a *Brady* disclosure from the Middlesex County Prosecutor's Office (MCPO) that, in May 2015, both MCPO and PAPD were notified that Defendant Jimenez

> was spending time in Woodbridge, New Jersey during the day while on duty for the Perth Amboy Police Department. This conduct allegedly occurred between September 10, 2014 and February 24, 2015. It was determined through the above-noted Internal Affairs investigation that Lt. Jimenez spent periods of time engaging in non-work-related activities in Woodbridge while on duty and did make false entries into department records regarding that time. However, it was determined that he also did not put in for time and seek compensation for work that he was entitled to. Lt. Jimenez was sustained on the following administrative charges: Obedience to Law and Regulations (Theft of Time) and Willfully Making False Entry into any Department Record.

MCPO advised Plaintiff's attorney that if he sought "further information on these findings, please prepare a Protective Order and upon its execution by the trial judge, the State will provide the underlying documentation to counsel." *Id.* at 2. While Plaintiff's counsel did not then seek additional information, Plaintiff's counsel seeks it now. That the criminal case is now over does not change the discoverability of the underlying material: if it was available to Plaintiff when he was a criminal defendant and not barred by the Attorney General's Internal Affairs Policy & Procedures Guidelines, it should be available now, subject to the provisions of the Discovery Confidentiality Order.

Defendants' Position:

Plaintiff appears to be conflating their request for *Brady* disclosures with their request for the internal affairs files, which were separate document requests.

Regarding Plaintiff's request for *Brady* materials, it is unclear what Plaintiff seeks. Plaintiff is already in possession of the *Brady* disclosure pertaining to Defendant Jimenez. No other Brady disclosures exist. To the extent Plaintiff is requesting the full investigatory file underlying Defendant Jimenez's disclosure, it is Defendants' position that Plaintiff is not entitled to that material. Disclosure of *Brady* material is a requirement of **criminal procedure**—not civil. As is clear from Plaintiff's Position, Plaintiff received the disclosure in a criminal proceeding from the State and was directed by MCPO to prepare a Protective Order if he wished for additional information. Plaintiff did not and is now trying to assert any rights he may have had in his criminal

---

[5] Available at: https://www.nj.gov/oag/iapp/docs/IAPP_November-2022.pdf

proceedings against the State against Defendants in this separate civil proceeding. This improper and not supported by law. Additionally, the investigatory file is protected from disclosure by Section 9.6.1 of the Attorney General's Internal Affairs Policy & Procedures Guidelines.

As to Plaintiff's request for the complete Internal Affairs file for all seven officers, Defendants maintain their objection that this request is overly broad, unduly burdensome, and seeks information that is neither material nor necessary to any claim or defense in this action. The only potentially relevant disciplinary history would be any history of wrongful arrests or malicious prosecution. Defendants searched for any such records and found a single false arrest allegation against Defendant Jimenez from 2001 in which Jimenez was exonerated. As Defendants informed Plaintiff, because this matter is nearly twenty-five years old, the file is not readily available as it exists only in paper form and Defendants are continuing efforts to locate it. Defendants position that wrongful arrest and/or malicious prosecution disciplinary history may be relevant is not, as Plaintiff contends, a concession that the full internal affairs files of all seven officers are relevant.

**Other Ongoing Discovery Matters**

On October 31, 2025, Defendants served Plaintiff with a deficiency letter listing multiple inadequate interrogatory responses and responses to Defendants' document requests. Counsel for Plaintiff advised that they will provide a response by November 21, 2025. Defendants also anticipate serving objections to Plaintiff's privilege log. At this juncture, the Court's intervention is not needed on these matters.

We thank the Court for its consideration.

                                        Respectfully submitted,

/s/ Fern Mechlowitz

Fern Mechlowitz
Karen A. Newirth
*Counsel to Plaintiff*