# MURPHY ORLANDO LLC

*Attorneys at Law*

494 BROAD STREET • 5TH FLOOR • NEWARK, NJ 07102

*tel* 201.451.5000 • *fax* 201.451.5000

WWW.MURPHYORLANDO.COM

MALLORY B. OLWIG
*Associate*

molwig@murphyorlando.com

January 21, 2026

<u>*Via CM/ECF*</u>

Hon. Cari Fais, U.S.M.J.
Dr. Martin Luther King Justice Building
470 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

**Re:    *Christopher Curtis Bellinger III v. The City of Perth Amboy, et al.***
        **Docket No.: 24-CV-8442-JKS-CLW**

Dear Your Honor:

This firm represents all named Defendants in this civil action. Following the most recent status conference, the Court ordered the parties to complete an ESI protocol by January 12, 2026. [Dkt. 70]. At the parties' joint request, that deadline was extended to January 19, 2026, to permit additional time to meet and confer in an effort to reach an agreement. [Dkt. 72]. Through those efforts, the parties have reached substantial agreement regarding the custodial devices at issue, the applicable search terms, production format (including use of RSMF for text and chat messages and native production of audio and video files), Bates labeling, manual review during two defined time periods, and treatment of deleted data to the extent collected. The parties have been unable to agree, however, on the appropriate method of extracting data from the subject mobile devices—specifically, whether Defendants' proposed advanced logical extraction is sufficient.

The parties respectfully seek the Court's intervention to resolve this issue. The parties' respective positions are set forth below.

## Plaintiff's Position

This dispute does not concern whether Defendants must produce records from the subject cell phones; the Court has already ordered that they do so, in native form with metadata. Nor does it concern whether Defendants acted in good faith in making prior productions. The narrow issue presented is whether Defendants' proposed method of extraction is capable of complying with the Court's Order in light of what Defendants' own production reveals. Plaintiff seeks only a method sufficient to ensure a complete and reliable production of the records the Court has already ordered—not expanded discovery, direct access to devices, or any "extraordinary" relief.

**<u>The Court's December 22 Order Requires a Method Capable of Producing All Responsive Native Records With Metadata</u>**



Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 2 of 15

On December 22, 2025, after considering the parties' joint letter of November 7, 2025 [Dkt. 67] and hearing concerning scope of review and production, missing text messages, metadata, and related digital evidence, the Court ordered Defendants to produce all responsive records from the cell phones of Defendants Jimenez and Guzman in native form with metadata, and directed the parties to complete an ESI protocol governing that production. In doing so, the Court necessarily rejected Defendants' position—repeated again here—that no forensic collection or search of the subject devices was warranted. *See* Dkt. 67 at 5. *Accord Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.,* No. 20-11050(CPO/MJS), 2022 U.S. Dist. LEXIS 108271, at *9-12 (D.N.J. June 17, 2022) (describing judicial considerations in ordering production of cell phone data and citing cases).

Although the Order does not specify a particular technical extraction method, it specifies the result that must be achieved: the production of all responsive records, in native format, with metadata. Courts routinely leave the technical means of compliance to an ESI protocol, subject to Rule 26. Accordingly, the issue before the Court is whether Defendants' proposed method—a logical extraction—is capable of complying with the Court's directive, particularly in light of what Defendants' own production reveals.

The extraction methods at issue differ materially in what data they capture. A logical extraction retrieves only data that is currently user-accessible through the device's operating system and applications, such as active text messages, contacts, and call logs, and generally does not capture deleted messages, application databases, or system-level artifacts. By contrast, an FFS extraction captures the device's underlying application data and file structure, including databases and metadata necessary to determine whether communications or media once existed and were later deleted or altered. An FFS extraction thus captures, to the extent available, the information and artifacts needed to assess completeness, deletion, and timing—issues directly implicated by the Court's Order and by the production to date.

**<u>Plaintiff's Proposed ESI Protocol Is Narrowly Tailored and Proportional</u>**

On January 12, 2026, Plaintiff provided Defendants with a proposed ESI protocol specifically designed to ensure compliance with the Court's Order while minimizing burden and intrusion. Consistent with the issues identified in the parties' prior submissions and at the status conference, Plaintiff's proposed protocol expressly contemplated forensic imaging of the subject mobile devices using either a physical extraction or a full file system ("FFS") extraction method. The proposed protocol further includes the use of targeted search terms and a defined date range keyed to Defendants' previously produced text messages, as well as attorney review prior to production and agreed production formats.

The proposed search-term list—approximately seventy-five terms—is not broad or exploratory. Rather, it is keyed directly to language, names, locations, and investigative terminology appearing in Defendants' own produced text messages, including references to surveillance activity, database



Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 3 of 15

searches, and coordination between officers regarding Plaintiff beginning more than two years before his eventual arrest. Because the terms are drawn from investigative communications and law-enforcement terminology reflected in Defendants' own texts, they are unlikely to retrieve personal, familial, or purely private communications. The protocol does not permit unfettered review of personal communications and does not authorize production outside the agreed temporal scope.

In addition, Plaintiff's protocol includes multiple safeguards that Defendants ignore in characterizing the request as "extraordinary," including: (i) attorney-mediated review prior to production; (ii) preservation of privilege and privacy through redactions and logging; (iii) production of text and chat messages in RSMF to avoid decontextualized review; and (iv) metadata limitations tailored to the specific ESI categories at issue.

Far from seeking unrestricted access to Defendants' devices, Plaintiff's proposed protocol reflects a conventional, proportional approach to mobile-device discovery where completeness and metadata are at issue. Defendants identify no alternative protocol capable of resolving the concrete gaps reflected in their own production.

**<u>Defendants' Production Reveals Objective Gaps in Communications</u>**

Defendants' prior productions reveal that the subject cell phones contain multiple, concrete indicators of missing communications. A logical extraction is insufficient where, as here, there is evidence that responsive records no longer exist on the subject phones. Here, that evidence includes:

1. Asymmetrical conversations across the two devices

Text-message exchanges between two phones ordinarily appear in mirrored form, with messages appearing as "sent" on one device and "received" on the other. Here, messages appear on one device without corresponding mirrored messages on the other. This asymmetry strongly suggests that messages were deleted from at least one device.

Defendants' assertion that certain gaps are explained by Defendant Jimenez's replacement of his phone does not resolve the discovery issues presented. A device change itself creates additional questions regarding whether data was backed up, migrated, restored, partially restored, or deleted during the transition—questions that cannot be answered through a logical extraction or testimonial assurances alone. A full file system extraction is capable of identifying backup databases, restore artifacts, application logs, and other system-level indicators bearing on whether responsive communications once existed on the device and when they were removed. A logical extraction cannot provide that information.

2. Missing context and referenced information from texts



Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 4 of 15

The content of the produced messages further confirms that some communications are missing:

- On January 26, 2022, a text states: "that's who it came back to when I ran it last time." The message plainly references an earlier investigative action ("last time") and a prior result, yet no corresponding communications or searches reflecting that earlier inquiry appear in Defendants' productions to date.
- On March 7, 2022, one officer texted he had "sat on [Bellinger's] house" and observed "no movement," while another indicates that "Dave" had gone by Bellinger's house during his day shift. These messages describe coordinated surveillance activity involving multiple officers and time periods. Defendants' productions to date, however, contain no additional communications or records reflecting planning, coordination, follow-up, or reporting of that activity.
- On January 24, 2023, one of the Defendants texted "I'm gonna check FLOCK to see his pattern . . . Maybe can flag this car when he goes to that area." Again, there are no messages suggesting the results of any FLOCK search or efforts to "flag" the car.

Defendants' assertion that communications occurred across multiple platforms further underscores the need for a forensic method capable of examining system-level artifacts. Where text messages represent only fragments of broader communications, the timing, sequencing, and metadata associated with those messages take on heightened importance. A full file system extraction can capture call logs, deleted call records, application databases, and system artifacts necessary to correlate communications across platforms. A logical extraction, which presents only what is currently visible to the user, cannot provide that contextual information.

These examples demonstrate that communications are missing from the previously produced messages, such that an extraction method that can capture deleted or overwritten information is necessary here.

   3.   Acknowledged loss of Ring video

Defendants have represented that a Ring video sent from one Defendant to another with a message suggesting it captured Mr. Bellinger is no longer available. This is an express acknowledgment that relevant digital evidence once existed but is now missing. Where evidence loss is conceded, the surrounding communications, metadata, and application-level artifacts take on heightened importance in determining what occurred and when.

Defendants' explanation regarding the Ring video does not undermine Plaintiff's request; it reinforces it. Defendants acknowledge that a Ring video depicting Mr. Bellinger once existed and was transmitted between Defendants but is no longer available. Even accepting Defendants' representation that the video was deleted or overwritten in the ordinary course, a full file system


Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 5 of 15

extraction is uniquely capable of identifying residual artifacts associated with that video—such as cached files, backup remnants, download records, thumbnails, application logs, or metadata reflecting when the video existed, how it was transmitted, and whether copies were stored elsewhere. A logical extraction, which captures only currently user-accessible content, cannot address these issues.

The anomalies described above raise legitimate questions about deletion, overwriting, or incomplete capture of data from the subject devices. Taken together, these facts demonstrate objective gaps in the records presently existing on the Defendants' phones. Defendants' explanations address why certain data may no longer be visible to the user; they do not address whether forensic artifacts reflecting that data remain accessible at the system level. **For that reason**, a logical extraction is insufficient to comply with the Court's Order.

## A Full File System Extraction Is Necessary and Proportional, and Does Not Raise Privacy Concerns

A logical extraction retrieves only data that is currently user-accessible through the operating system and applications. It does not reliably capture or expose deleted communications, application databases, or system-level artifacts necessary to determine whether missing messages or media once existed and were later removed.

By contrast, a full file system ("FFS") extraction captures application databases, system metadata, and artifacts necessary to determine whether communications or media once existed, when they were created, and whether they were later deleted or altered. It is therefore the least intrusive method capable of effectuating the Court's Order under the circumstances presented.

Plaintiff's request is narrowly tailored and proportional. It is limited to two Defendants' custodial devices already ordered to be produced, subject to agreed search terms, defined time periods, and attorney review safeguards. *Cf. Ranton v. Quest Diagnostics, Inc.*, No. 22-cv-14758, 2024 U.S. Dist. LEXIS 109623, at *6–8 (D.N.J. June 20, 2024) (request for unlimited search of non-parties' devices speculative, overbroad, not proportional). Plaintiff does not seek direct access to the devices. The incremental burden of performing a FFS extraction of two phones is modest and one-time, particularly when weighed against the risk of continued disputes arising from an incomplete production.

Moreover, Defendants have represented that no official records from the PAPD's systems (including any daily activity reports, database searches (including FLOCK), or the like) exist that reflect the coordinated investigation of Mr. Bellinger, making the subject devices the only potential source of this information.

Finally, there is no risk of any invasion of Defendants' privacy, which is amply protected by the agreed-to portions of the parties' proposed ESI protocol.  Privacy concerns generally arise in the



Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 6 of 15

context of requests for unfettered access to devices, which Plaintiff does not seek. Rather, Plaintiff seeks a controlled forensic extraction performed by Defendants' vendor, subject to agreed parameters and mediated by an attorney review. *See Vogt v. Novo Bldg. Prods., LLC*, No. 22-cv-1756, 2023 U.S. Dist. LEXIS 199588, at *9–10 (D.N.J. Nov. 7, 2023). Moreover, the parties have in place a Confidentiality Order that can address any remaining privacy concerns.

Defendants' invocation of privacy concerns rings hollow where the Perth Amboy Police Department does not provide work-issued cell phones and Defendants chose to conduct work-related communications on their personal devices. Defendants cannot both rely on personal phones to coordinate official law-enforcement activity and then invoke the personal nature of those devices to shield responsive work-related communications from discovery ordered by the Court.

### Burden, Cost, and "Common Practice" Do Not Justify a Method Incapable of Complying With the Court's Order

Defendants repeatedly assert that a full file system ("FFS") extraction would be unduly burdensome, expensive, and disproportionate. Those assertions are unsupported by any evidence and therefore cannot defeat discovery ordered by the Court. Under Federal Rule of Civil Procedure 26(b)(1) and (b)(2), the party resisting discovery bears the burden of demonstrating undue burden or cost, and "[c]onclusory statements by counsel are insufficient to establish undue burden or disproportionality." *Vogt v. Novo Bldg. Prods., LLC*, No. 22-cv-1756, 2023 U.S. Dist. LEXIS 199588, at *9 (D.N.J. Nov. 7, 2023); see also *Ranton v. Quest Diagnostics, Inc.*, No. 22-cv-14758, 2024 U.S. Dist. LEXIS 109623, at *6–7 (D.N.J. June 20, 2024).

Here, Defendants submit no declaration, vendor estimate, or factual showing regarding the purported cost or burden of an FFS extraction. They do not quantify the expense, compare it to the cost of the "advanced logical extraction" they propose, or explain why an FFS extraction of two identified custodial devices—already ordered to be produced and subject to agreed search terms, temporal limitations, and attorney review—would impose an undue burden. In the absence of such a showing, Defendants' claims of burden amount to speculation and cannot override the Court's Order. See *Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*, No. 20-11050 (CPO/MJS), 2022 U.S. Dist. LEXIS 108271, at *10–11 (D.N.J. June 17, 2022) (proportionality analysis requires concrete facts, not generalized assertions).

Defendants' related contention that an "advanced logical extraction" should be accepted because it is more "common" in civil litigation is likewise misplaced. Discovery disputes are not resolved by reference to what is most frequently done, but by what is necessary to comply with the Court's Order in the circumstances presented. A method's prevalence does not establish its adequacy where the record demonstrates objective gaps that the method cannot address. See *Ranton*, 2024 U.S. Dist. LEXIS 109623, at *7 (rejecting reliance on generalized practices where specific deficiencies are shown).



Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 7 of 15

Defendants also selectively invoke The Sedona Principles to argue that responding parties may choose the least burdensome method of production. Sedona, however, does not endorse production methods that are incapable of yielding required information. To the contrary, Sedona emphasizes that proportionality and method selection must be informed by the nature of the ESI and the discovery issues presented, and that more robust collection methods may be warranted where completeness or deletion is in question. See *Par Pharm., Inc. v. QuVa Pharma, Inc.*, No. 17-cv-6115, 2019 U.S. Dist. LEXIS 30828, at *15–17 (D.N.J. Feb. 26, 2019) (recognizing that proportionality does not excuse production methods incapable of resolving material discovery issues). Sedona's guidance does not permit a producing party to rely on a method that cannot satisfy a court-ordered production simply because it is cheaper or more common.

Nor does proportionality turn on whether a less complete method would be less expensive. Where, as here, the Court has ordered production of all responsive records in native form with metadata, the relevant inquiry is whether the proposed method is capable of complying with that directive. A method that cannot assess completeness, deletion, or timing is insufficient regardless of cost.

Finally, Plaintiff's request is narrowly tailored. It is limited to two custodial devices, incorporates targeted search terms drawn from Defendants' own communications, provides for attorney-mediated review and logging, and does not seek direct access to the devices. Against that backdrop, Defendants' unsupported claims of burden, cost, and "common practice" do not justify denying the only extraction method capable of effectuating the Court's Order

**Plaintiff Does Not Seek an "Extraordinary Remedy"**

Defendants rely on case law describing forensic examinations as an "extraordinary remedy" subject to heightened proportionality and privacy concerns. Those cases address whether a forensic examination should be ordered in the first instance, not how an already-ordered production of native ESI with metadata must be implemented. *See, e.g., Vogt*, 2023 U.S. Dist. LEXIS 199588, at *6–10; *Ranton*, 2024 U.S. Dist. LEXIS 109623, at *6–8; *Korotki v. Cooper Levenson, April, Niedelman & Wagenheim*, P.A., 2022 U.S. Dist. LEXIS 108271, at *9-12. Here, the Court has already ordered production of native records with metadata. The remaining dispute concerns adequacy of method, not entitlement.

The "extraordinary remedy" standard is designed to guard against speculative fishing expeditions. It does not apply where, as here, the requesting party identifies concrete, objective indicators of missing or unavailable data on the face of the production itself. *See Ranton*, 2024 U.S. Dist. LEXIS 109623, at *7 (distinguishing speculation from evidence suggesting missing ESI); *Par Pharm., Inc. v. QuVa Pharma, Inc.*, No. 17-cv-6115, 2019 U.S. Dist. LEXIS 30828, at *15–17 (D.N.J. Feb. 26, 2019).

Defendants repeatedly characterize Plaintiff's request as speculative, but the request is grounded in concrete facts appearing on the face of Defendants' own production, including acknowledged



Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 8 of 15

loss of a Ring video, gaps associated with a device replacement, and investigative communications referencing activity not otherwise reflected in produced records. Under these circumstances, Plaintiff does not seek a forensic examination to search for hypothetical evidence, but to determine the completeness and integrity of evidence the Court has already ordered produced.

**Conclusion**

The Court has already ordered Defendants to produce all responsive records from the subject cell phones in native form with metadata. Defendants' production reveals objective indicators of missing communications and data loss—including asymmetrical messages, references to unproduced communications, and the acknowledged loss of a Ring video—that cannot be resolved through a logical extraction. Under these circumstances, a full file system extraction is not extraordinary; it is the least intrusive method capable of effectuating the Court's Order and ensuring a complete and reliable production.

**Defendants' Position**

Plaintiff has properly summarized that on December 22, 2025, "the Court ordered Defendants to produce all responsive records from the cell phones of Defendants Jimenez and Guzman (the "Devices") in native form with metadata, and directed the parties to complete an ESI protocol governing that production." [Dkt. 70].

By way of backdrop, the purpose of the Court's Order was to address Plaintiff's concerns that text messages produced by Defendants between Defendant Officers Guzman and Jimenez regarding Plaintiff (1) lacked metadata that would provide location and confirm dates and times of messages; (2) were difficult to match up (referred to by Plaintiff in this Joint Status Letter as "asymmetrical conversations"); and (3) caused concern there may be additional messages that were inadvertently not provided since the production was done manually by Defendants Guzman and Jimenez under supervision by defense counsel.

In compliance with the Court's Order, Defendants retained a reputable third-party eDiscovery vendor, KLDiscovery, to forensically image and search the Devices, and updated Plaintiff's counsel in a meet and confer. Upon being questioned by Plaintiff's counsel whether the imaging would be "logical" or a "full file system," KLDiscovery advised the undersigned that the proposed imaging would be what's known as an "advanced logical extraction," because it is the most common imaging utilized in civil litigation, and would yield the information sought by Plaintiff: native files and associated metadata, including for text messages, photographs, and videos, and deleted data.[1]

---

[1] Plaintiff makes multiple bald, conclusory statements regarding what an advanced logical extraction can and cannot do and does not differentiate between an advanced versus a basic logical extraction. While Plaintiff has purportedly explained the scientific differences between extraction



Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 9 of 15

After an initial meet and confer, the parties exchanged proposed ESI protocols and reached agreement on several issues, including Defendants' agreement to run a list of seventy-five broad search terms (attached hereto) proposed by Plaintiff across the Devices, but Plaintiff now insists upon a full file system ("FFS") extraction, which Plaintiff never previously requested and is completely unnecessary to meet the purpose of Plaintiff's request to image the Devices. It is also not supported by law, persuasive authority, a secondary source, or common practice. For this reason, Defendants have not agreed to the FFS extraction. Thus, the parties' only remaining dispute in drafting the ESI protocol is the method of extraction to be used, which has been recognized to be a crucial distinction. <u>See</u> *The Sedona Conference Commentary on Discovery of Mobile Device Data*, 26 Sedona Conf. J. 735, 765 (2025) ("When it is necessary to collect data from the mobile device, the method of collection selected is crucial").[2]

Although often grouped under the general term of "forensic imaging," not all extraction methods are equivalent. FFS extraction like Plaintiff seeks captures all system artifacts, application data, and large volumes of highly personal and irrelevant information, including all personal communications, communications relevant to other law enforcement activities, including confidential informants, financial records, health information, and anything that one may store on their cell phone. This method is extraordinarily invasive, unduly burdensome, and costly, and Plaintiff has offered no justification other than conclusory, unsupported statements for why such an extreme measure is necessary where an advanced logical extraction will fully satisfy the Court's Order.

Additionally, Plaintiff baldly states that Defendants "bear[] the burden of demonstrating undue burden or cost."  Rule 34(b)(2)(d) of the Federal Rules of Civil Procedure provides that, if a "responding party objects to a requested form [of ESI] . . . the party must state the form or forms it intends to use." Defendants have done so here.

### A. Plaintiff Has Not Set Forth Any Justification For FFS Extraction Beyond Mere Speculation.

---

techniques (albeit, without any supporting reference), he has not set forth any factual basis as to why a FFS is necessary here when an advanced logical extraction will provide the requested information.

[2] "The Sedona Principles was intended to serve as best practices, recommendations, and principles for addressing electronically stored information (ESI) issues in disputes—whether in federal or state court, and whether during or before the commencement of litigation. Throughout its 15-year evolution, The Sedona Principles has been recognized as a foundational guide for attorneys and judges confronting the novel challenges of eDiscovery." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, (2017), https://www.thesedonaconference.org/file-download/download/public/5140.





Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 10 of 15

Plaintiff's position is that, because he has found no evidence elsewhere to support his claims, he requires this heightened extraction method because there is no other way to find any evidence. Plaintiff cites no authority for this proposition, and it is directly contradicted by applicable case law. See Ranton, supra (rejecting plaintiff's argument defendants must be withholding information because none of the produced messages supported her claim and therefore forensic imaging is required, reasoning that "mere suspicion" is insufficient to support an "intrusive examination" of ESI, and holding that plaintiff cannot use forensic imaging to verify the completeness of discovery); Parker v. Atl. City Bd. of Educ., Civ. No. 15-8712, 2017 WL 662979, at *3 (D.N.J. Feb. 17, 2017) (declining to "police" the parties' document production where "no party has given the Court reason to believe they will not produce relevant and non-privileged responsive documents"). Moreover, Plaintiff is not precluded from other discovery methods such as depositions of the Defendant Officers.

As Your Honor is aware, the Defendant Officers in this case are sworn law enforcement officers. While Plaintiff has asserted claims challenging their integrity as officers and their investigative techniques, he has provided on supporting evidence, and courts in this District do not permit such invasive measures based on mere speculation. See Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A., No. 20-11050(CPO/MJS), 2022 WL 2191519 *12-13 (D.N.J. June 17, 2022) (emphasis added) ("With respect to relevance, though Plaintiff's Demands to directly inspect the [Defendants'] [devices] could conceivably uncover relevant materials, they also threaten to sweep in substantial irrelevant information. As to proportionality, these Demands are not commensurate to the needs of the case and appear overbroad. Considering the availability of the information from other sources and **the absence of any specific showing that [Defendants] ha[ve] improperly withheld materials which should have already been turned over**, the Court will not permit such extraordinary and uniquely invasive access.").

Plaintiff attempts to justify the use of this highly invasive and costly extraction technique based upon claims that there are indicators of missing communications. However, there is no factual basis to support these indicators:

1. **Asymmetrical conversations across the two devices"**

Plaintiff alleges "asymmetrical conversations across the two devices," but Defendants have already disclosed to Plaintiff that Lt. Jimenez received a new cell phone in or around 2023. As a result, his cell phone data, including text messages, do not extend to the beginning of the relevant time period. Defendants have repeatedly confirmed that all text message communications between Lt. Jimenez and Sgt. Guzman are symmetrical/mirrored dating back to when Lieutenant Jimenez upgraded his cell phone. Any perceived inconsistencies stem from Lt. Jimenez's device change and do not, contrary to Plaintiff's assertions, indicate deletion or withholding of relevant information.



Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 11 of 15

Importantly, this can be confirmed through the advanced logical extraction Defendants propose. Lt. Jimenez can also provide a sworn affidavit and testify on the subject. Such a costly, invasive, and unduly burdensome procedure like a full-file system extraction is not the appropriate method to confirm that Lt. Jimenez purchased a new phone.

## 2.   Missing context and referenced information from texts

Plaintiff claims that text messages between the Officers must have been deleted because some of the produced messages refer to other communications that are not found in the text messages. As Defendants have repeatedly said, the Defendant Officers communicated regularly via phone calls and department-issued radios, **not just text**. As such, any message that appears to be half of a conversation is because it **is** half of a conversation, because the remainder of the conversation occurred by a different mode of communication, not because the rest of the conversation was deleted.[3] Plaintiff's explanation is unsupported and inconsistent with the Defendant Officers' representations regarding how they communicate, and is inconsistent with the text messages themselves, which show the Defendant Officers did not rely upon text for the majority of their conversations.

Again, there are other means of confirming this. Plaintiff is free to depose both Officers and ask directly about their conversations. Resorting to a full-file system extraction is not the appropriate answer.

## 3.   Acknowledged loss of Ring video

Plaintiff claims that the "loss" of a Ring video supports a heightened intrusion into the Devices, but purposely does not include the circumstances of this "loss" despite full knowledge of same. Defendants have repeatedly represented that the Ring video footage that was recorded by Lt. Jimenez's home surveillance camera no longer exists because it was taken prior to this lawsuit and before any duty to preserve attached, and it was taken before Lt. Jimenez received a new phone. Moreover, the video was either deleted or recorded over in the ordinary course and there is no evidence of some pre-anticipated plan to delete to support any allegation of destruction of evidence.

For the above-stated reasons, Plaintiff's claims of missing communications are unfounded. Plaintiff is using this ESI protocol as a fishing expedition rather than to identify data responsive to her requests or address her original concerns about Defendants' production. Under Plaintiff's own reasoning, the "extraordinary remedy" standard squarely applies, as it is intended to guard against speculative fishing expeditions where, as here, the requesting party has failed to identify "concrete, objective indicators of missing or unavailable data on the face of the production itself." <u>See Plaintiff's Position</u>, <u>supra</u> (citing <u>Ranton</u>, <u>supra</u>, at *7). In the absence of such indicators, Plaintiff

---

[3] Defendants' extraction will include call logs that Plaintiff can review to support his claims.

Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 12 of 15

cannot show that this highly intrusive and costly extraction of sworn officers' personal cell phones is proportionate to the needs of the case. Especially where, as here, Plaintiff's requests can be satisfied through the advanced logical extraction proposed by Defendants.

**B.  Plaintiff Did Not Previously Request FFS and It Is Not Supported By Law or the Sedona Principles.**

As Plaintiff points out, Defendants, in accordance with relevant case law, argue that forensic examination of cellular devices is an extraordinary remedy. See Korotki, supra; Ranton, supra ("A forensic ESI exam is an extraordinary remedy that is required '[o]nly if the moving party can actually prove that the responding party has concealed information or lacks the expertise necessary to search and retrieve all relevant data.'"). Here, the Court ordered forensic imaging to produce native files and metadata, and the advanced logical extraction proposed by Defendants fully satisfies that Order and Plaintiff's request. Moreover, it is consistent with *The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1, Principle 6 (2018) ("Sedona Principles") ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information") and *The Sedona Conference Commentary on Discovery of Mobile Device Data*, 26 Sedona Conf. J. 735, 769 (2025) ("Logical-extraction methods are commonly used in civil proceedings where additional data that can only be acquired through a comprehensive data extraction is not relevant to the claims or defenses at issue").

Plaintiff, on the other hand, has offered no support for the extraordinary remedy of a FFS extraction or any indication that it would yield relevant data. Indeed, he seeks this highly intrusive examination of the Devices—which is inconsistent with his original request—without providing any adequate reason or even a scintilla of legal support. Plaintiff identifies only unspecified "artifacts" to assess deletion but has set forth no evidence to support that such data would even be relevant. This approach is unsupported by case law and the Sedona Principles, which caution that, "[a]bsent a showing of special need and relevance, a responding party should not be required to preserve, review, or produce deleted, shadowed, fragmented, or residual electronically stored information." See Sedona Principle 9; see also Par Pharm., Inc. v. QuVa Pharma, Inc., CV 17-6115 (BRM), 2019 WL 959700, at *6 (D.N.J. Feb. 27, 2019) (quoting Comment 5.g. to the Sedona Principles to caution that "[c]ivil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail.").

Moreover, requiring a FFS extraction is wholly disproportionate to the needs of the case. Especially when considering, not just the undue cost and burden, but also the extreme invasion of privacy into the personal devices of these Officers when there is no basis for it. "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Notes of Advisory Committee on 2015 Amendments* Fed. R. Civ. P. 26; see also Vogt v. Novo Bldg. Prods., LLC, No. 22-1998 (CPO/SAK), 2023 WL

Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 13 of 15


7321494 *13 (D.N.J. Nov. 7, 2023) (citing Fed. R. Civ. Pro. 26(b)(1) (conducting a proportionality analysis to give due consideration to the party's privacy concerns); The Sedona Principles at 746. ("Additionally, like all other documents and ESI, a party generally need not provide discovery of mobile device data that is outside the party's possession, custody, or control, or that it identifies as not reasonably accessible due to undue burden or cost").

Plaintiff baldly states that a FFS extraction will not invoke privacy concerns, but this is an egregious conclusion. Plaintiff purportedly limited his search by proposing search terms, however, Plaintiff failed to mention he proposed **seventy-five** terms, many of which are extremely broad. Running those terms through a FFS extraction for a proposed date range that spans **years** will yield an immense amount of personal data that, with the exception of a few text messages, is wholly irrelevant to this case. By its very nature, FFS extraction invokes serious privacy concerns. An advanced logical extraction like Defendants propose, though still an invasive and extreme measure, will provide all relevant data without unduly burdening Defendants and without "permit[ting] such extraordinary and uniquely invasive access" to the personal and professional activities of the Defendants that are unrelated to this lawsuit. <u>Korotki</u>, <u>supra</u>, at *13.

For all these reasons, Defendants respectfully request that the Court order an ESI protocol directing an advanced logical extraction of the Devices' forensic images, as such an extraction will provide all relevant native files and metadata as Plaintiff requested.

***

The parties thank the Court for its time and attention to this matter. If Your Honor has any questions, please do not hesitate to contact me or counsel for Plaintiff, Karen Newirth.


Respectfully submitted,

**MURPHY ORLANDO LLC**

*/s/ Mallory B. Olwig*
Mallory B. Olwig, Esq.


c:    All Counsel of Record (via CM/ECF)

M O

Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 14 of 15

**Plaintiff's Proposed Search Terms:**

1. "Bellinger"
2. "Christopher" w/3 "Bellinger"
3. "Appice"
4. "Joseph" w/3 "Appice"
5. "518-253-7719" OR "5182537719"
6. "518" w/3 "253"
7. "7719"
8. "732-372-9134" OR "7323729134"
9. "732" w/3 "372"
10. "9134"
11. "Audi" OR "Q7"
12. "Subaru" OR "Forester"
13. "J45" OR "RVM" OR "J45-RVM" OR "J45RVM"
14. "Y96" OR "MNS" OR "Y96-MNS" OR "Y96MNS"
15. "H60" OR "LYG" OR "H60-LYG" OR "H60LYG"
16. "NY" w/3 "Plate*"
17. "New York" w/3 "Plate*"
18. "Temp" OR "Temp tag"
19. "Same car" OR "Same cars"
20. "High beam*"
21. "FLOCK"
22. "Ring" OR "Doorbell" OR "Motion" OR "AlwaysHome"
23. "Camera" OR "Cam"
24. "Video" OR "Footage"
25. "BWC"
26. "Body cam" OR "Bodycam"
27. "MVR"
28. "Mic" OR "Microphone"
29. "Axon"
30. "Upload" OR "Dock"
31. "Hazel"
32. "559 Hazel"
33. "Florida" OR "Florida Grove"
34. "Carlock" OR "Carlack"
35. "Church"
36. "Corner"
37. "Side lot" OR "Lot"
38. "Driveway"
39. "Sat" OR "Sit" OR "Sitting"
40. "Sat on"

M<sub>O</sub>

Hon. Cari Fais, U.S.M.J.
January 21, 2026
Page 15 of 15

41. "Pattern"
42. "Movement"
43. "Follow" OR "Follow him"
44. "Tail"
45. "Flag" OR "Flag this car"
46. "Steady" OR "Steady customer"
47. "Same guy" OR "Same guys"
48. "Buyer"
49. "Customer"
50. "Served" OR "Serving"
51. "Hand to hand" OR "Hand-to-hand"
52. "Deal"
53. "Coke"
54. "Ball" OR "8 ball"
55. "Cash app"
56. "Money"
57. "Sell" OR "Sale"
58. "Warrant"
59. "PC" OR "Probable"
60. "Arrest"
61. "Charge"
62. "Rolex"
63. "Watch"
64. "Property" w/5 "Missing" OR "Lost" OR "Clerk"
65. "Mechanical" OR "Garage" OR "Bay"
66. "Seize" OR "Seized" OR "Seizure"
67. "Forfeit*"
68. "Died" OR "Dead" OR "Battery"
69. "IA" OR "Internal Affairs" OR "OPS"
70. "Complaint" OR "Lawsuit"
71. "Anny" OR "Lopez"
72. "Rivas" OR "Tavarez"
73. "Marcinko" OR "Marengo"
74. "Union" OR "PBA" OR "Local 13"
75. "Rep" OR "Representative"