# MURPHY ORLANDO LLC

*Attorneys at Law*

494 BROAD STREET • 5TH FLOOR • NEWARK, NJ 07102

*tel* 201.451.5000 • *fax* 201.451.5000

WWW.MURPHYORLANDO.COM

abaker@murphyorlando.com

AMANDA K. BAKER
*ASSOCIATE*

June 25, 2026

***Via CM/ECF***
Hon. Cari Fais, U.S.M.J.
Dr. Martin Luther King Justice Building
470 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

> Re:   ***Christopher Curtis Bellinger III v. The City of Perth Amboy, et al.***
> **Dkt. No. 2:24-cv-08442**

Dear Your Honor,

This firm represents all named Defendants in the above-referenced matter. Please accept this joint letter setting forth the parties' positions on ESI searches and geolocation data as ordered by the Court. [Dkt. 91].

As an initial matter, the next status conference is currently scheduled for August 6, 2026. [Dkt. 91]. Due to a scheduling conflict involving Plaintiff's counsel on that date, the parties respectfully request that the status conference be rescheduled. The parties are available on August 7, 2026, and, with the exception of August 13, and August 21, 2026, are otherwise available the weeks of August 10 and August 17, 2026. Should none of those dates be convenient for the Court, the parties respectfully request the Court's next available date.

**Dispute 1: ESI Searches**

***Description of the Dispute:***

The parties are negotiating the terms of an ESI protocol governing the forensic imaging of the cell phones of Defendants Lieutenant Jimenez ("Lt. Jimenez") and Sergeant Guzman ("Sgt. Guzman", together "Defendant Officers").

Defendants propose that they produce responsive, non-privileged text messages, photos, and videos exchanged "between" the Defendant Officers in their native format with metadata.

Plaintiff proposed that Defendants produce responsive, non-privileged text messages, photos, and videos "sent, received, or created by" Defendant Officers, and that Defendants also produce "(a) call logs, including deleted call records; (b) Ring application artifacts, including cached video, thumbnails, application logs, and deletion records; (c) FLOCK application artifacts; (d) location

MO

June 25, 2026
Page 2 of 16

services data, Significant Locations data, photo library location metadata, and other system-level location artifacts; (e) responsive records contained within application databases (such as Messages, Photos, Notes, Calendar, and Reminders), produced in native or industry-standard format and subject to the agreed search terms; (f) deletion artifacts identifying responsive content that once existed on the Device; and (g) responsive ESI from any cloud account identified pursuant to the Cloud Sources clause above."

***Plaintiff's Position:***

Plaintiff's position on (1) the scope of the forensic imaging and search of Defendants Jimenez and Guzman's mobile devices; and (2) the imaging and production of location data identifying when Defendants Jimenez and/or Guzman were within 500 feet of Plaintiff's home is set forth below.

**Issue One: The Scope of the Forensic Imaging and Search**

In a November 7, 2025 joint status letter, Plaintiff sought the Court's intervention because Defendants refused to forensically image the Defendant officers' mobile devices. Indeed, Plaintiff clearly requested that, "[u]nder Rule 26, Defendants should be ordered to forensically image and search the Defendant Officers' electronic devices and disclose all responsive materials in native form." [Dkt. 67 at 5]. This dispute has always been about both the metadata of the texts that were produced in static form *and* capturing all of the responsive data on the Defendant officers' devices.

In the Court's December 23 order, it directed Defendants to "produce all responsive records from the cell phones of Defendants Jimenez and Guzman in native form with metadata" (Dkt. 70.) The December 22, 2025 transcript also confirms that the Court was "really clear" that "anything that is responsive to the requests that exist on those phones should be turned over in native format." Tr. 13. This ruling issued after the Court considered and rejected Defendants' argument that they should only be required to search for, and turn over, certain text messages between Defendants Jimenez and Guzman, and after hearing Plaintiff's argument that the devices should be imaged and *any* responsive information should be searched for and produced:

> I want to be really clear on what the ruling is. The ruling is anything that is responsive to the requests that exist on those phones should be turned over in native format. The parties can get together and work out an ESI protocol and a search protocol, and if there are issues with your meet and confer on that, [] you can raise it in a joint letter with the Court. But that's where the ruling stands right now. Anything that is responsive on those two phones [] should be turned over in native format.

Tr. 13.

As the foregoing makes clear, the dispute about the scope of the forensic image and search of Defendants Jimenez and Guzman's devices were resolved by the Court in December. A forensic image of the subject devices is to be taken, and the agreed search terms should be run against that

MO

June 25, 2026
Page 3 of 16

image.  Defendants' position thus sets forth a tortured interpretation of this Court's clear order and misrepresents Plaintiff's position in the parties' November 7, 2025[1] joint status letter.

The Court's December reasoning and order were correct. The subject devices are a unique source of relevant information within the custody and control of Defendants that Defendants are required to search. *See* F.R.C.P. 34(a)(1) (requiring a party to produce records "in the responding party's possession, custody, or control"); F.R.C.P. 26(b)(1) (discovery reaches "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.") *Accord In re Insulin Pricing Litig.*, 2024 U.S.Dist. LEXIS 99343, *30-31 (D.N.J. May 28, 2024) (An "ESI protocol and search terms work in tandem with the parties' obligations under the Federal Rules and do not replace a party's independent obligation to produce electronic (or paper) documents that are reasonably accessible, relevant, and responsive within the meaning of Rule 34.") (*citing and quoting Raine Grp. LLC v. Reign Capital, LLC*, No. 21-1898, 2022 U.S. Dist. LEXIS 31282 (S.D.N.Y. Feb. 22, 2022).

Defendants are now flouting the Court's clear order, and seeking to relitigate the issue that was already resolved. Their position repeats — in places verbatim — the "extraordinary remedy" and "fishing expedition" arguments they advanced in the parties' January 21, 2026 joint letter [Dkt. 75], including their block quotations of *Korotki* and *Parker*, reproduced word-for-word. The Court responded to these arguments on May 18. [Dkt. 86]. Defendants identify no ground to permit them to relitigate issues already decided. To the extent the Court is willing to entertain that reargument, Plaintiff respectfully relies on its prior submissions.

Plaintiff has more than established the need for a forensic image of the subject devices and has devised a protocol that is sufficiently protective of privacy interests and targeted to capture relevant material. Comment 8.c. of the Sedona Principles provides, "creating a forensic copy clearly is appropriate in some circumstances, particularly when there is unique ESI that can only be found- -or an issue that can only be resolved--through a forensic examination of the system . . ." The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production, 19 Sedona Conf. J. 1, 140-41 (2018). That is precisely the issue here, where Defendants have represented that PAPD neither issued work cell phones nor possesses any records of Defendant Jimenez and Guzman's activities targeting Plaintiff, which culminated in his arrest and led to this lawsuit. *See Par Pharm., Inc. v. QuVa Pharma, Inc.*, Case No. 17-6115 (BRM), 2019 U.S.Dist.LEXIS 30828, *17 (D.N.J. Feb. 27, 2019). In *Par Pharm*, this Court recognized that forensic imaging is appropriate where accompanied by an appropriate protocol and protective measures — precisely what the proposed protocol largely agreed to by the parties provides through targeted search terms drawn from Defendants' own communications, defined temporal limits, attorney-mediated review, and logging.

---

[1] As Defendants take this opportunity to relitigate matters already decided by this Court, Plaintiff incorporates by reference the arguments and authorities set forth in his prior submissions to the Court concerning the ESI dispute.

June 25, 2026
Page 4 of 16

The text messages produced from the Defendant Officers' devices to date, which are not in their native format, document a sustained, multi-year surveillance operation directed at Plaintiff, which included surveillance of Plaintiff's home, database searches and license plate readers. Text messages concerning Plaintiff, identifying his address, describing and including photos of database searches, describing surveillance of Plaintiff's home on multiple occasions, referencing the use of license plate readers, and forwarding Ring camera footage purportedly capturing Plaintiff, were exchanged on March 30, 2021, January 26, 2022, March 7, 2022, January 24, 2023, and September 8, 2023. Despite references to the officers repeatedly surveilling Plaintiff's home, using search databases, and license plate readers, Defendants have represented that no official PAPD documentation[2] of this investigative action exist and that PAPD did not issue official mobile devices to its officers. Critical evidence, unavailable from other sources, is thus likely to be located on applications on these devices.

The absence of PAPD documentation of the officers' investigative action is not the only gap in Defendants' production. Third-party subpoenas to Driveway Finance Corporation and to the Middlesex County Prosecutor's Office returned communications between the individual Defendants and those entities that were responsive to Plaintiff's served document demands but were not produced by Defendants. (These included, for example, emails between Defendant Guzman and prosecutors, which may exist on his mobile device.) These meaningful gaps in production — resulting in part from counsel's reliance on the individual officers' recall rather than a forensically sound search of their devices — illustrate why the forensic imaging of the two officers' devices, when it occurs, must cover the entire data universe each device represents, not merely the extant devices.

These gaps in Defendants' productions belie Defendants' claim that Plaintiff is merely seeking imaging to ensure the completeness of production, or is acting on mere suspicion. Defendants' productions are incomplete, and the mobile devices of Defendants Jimenez and Guzman contain the type of unique ESI that can only be found on those devices.

The subject devices are thus a unique source of relevant information within the custody and control of Defendants that Defendants are required to search. *See* F.R.C.P. 34(a)(1) (requiring a party to produce records "in the responding party's possession, custody, or control"); F.R.C.P. 26(b)(1) (discovery reaches "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.") *Accord In re Insulin Pricing Litig.*, 2024 U.S.Dist. LEXIS 99343, *30-31 (D.N.J. May 28, 2024) (An "ESI protocol and search terms work in tandem with the parties' obligations under the Federal Rules and do not replace a party's independent obligation to produce electronic (or paper) documents that are reasonably accessible, relevant, and responsive within the meaning of Rule 34.") (*citing and quoting Raine Grp. LLC v. Reign Capital, LLC*, No. 21-1898, 2022 U.S. Dist. LEXIS 31282 (S.D.N.Y. Feb. 22, 2022). Defendants' proposed artificial

---

[2] That Defendants are now having a different IT department conduct searches of PAPD's systems does not change the analysis. That PAPD could not locate a single document reflecting Defendants' established surveillance of Plaintiff, and that Defendants used their personal mobile devices to conduct this surveillance – including capturing, reviewing, and sharing Ring video purporting to reflect Plaintiff – is sufficient to warrant the forensic imaging and search.

MO

June 25, 2026
Page 5 of 16

limitations on the data to which the search terms are to be applied is insufficient to capture all relevant data.

Contrary to Defendants' position that the inclusion of application data in the forensic imaging is new, Plaintiff has consistently sought responsive application data. *See* Tr. at 12; n.1 *supra*. Plaintiff has proposed that the ESI protocol include a provision which would allow Defendants to identify applications to exclude from any search, after which the parties would meet and confer to come to an agreement. Plaintiff's position that the search terms should be run against the entire forensic image, including applications, and not just against the communications between Jimenez and Guzman, is therefore consistent with its prior positions, the Court's prior order and the Defendants' obligations under the Federal Rules of Civil Procedure and well-established authority.

***Defendants' Position:***

I. **The December 22, 2025, Order was limited to the production of text messages between Lt. Jimenez and Sgt. Guzman and associated photos and videos in native format with metadata.**

The ongoing dispute concerning the scope of the ESI protocol turns on the parties' competing interpretations of the Court's December 22, 2025, ruling regarding Lt. Jimenez's and Sgt. Guzman's mobile devices. Defendants have consistently maintained that the Court's Order was limited to the text messages between Lt. Jimenez and Sgt. Guzman and required only that those communications, and associated photos and videos, be produced in native format with associated metadata. This interpretation is consistent with the dispute that prompted the December conference in the first instance—Plaintiff's contention that Defendants had failed to produce native copies of the messages, photos, and videos, and their accompanying metadata.

Indeed, in advance of the December 22, 2025, conference, the parties submitted a Joint Status Letter ("JSL") in which "Plaintiff object[ed] to Defendants' failure to produce responsive **text messages, photographs, and videos in their native format**, and to Defendants' refusal to conduct a forensically sound search of the Defendant Officers' digital devices." [Dkt. 67 (emphasis added)]. Thus, the issue before the Court was the production of native files and metadata associated with the responsive communications.

At the December 22, 2025, conference, the Court addressed that dispute and issued an Order "concerning Plaintiff's requests that Defendants produce native versions of **text messages and related metadata [and] certain video evidence**," directing Defendants to "produce responsive records from the cell phones of Defendants Jimenez and Guzman in native form with metadata[.]" [Dkt. 70 (emphasis added)]. The Cout further directed the parties to negotiate an ESI protocol governing that production. [Id.].

The transcript of the December conference, provided by Plaintiff on June 24, 2026, confirms that Defendants' interpretation of the Court's Order is correct. In announcing its ruling, the Court "direct[ed] counsel for defendants to provide the[] messages between Jimenez and Guzman in a native format with the metadata included." [Ex. A at 7:8-10]. The Court further explained:

> Defendants will undoubtedly incur some time and cost to retrieve the requested metadata for the text messages.[3] But the Court does not understand the plaintiff to be requesting a fulsome forensic examination of all seven defendants' phones and the metadata contained therein. **Instead, this request seems to relate only to the native format of the several text messages between defendants Jimenez and Guzman**.

[Id. at 7:14-8:17 (emphasis added)].

The Court then reiterated: "I just want to make clear that the Court's ruling pertains to **the production of metadata of the chats that are responsive and relevant that have been produced**." [Ex. A at 8:14-17 (emphasis added)].

Following the Court's ruling, Plaintiff's counsel—contrary to all prior representations that the imaging was targeted at obtaining metadata—switched gears, expressing concern that Defendants' production was not complete and requesting to broaden the scope of the imaging to ensure completeness in the production of messages between Defendant Officers relating to Plaintiff. Specifically, Plaintiff's counsel stated that Plaintiff was seeking "a forensic image of these two officers' phones because what we have are, from what we understand from defense counsel are what the officers have identified as the times they discussed Mr. Bellinger over a two-year period." [Ex. A at 8:18-23]. Plaintiff's counsel further explained that Plaintiff wanted defense counsel to "search the forensic image to ensure that they have captured all text messages relating to Mr. Bellinger, compliant with the plaintiff's request." [Id. at 9:1-4]. Plaintiff's position twists this colloquy and the Court's subsequent statement that "anything that is responsive to the requests that exist on those phones should be turned over in native format" to argue that the Court ordered a comprehensive forensic examination of the Defendant Officers devices. [Id. at 13:12-15]. This, however, is inaccurate, as is evident when the colloquy is read together with the continued conversation between counsel and the Court, which—when confronted with Plaintiff's request for a full forensic analysis—repeatedly clarified the Court's understanding of the issue before it concerned the text messages between Lt. Jimenez and Sgt. Guzman.[4]

Indeed, when defense counsel explained that, if the issue was simply the production of metadata associated with responsive communications, a full forensic image would not be necessary, the Court questioned whether Plaintiff had an issue proceeding in that matter. [Ex. A at 10:9-12:1]. Plaintiff's counsel did not expressly object but merely responded that the parties could

---

[3] The Court's finding regarding the time and cost to retrieve metadata for the text messages is further indicative that the Court did not contemplate what Plaintiff now demands, which would be significantly more costly and labor-intensive, and is disproportionate to the needs of the case.

[4] During the conference, Plaintiff suggested that, if Defendants are conducting a forensic image anyway, it would not be burdensome to require a full search of the entire resulting image. That suggestion is incorrect and overlooks the additional time, cost, and technical effort to conduct such an impermissible search. To the extent Plaintiff renews that position, it should be rejected as inconsistent with the Court's Order and the proportionality requirements governing ESI discovery.

MO

meet and confer to come up with a protocol. [Id. at 12:2-8]. Defense counsel further explained that Plaintiff should not be permitted to demand a full forensic analysis merely to test the completeness of Defendants' production because such relief is inconsistent with the governing case law in this District. [Id. at 12:25-13:4]. The Court responded that such a request was not its understanding of the relief being sought. [Id. at 13:5-6]. And rightly so, as this is **prohibited by controlling case law and the Federal Rules**. See infra, at II.

Accordingly, the Court's Order cannot reasonably be construed—as Plaintiff asserts—as an order requiring what Plaintiff seeks: an exhaustive search of the entire contents of Defendant Officers' phones, including applications and cloud-based data. To the contrary, Plaintiff's interpretation constitutes an improper fishing expedition into nearly every category of data and every aspect of Lt. Jimenez's and Sgt. Guzman's digital lives merely to confirm the completeness of Defendants' production. This is expressly prohibited under the Federal Rules and under the precedent of this District. See infra, at II.

Despite the limited scope of the dispute as set forth by Plaintiff in the November 7, 2025, JSL, the discussion at the December 22, 2025, conference as reflected in the attached transcript, and the Court's subsequent Order, Plaintiff contends that Defendants must conduct a full file system extraction of the Defendant Officers' phones and then perform a comprehensive search of the entire devices, including applications and cloud-based data, to confirm that no additional responsive information exists. In other words, Plaintiff's interpretation of the Court's Order is that he is entitled to a Court-sanctioned fishing expedition. This argument is legally, procedurally, and factually flawed.

Moreover, over the last six months, Defendants have worked extensively with Plaintiff and have repeatedly agreed to measures that go beyond both the Court's December 22, 2025, directive and what the Federal Rules require. For instance, although the production of metadata associated with responsive communications could have been accomplished through an advanced logical extraction—a less burdensome and less expensive alternative—Defendants agreed to conduct a full file system extraction as Plaintiff requested. Defendants further agreed to run the full list of Plaintiff's seventy-five search terms and to conduct a **manual** attorney review of all text messages exchanged both between the Defendant Officers **and with third parties** on certain dates specified by Plaintiff. Defendants agreed to these measures in an effort to resolve this dispute and to address Plaintiff's concerns.[5]

---

[5] Plaintiff's reliance on the parties' January discussions to state that Defendants previously agreed not to limit the searches is misplaced. Defendants have repeatedly explained to Plaintiff that those discussions occurred in the context of an advanced logical extraction, not the full file system extraction Plaintiff demanded, and Defendants ultimately agreed to as a compromise. Because an advanced logical extraction involves a substantially narrower and less intrusive data set, statements made in the context of that collection method cannot be used to justify the exhaustive review Plaintiff seeks.

June 25, 2026
Page 8 of 16

II.      **Plaintiff's request for a comprehensive search of the Officers' phones, including applications, and cloud-based data, is not supported by the Federal Rules or our District Courts.**

Despite the Court's express findings during the December 2025 conference and its narrowly tailored Order, Plaintiff continues to maintain the position that he is entitled to an expansive forensic examination of the personal cell phones of two undercover law enforcement officers. Plaintiff's proposed protocol dramatically expands the scope of the Court's directive concerning the production of metadata associated with messages, photos, and videos exchanged between the Defendant Officers and instead seeks a comprehensive search of virtually every category of data stored on their devices.

Specifically, Plaintiff seeks a search of **all** messages "sent, received, or created by" Defendant Officers, as well as:

1. Call logs, including deleted call records;
2. Ring application artifacts, including cached video, thumbnails, application logs, and deletion records;
3. FLOCK application artifacts;
4. Location services data, Significant Locations data, photo library location metadata, and other system-level location artifacts;
5. Responsive records contained within application databases (such as Messages, Photos, Notes, Calendars, and Reminders), produced in native or industry-standard format and subject to the agreed search terms;
6. Deletion artifacts identifying responsive content that once existed on the Device; and
7. Responsive ESI from any cloud account identified pursuant to the Cloud Sources.[6]

In short, Plaintiff now seeks, not merely metadata associated with identified responsive communications, but access to nearly every conceivable source of electronically stored information on Lt. Jimenez's and Sgt. Guzman's phones solely to confirm that no additional information exists.[7] That request was not before the Court in December 2025, was not ordered by the Court, and is inconsistent with the Federal Rules of Civil Procedure, the guidance of the Sedona Principles, and the precedent of this District.

---

[6] While the parties agree it is not ripe for judicial intervention, Plaintiff has requested Defendants retain the full imaging until termination of this action. Defendants do not agree, as the hosting fees will be exorbitant. Plaintiff does not require that Defendants "host" the data, but if the parties cannot resolve storage in some other way, this issue may need to be presented to the Court.

[7] Although Plaintiff offered to exclude health, financial, and data apps from his requested search, he specifically included all social media apps despite the Officer Defendants representing that they never used any social media apps to communicate about Plaintiff. Plaintiff has not offered any evidence that the Officers' representations are not credible.

MO

June 25, 2026
Page 9 of 16

As the Court explained during the December 22, 2025, conference, "[t]o resolve production of metadata disputes, courts have generally referred to the Sedona Principles and Sedona Commentaries, which are recognized as the leading authorities on electronic document retrieval and production." [Ex. A at 5:17-20].

The Sedona Principles make clear that forensic data collection is an extraordinary measure because it "requires intrusive access" to an individual's electronic devices and is generally appropriate only in limited circumstances, such as where employees leave under suspicious circumstances or where the theft or misappropriation of confidential information is at issue. See The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production, 19 Sedona Conf. J. 1, 140-41 (2018). **That is not this case**. See infra, at 11-13.

The Sedona Principles further caution against precisely what Plaintiff attempts to do here: "Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail." Id.

Rule 34 of the Federal Rules of Civil Procedure likewise confirms that while ESI is subject to discovery, it "is not meant to create a routine right of direct access to a party's electronic information system." The Advisory Committee Notes caution that "Courts should guard against undue intrusiveness resulting from inspecting or testing such systems." F.R.C.P. 34, Adv. Com. Notes (2006).

Additionally, courts in this District have consistently held that forensic imaging and inspection of electronic devices is an extraordinary remedy that is not warranted merely because a party speculates that additional responsive information exists. See Ranton v. Quest Diagnostics, CV 22-2636 (RMB/MJS), 2024 WL 3092024 (D.N.J. June 21, 2024); Par Pharm., Inc. v. QuVa Pharma, Inc., CV 17-6115 (BRM), 2019 WL 959700 (D.N.J. Feb. 27, 2019) ("[M]ere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures" such as a forensic analysis.); Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A., CV-20-11050 (CPO/MJS), 2022 WL 2191519 (D.N.J. June 17, 2022) (quoting Scotts Co. LLC v. Liberty Mut. Ins. Co., 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007) ("'Mere suspicion' or speculation that a party may be withholding discoverable information is insufficient to support an 'intrusive examination' of the opposing party's electronic devices or information systems.")); Parker v. Atl. City Bd. of Educ., Civ. No. 15-8712, 2017 WL 662979, at *3 (D.N.J. Feb. 17, 2017) (declining to "police" the parties' document production where "no party has given the Court reason to believe they will not produce relevant and non-privileged responsive documents").

The Ranton decision is especially important here. In Ranton, the plaintiff sought a forensic examination of the mobile devices of her former supervisor and coworker after she claimed she had personally seen text messages between them that were central to her case. Id. at *2. She argued that because the defendant was unable to locate the messages in its production, this suggested that they had either been improperly deleted or withheld, and therefore a forensic examination was

June 25, 2026
Page 10 of 16

necessary to confirm what occurred. Id. The defendant, on the other hand, represented that it conducted "numerous reviews" of the text messages retrieved from a forensic copy of the phones and that "absent any reason to doubt the completeness of Defendant's response, the intrusion upon [the individuals'] privacy that the forensic examinations would impose is disproportionate to the needs of the case." Id.

The Court rejected the plaintiff's request, finding that it was overbroad, and that **even if the request were narrowed**, the plaintiff "had not shown that the forensic examinations she seeks are proportional to the needs of the case and an appropriate measure given the current record." Ranton, 2024 WL 3092024 at *3-4. "Generally speaking, courts have recognized the need to guard against undue intrusiveness and to be cautious in requiring the inspection of electronic devices, in order to protect privacy interests." Id. at *4 (quoting Korotki, 2022 WL 2191519, at *5).

Critically, the Court held that a forensic examination "**is an extraordinary remedy**" appropriate only where "the moving party can actually prove that the responding party has concealed information or lacks the expertise necessary to search and retrieve all relevant data." Ranton, 2024 WL 3092024 at *4 (emphasis added). "'**Mere suspicion' or speculation** that an opposing party may be withholding discoverable information **is insufficient to support an 'intrusive examination'** of the opposing party's electronic devices or information systems." Id. (emphasis added) (quoting Lawson v. Love's Travel Stops & Country Stores, Inc., 1:17-CV-1266, 2020 WL 109654, at *4 (M.D. Pa. Jan. 9, 2020)).

The Court also rejected the plaintiff's argument that a forensic examination was necessary to verify the completeness of the defendant's production. Ranton, 2024 WL 3092024, at *4. In so holding, the Court explained that "[a]bsent good cause to suspect otherwise, 'parties have to rely on the good faith and integrity of opposing counsel to do what they are supposed to do.'" Id. (quoting Parker, 2017 WL 662979, at *3). The Court further noted that "[i]t is fundamental to our litigation system that parties rely on each other's good faith and professional responsibilities to comply with the Rules of Civil Procedure." Id. (quoting Parker, 2017 WL 662979, at *3).

Ultimately, even though the plaintiff claimed to have personally observed the disputed messages, the Court still found that forensic imaging was not warranted and was not proportional to the needs of the case. Ranton, 2024 WL 3092024, at *5. Plaintiff's testimony was not sufficient, particularly because the owners of the cell phones had not been deposed, nor had anyone else besides the plaintiff been deposed on the issue. Id. Instead, the Court instructed the defendant, who had already offered to run search terms to ensure the relevant texts were produced, "to conduct a final review of the text messages" using targeted search terms provided by the plaintiff. Id.

The Ranton Court also noted that the plaintiff was "free to explore the issue further with these witnesses at a deposition or through other normal channels of discovery, and to present any renewed application to the Court should circumstances change." Id. The Court concluded by holding that the "significant sanction" of a forensic analysis "would not be proportional with the record developed to date." Id.

Here, as in Ranton, Plaintiff seeks an intrusive forensic examination into the personal cell phones of two law enforcement officers without any evidence of spoliation or misconduct, but on

M
O

June 25, 2026
Page 11 of 16

mere speculation that something else may exist.[8] As <u>Ranton</u> and other courts in this District have made clear, mere speculation is insufficient as a matter of law to justify the extraordinary remedy Plaintiff seeks. <u>See</u> <u>Ranton</u>, 2024 WL 3092024, at *5; <u>Par Pharm.</u>, 2019 WL 959700; <u>Korotki</u>, 2022 WL 2191519.

Understanding that the merits of this case are not the purpose of this letter, the factual background provides necessary context because, while Plaintiff alleges that a forensic analysis is necessary due to some nefarious, unlawful surveillance, that simply is not true.

Over a period of just over two years, Lt. Jimenez observed conduct he believed—based on his training and experience—to be narcotics transactions occurring **directly in front of his residence**. He reported those observations to his friend and colleague, Sgt. Guzman, who was part of the undercover narcotics unit. On September 8, 2023, following one such observation, Sgt. Guzman and his unit responded and **personally observed** Plaintiff engaging in conduct consistent with a narcotics transaction, which was corroborated by the recovery of suspected narcotics from the other individual involved, Joseph Appice, who admitted to purchasing drugs from Plaintiff.[9]

Plaintiff completely disregards this straightforward explanation—an explanation that is consistent with and corroborated by the text messages themselves—and instead advances a theory that Defendants engaged in a purported "sustained, multi-year surveillance operation directed at Plaintiff." That characterization is unsupported by the record.[10] What happened here is no different in substance from a civilian reporting suspected criminal activity by calling 911 or going into the police station. The fact that the reporting individual is a police officer, and that he communicated those observations to a fellow officer by text message, does not transform this into a multi-year surveillance operation or a coordinated effort to unlawfully target Plaintiff.

Plaintiff has not, and cannot, provide **any** evidence to support his demand that Defendants must conduct an exhaustive, forensic examination of the Defendant Officers' phones, and his mere speculation is not enough. <u>See</u> <u>Ranton</u>, 2024 WL 3092024, at *5; <u>Par Pharm.</u>, 2019 WL 959700; <u>Korotki</u>, 2022 WL 2191519.

---

[8] In Plaintiff's position, he states that the text messages produced by Defendants "document a sustained, multi-year surveillance operation directed at Plaintiff." This mischaracterizes the communications and portrays them as something that they are not. Should the Court wish to review the messages, the Defendants are prepared to submit them for in camera review.

[9] Notably, when Defendants stopped Appice and indicated that they knew what they just witnessed and asked where the drugs were at, Appice responded that they were in his pocket. While Plaintiff had been pulled over at this time, he was not placed under arrest until **after** Defendants confirmed over the radio that they located drugs on Appice. This, in addition to the rest of the factual record, completely dispels Plaintiff's argument that a forensic examination is needed to determine whether probable cause existed.

[10] Plaintiff's repeated references to Lt. Jimenez's Ring **home** camera footage further undermines his surveillance theory. Lt. Jimenez sent the footage to Sgt. Guzman because it captured Plaintiff engaging in what appeared to be a narcotics transaction **in front of Lt. Jimenez's home.**

To the extent Plaintiff relies upon implications that Defendants' production was incomplete based on certain emails produced by the Middlesex County Prosecutor's Office ("MCPO") that were not initially produced by Defendants, that concern has already been addressed. Defendants immediately sought to cure any perceived deficiency by working directly with the City's IT Department, and the responsive emails will be produced in short order. Of note, consistent with Defendants' prior representations, those emails do not contain any communications by Defendants regarding Plaintiff prior to his arrest. Rather, they reflect routine email exchanges between the MCPO and the Perth Amboy Police Department ("PAPD") concerning agency decisions and other administrative details like the seizure of Plaintiff's vehicle and sending the drugs out for testing. Accordingly, there is no evidentiary support for Plaintiff's speculation regarding a purported surveillance effort. To the contrary, the MCPO's production expressly confirms that, although the charges were administratively dismissed, probable cause existed for Plaintiff's arrest.

There is also no evidence that any messages were intentionally destroyed, deleted, or withheld. While Plaintiff initially pointed to a "gap" in the communications as indicative of missing data, Defendants have explained that gap as attributable to the replacement of Lt. Jimenez's cellular device during the relevant period, which is why his messages do not go back as far as Sgt. Guzman's. Plaintiff himself acknowledged that this was not spoliation. Defendants have agreed to provide certain information to Plaintiff regarding Lt. Jimenez's old phone, including the date it was replaced.

To the extent Plaintiff argues that a forensic analysis is needed because there are no official PAPD records documenting the Defendant Officers' activity, that argument is not ripe for discussion. Defendants objected to Plaintiff's request for such records as written because it requested "all memo books, activity logs, daily worksheets, time sheets, tour sheets, assignment records, and/or overtime records, for each date on which Defendant Jimenez or Defendant Guzman observed Plaintiff, his vehicle, his home, or any family member" during a nearly two-year period. During the June 11, 2026, status conference, the parties agreed to meet and confer to narrow this request.

In short, Plaintiff has no basis to extend the Court's December 2025 Order beyond metadata associated with the produced text messages and related photos and videos. Even in Ranton where the plaintiff testified that she **personally observed** certain text messages she claimed were not produced, the Court rejected the notion that such an assertion alone justified a forensic imaging. Here, Plaintiff offers even less. He offers **no evidence** that anything beyond the messages already produced exists on the Defendant Officers' devices.

To the extent Plaintiff has questions regarding what was said in the produced communications, that inquiry can be pursued through deposition testimony and ordinary discovery mechanisms. It does not justify bypassing those procedures in favor of the extraordinary and invasive remedy of forensic analysis of law enforcement officers' personal devices. See, e.g., Ranton v. Quest Diagnostics, No. 22-2636, 2024 WL 3092024, at *4 ("A forensic ESI exam is an extraordinary remedy that is required [o]nly if the moving party can actually prove that the responding party has concealed information or lacks the expertise necessary to search and retrieve all relevant data.") (quotation omitted); Parker v. Atl. City Bd. of Educ., Civ. No. 15-8712, 2017 WL 662979, at *3 (D.N.J. Feb. 17, 2017) (declining to "police" the parties' document production

where "no party has given the Court reason to believe they will not produce relevant and non-privileged responsive documents"); <u>Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.</u>, No. 20-11050(CPO/MJS), 2022 WL 2191519 *12-13 (D.N.J. June 17, 2022) ("[T]hough Plaintiff's Demands to directly inspect the [Defendants'] [devices] could conceivably uncover relevant materials, they also threaten to sweep in substantial irrelevant information. As to proportionality, these Demands are not commensurate to the needs of the case and appear overbroad. Considering the availability of the information from other sources and the absence of any specific showing that [Defendants] ha[ve] improperly withheld materials which should have already been turned over, the Court will not permit such extraordinary and uniquely invasive access.").

In sum, Plaintiff's interpretation of the Court's Order is unsupported factually, legally, and procedurally. Allowing Plaintiff's proposed expansion—a fishing expedition into all applications, cloud storage, and third-party communications on the devices—would be inconsistent with the Federal Rules of Civil Procedure, the Sedona Principles, and the laws of this District.

**Dispute 2: Geolocation Data**

***Description of the Dispute:***

Plaintiff proposes the ESI protocol include all geolocation/GPS data placing Lt. Jimenez and Sgt. Guzman within 500 feet of Mr. Bellinger's residence. Defendants object to this inclusion.

***Plaintiff's Position:***

Through discovery demands, Plaintiff has sought the dates on which Defendants Jimenez and Guzman surveilled Plaintiff's home, as reflected in text messages produced to date. Plaintiff has specifically requested this information and has sought production of documents, including Defendants' log books, time sheets, activity logs, or similar contemporaneous records that would reflect this surveillance. At our status conference on June 18, Defendants represented that they are currently working with the City of Perth Amboy to determine whether any such information exists. As a result, Plaintiff now seeks only that the forensic imaging conducted on the subject devices collect any location and GPS data, such as location services databases and Significant Locations data, that places either officer within 500 feet of Plaintiff's residence at 559 Hazel Avenue from January 1, 2021 through the present, consistent with the agreed search-term period. Should Defendants be unable to specify the dates on which they surveilled Plaintiff's home through other, less intrusive means, Plaintiff will then ask that the Court order, subject to an ESI protocol designed to meet the requirements of proportionality and privacy protections, the production of this location data. To be clear, however, Plaintiff is not requesting that this GPS date be produced now; Plaintiff is only requesting that it be collected and preserved by defense counsel. Defendants' reliance on *Riley v. California*, 573 U.S. 373 (2014), is misplaced: *Riley* addressed the Fourth Amendment limits on a warrantless search of an arrestee's cell phone, not the scope of civil discovery, and Plaintiff's narrow, preserve-only request — limited to data placing the devices within 500 feet of a single residence, with production deferred and subject to a protective protocol — does not implicate the wholesale exposure of "the privacies of life" that concerned the Court in that case.

M O

June 25, 2026
Page 14 of 16

***Defendants' Position:***

In addition to all the ways Plaintiff seeks to expand the ESI protocol as set forth above, Plaintiff also seeks to obtain location and GPS data that places either Defendant Officer within 500 feet of Plaintiff's residence. Plaintiff bases this request on far-fetched allegations that he was the target of an unsanctioned, multi-year surveillance operation. As discussed in detail above, Plaintiff's allegation is unsupported by the record.

After the June 18, 2026, status conference wherein the Court informed Plaintiff that he would need to set forth a legitimate basis for obtaining GPS data of two law enforcement officers, Plaintiff now asks only that Defendants "collect[] and preserve[]" Lt. Jimenez's and Sgt. Guzman's GPS data in the event Defendants are "unable to specify the dates on which they surveilled Plaintiff's home through other, less intrusive means." Again, Plaintiff is proceeding on the theory that he was the subject of a coordinated and improper surveillance operation. The absence of any evidence supporting that theory to date undermines it. Now, Plaintiff is effectively asking the Court to require preservation of GPS and location data and then compel production of it if no evidence emerges to corroborate his theory. The lack of evidence does not justify intrusive discovery into Defendant Officers' GPS data; it would only confirm that Plaintiff's theory is unsupported.

Importantly, the text messages upon which Plaintiff relies to advance his theory actually undermine his position. To be sure, the text exchanges were precipitated by Lt. Jimenez witnessing Plaintiff engaging in suspicious behavior, on more than one occasion, directly **outside of Lt. Jimenez's home**. Moreover, the substance of the communications and the terminology used by the Defendant Officers are wholly inconsistent with Plaintiff's claim that they were engaged in a coordinated, multi-year surveillance operation. Had Plaintiff truly been the subject of such a sustained, targeted effort, one would expect the officers to know and refer to him by name or otherwise demonstrate a familiarity with him consistent with such an operation. Instead, they refer to Plaintiff only in generic terms, such as "that guy" and the "same dude."

Plaintiff's demand for location and GPS data from two undercover law enforcement officers' personal cell phones over the course of multiple years without **any evidence** to support such a request is the definition of a fishing expedition and it is not permitted by the Federal Rules or the laws of this District.

Fed. R. Civ. P. 26(b)(1) states that parties may obtain discovery that is "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 34 guides the production of documents through the discovery process and allows for the inspection of certain types of electronically stored information ("ESI"), but cautions that ESI "is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. **Courts should guard against undue intrusiveness resulting from inspecting or testing such systems**." Adv. Com. Notes (2006) (emphasis added). Thus, the Federal Rules require that mobile device data sought in federal litigation be relevant, not privileged and proportionate to the needs of the case. *The Sedona Conference, Commentary on Discovery of Mobile Device Data* (May 2025) (citing Fed. R. Civ. P. 26(b)(1)).

Plaintiff's argument partially rests on the theory that just because GPS and location data can be extracted and preserved from a full forensic examination of the Officers' cell phones, that Plaintiff has the right to that data. But this theory fails to recognize that safeguards must be put into place to protect Defendant Officers' privacy, as is repeatedly recognized by controlling case.[11] <u>See</u> <u>supra</u>. The GPS data sought by Plaintiff of two undercover officers who also lived in the City in which Plaintiff seeks to track their movements disproportionately intrudes upon Defendant Officers' privacy with no legal or factual basis. "[M]odern day cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" <u>Riley v. California</u>, 573 U.S. 373, 403 (2014) (quoting <u>Boyd v. United States</u>, 116 U.S. 616, 625 (1886)).

This expansion far exceeds not only the scope set forth by the Court's December 22, 2025, Order, but also goes far beyond the needs of this case. <u>See</u> <u>In re Insulin Pricing Litig.</u>, No. 23-md-3080, 2024 WL 2808083, at *3 (D.N.J. May 28, 2024) ("Notwithstanding the entry of an ESI Protocol, the parties remain bound by the Federal Rules of Civil Procedure and relevant case law on preservation of relevant, discoverable material. Including language in the ESI Protocol that could be read to impose added obligations as to all potentially "relevant" material runs the risk of injecting confusion and potentially more disputes over what is "relevant" for purposes of searching, culling, and producing ESI.").

The rule specifically requires that sought after discovery be relevant and proportional to the needs of the case. There is no argument that Plaintiff has made or can make that would make the production of GPS and location data of two undercover police officers' personal cell phones for a period of years with no specific dates, times, or limitations fit into that category. The claims and defenses in this case do not warrant such a request.

Although Plaintiff has attempted to muddy the waters with overly broad, unduly burdensome, and incredibly invasive discovery demands, this case is simple. Plaintiff alleges the Defendants did not have probable cause to arrest him. Defendants, correctly, claim they did. Nothing in this case warrants Plaintiff's sought after intrusion into the privacy that the Defendant Officers have in their personal cellular devices. Nothing in this case gives Plaintiff any right to obtain the GPS and location data from the Officers' phones whatsoever, much less the GPS and location data that Plaintiff now seeks, which spans multiple years and would require an in-depth analysis and production on the part of Defendants in order to supply Plaintiff with information regarding every single instance where either officer's phone was located within 500 feet of Plaintiff's residence. The Federal Rules, relevant case law, and guiding Sedona Principles all caution against this overreaching kind of discovery request, as it is both uniquely invasive and goes far beyond the needs that have been established in this case.

\*      \*      \*

---

[11] The privacy concerns are further heightened given that Perth Amboy is a small city (only 4.55 square miles), that Defendants live and work there, and that Plaintiff seeks GPS data capturing any time in which they were within 500 feet of his home. That sweeping and highly intrusive request is disproportionate to the needs of the case and should be rejected.

M O

June 25, 2026
Page 16 of 16

The parties thank the Court for its time and attention to this matter. If Your Honor has any questions, please do not hesitate to contact me or counsel for Plaintiff, Karen Newirth.

Respectfully submitted,

**MURPHY ORLANDO LLC**

Amanda K. Baker, Esq.

cc.    All Counsel of Record (via CM/ECF)

# EXHIBIT

# A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHRISTOPHER CURTIS BELLINGER,   .
.
        Plaintiff,               .
                                 . Case No. 24-cv-08442
vs.                              .
                                 . Newark, New Jersey
THE CITY OF PERTH AMBOY, et      . December 22, 2025
al.,                             .
                                 .
        Defendants.              .


TRANSCRIPT OF HEARING: COURT'S RULING
BEFORE THE HONORABLE CARI FAIS
UNITED STATES MAGISTRATE JUDGE


APPEARANCES (the parties appeared via video conference):

For the Plaintiff:      KAREN A. NEWIRTH, ESQ.
                        Newirth Linehan PLLC
                        99 Park Avenue, PH
                        New York, New York 10016


For the Defendants:     MALLORY OLWIG, ESQ.
                        Murphy Orlando LLC
                        494 Broad Street
                        Suite 5th Floor
                        Newark, NJ 07102


Audio Operator:

Transcription Service:     KING TRANSCRIPTION SERVICES, LLC
                           3 South Corporate Drive, Suite 203
                           Riverdale, NJ  07457
                           (973) 237-6080

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

(Commencement of proceedings)

THE COURT:  All right.  We're on the record in 24-8442, Bellinger v. Perth Amboy.  And before the Court are several discovery disputes.  I have a joint letter from the parties, addressing their respective positions.

But if any party wishes to supplement their written submission with something new or additional, they are welcome to do so now.

Ms. Newirth?

MS. NEWIRTH:  Yes, very briefly.  The only matter I would add to the record is with respect to the station house and body-worn camera footage relating to the client, to Mr. Bellinger's Rolex, is that the Rolex goes directly to both damages but also to the claims of fabrication of evidence and lack of credibility of the officers.

And that's just responding to the defendants' position that it wasn't part of an existing claim.

THE COURT:  Okay.

MS. NEWIRTH:  A surviving, claim.

THE COURT:  Am I correct, Ms. Olwig that if this is not an issue where you're withholding the footage, your position is that the footage doesn't exist.

MS. OLWIG:  That's correct.

THE COURT:  Okay.  All right.

All right.

|Hearing: Court's Ruling
|24-cv-08442, December 22, 2025

3

Does anything want to -- does anyone have anything to raise beyond what's in the papers?

MS. OLWIG:  I think the only thing we would add is that we served a letter on plaintiff, raising objections to certain documents in his privilege log.  Ms. Newirth did indicate that they will have a response to that tomorrow.  So --

THE COURT:  Okay.

MS. OLWIG:  -- that's where -- that where's we stand on that, assuming that the doc comes through tomorrow.

THE COURT:  Okay.

And that's with respect to which issue?  I'm sorry.

MS. OLWIG:  Certain privilege objections to documents withheld that were listed in their privilege log.

THE COURT:  Is that in the joint letter that the parties filed on November 7th?

MS. OLWIG:  Yes.  It's just briefly in the other ongoing discovery matters at the very bottom.  We just mentioned we anticipate serving objections.

THE COURT:  I see.  The paragraph that ends "The Court's intervention is not needed on these matters" --

MS. OLWIG:  Correct.

THE COURT:  -- so I figured you guys were going to continue to work through those.  And I'm glad that you have.

MS. OLWIG:  Yes, that is -- that's still being

worked through, yes.

THE COURT:  Okay.  All right.  Excellent.

So in that case, I will at this point put my decision on the record.  I am not going to include case citations, but if any party seeks a transcript, we can add them at that time.

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.  Materials need not be admissible in evidence to be discoverable.  Indeed, courts construe relevancy broader at the discovery stage and more liberally in favor of disclosure.

That said, although the scope of discovery under the federal rules is unquestionably broad, this right is not so unlimited -- is not unlimited and may be circumscribed.

All right.  Let's start with Issue 1, the lack of metadata in the production of the officers' cell phone evidence.  In response to plaintiff's request for production, defendants produced a series of screenshots of text messages that contain photographs, video recordings, and an apparent link to a Ring devices video recording that has since expired.  These text message communications were solely between defendants Jimenez and Guzman over a two-and-a-half-year period.

Plaintiff objects to the screenshot format of this production as it is not an acceptable substitute for a complete search of the devices.  The defendants do not dispute the relevance of the requested text messages, but instead raise concerns that this requested discovery is disproportionate to the needs of the case because it would require a full forensic search of the personal cell phones of seven defendants.

The Court notes for context that the Perth Amboy Police Department did not issue electronic devices to officers.  Thus, the only electronic devices in the defendant officers' possession are in their personal cell phones.

The federal rules permit a party to specify the form of production of documents as including metadata and the responding party then must either produce it in the form specified or object.

To resolve production of metadata disputes, courts have generally referred to the Sedona Principles and Sedona Commentaries, which are recognized as the leading authorities on electronic document retrieval and production.

Appendix E to the Sedona guidelines explains the importance of metadata.  Certain metadata is critical in information management and in ensuring effective retrieval and accountability in recordkeeping.  Metadata can assist in proving the authenticity of the content of electronic

documents as well as establish the context of the content. Metadata can also identify and explain the structural relationships that exist between and within electronic documents, such as versions and drafts.  Metadata allows organizations to track the many layers of rights and reproduction information that exists for records and their multiple versions.  Metadata may also document other legal or security requirements that have been imposed on records; for example, privacy concerns, privileged communications, or work product or proprietary interests.

Generally speaking, courts will order the production of metadata when it is sought in the initial document requests and the producing document has not yet produced the documents in any form.

Once a party demonstrates they need the metadata, the burden rests with the party objecting to the production of metadata or ESI to show undue hardship or expense.

Here, plaintiff requested the native format up front and properly limited its production requests and subject matter to defendants' text messages regarding plaintiff prior to his arrests.  Defendants provided the relevant requested text message communications and included time and date information to supplement the screenshots and location information of the photos and videos except for an unavailable Ring camera video.

Plaintiff has shown a particularized need for the requested metadata.  The screenshots and supplemental information do not make available all of the metadata acceptable in the native format, including missing location and other key background information.

The importance and relevance of the information along with the time they request an objection leads this Court to direct counsel for defendants to provide these messages between Jimenez and Guzman in a native format with the metadata data included.

As the plaintiff has established he needs the requested metadata, the question becomes whether or not it should be produced.

The Court is not persuaded by the defendants' argument that turning over these text messages from the two defendants' cell phones in native format would be unduly burdensome.  Defendants did not substantiate the unreasonable burden they would allegedly endure.  They simply state that, "Plaintiff's request for forensic imaging is unduly burdensome."

These conclusionary allegations do not satisfy the Court.  Defendants will undoubtedly incur some time and cost to retrieve the requested metadata for the text messages. But the Court does not understand the plaintiff to be requesting a fulsome forensic examination of all seven

defendants' phones and the metadata contained therein.

Instead, this request seems to relate only to the native format of the several text messages between defendants Jimenez and Guzman.  The Court finds this request is proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1).  The Court does not expect the cost to retrieve the requested metadata to be unduly burdensome.

The Court will, however, direct the parties to meet and confer and jointly submit an ESI protocol to help facilitate the native ESI discovery in accordance with the defendants' [verbatim] request.

Before I move on to the next issue, is there anything that we need to address there?  Or the -- are the parties clear? -- because I just want to make clear the Court's ruling pertains to the production of metadata of the chats that are responsive and relevant that have been produced.

MS. NEWIRTH:  Well, Your Honor, we were actually looking for a forensic image of these two officers' phones because what we have are, from what we understand from defense counsel are what the officers have identified as the times that they discussed Mr. Bellinger over a two-year period.

And so, given what the defense has said, in order to get the metadata data, they will be doing a forensic image

of the phones anyway, we would ask that they -- that counsel search the forensic image to ensure that they have captured all text messages relating to Mr. Bellinger, compliant with the plaintiff's request.

THE COURT:  So, just to be clear, Ms. Newirth, I want to make sure I'm clear on the request, you're not seeking a -- you're not seeking a copy of the forensic image of the two officers' phones.  You are simply stating that when they do the forensic imaging in order to produce the metadata, that counsel ensure that everything that's responsive to your request has been turned over?

MS. NEWIRTH:  Correct.

THE COURT:  Okay.

Well, I'm sure that there would be no objection to that considering that Ms. Olwig has already acknowledged that these chats are responsive and turned them over and has a continuing obligation to the extent that there are additional responsive materials identified.  I don't see that there would be any basis to withhold them.

But I'll turn to the counsel for the defendants.

And if you have any objection to that, please let me know.

MS. OLWIG:  I guess, I am not -- I'm unclear, I guess, on whether you need forensic imaging to do -- to gather metadata.  I'm -- from my understanding, you don't

have to do a full-blown forensic imaging of a device to get metadata of text messages.

The forensic imaging of a device would be the entire cell phone.

So, you know, we are --

THE COURT:  How would you obtain the native -- how would you obtain the native format of these records without doing an imaging?

MS. OLWIG:  My understanding is the -- the only reason to do a forensic imaging of the whole phone would be to be able to run searches on the whole phone, which I think is what plaintiff is saying they want --

THE COURT:  Well, then hold on a second.

Then why haven't the -- why haven't the native images been turned over if you can turn them over without doing a forensic image?

MS. OLWIG:  Well, to get the native data, I think we have to get a vendor involved.  So that's why --

THE COURT:  I believe that to be the case.

What that vendor will do is take the natives off of the phone.

And I believe what Ms. Newirth is saying is that when you engage in that process, although they're only seeking the chats that are responsive, they're not seeking a whole forensic image, but that is an opportunity for counsel

to -- or the vendor in this case to ensure that all of the chats are turned over.  That seems perfectly reasonable to me.

MS. OLWIG:  I think there's a difference between limiting the imaging -- a full forensic imaging of a phone versus just a text conversation.

So the cost of imaging and the intrusiveness of imaging an entire phone as opposed to just getting the native data or even if they were to image the entire, like, chat, like their text exchange, would be different.  And I think the costs and the intrusiveness would also be a lot less.

So if we were to be ordered to do like an imaging related to their text communications, it would be much more -- there should be a lower cost and less intrusive than a replication of the entire phone.

THE COURT:  But Ms. -- but what I understand Ms. Newirth to be identifying is that in the process of pulling the natives, she wants to make sure that all of the natives are pulled, which is your obligation.  I mean, I don't think there's any dispute about that.

So I am not sure -- you know, Ms. Newirth, again, this is where some additional meet and confer might have been helpful.  But if they can accomplish that without first downloading the entire phone and then having the attorney search it, if it's something that the vendor can do, is there

any issue with that?

MS. NEWIRTH:  Well, I think, Your Honor directed us to come up with a protocol for searching, and I think we'll do that.  And then the vendor can do the search to identify if any other messages or communications or, you know, notes, photographs, et cetera, pertain to this case and to my client, exist.  And then the attorneys would review those for responsiveness.

THE COURT:  Okay.  All right.

MS. OLWIG:  -- looking -- I'm sorry.

(Simultaneous conversation)

THE COURT:  No, no.  Go ahead.  Please.  Work it out.

MS. OLWIG:  When you say pictures and doc- -- are you referring to -- you referring to an imaging of the entire phone, then, and then a search of the entire phone for anything and everything?  Or are you just referring to, like, the communications between Guzman and Jimenez?

MS. NEWIRTH:  Well, I think anything on these officers' phones that relate to -- that are responsive to the requests that we've made, and we're speaking broadly -- are related to the client, his car, you know, anything relating to him that's on these phones is responsive.  And we are -- that's.

MS. OLWIG:  I know there is case law in our

district just seeking a forensic analysis of a device to verify completeness of the production is generally -- courts have generally not granted that, just to see -- just to determine that our production is complete.

THE COURT:  But that's -- I don't think that's what she's talking about.  And I have to -- I have to say I didn't -- I didn't see any reference to that case law in your joint letter.

So if there was case law that you thought might be relevant to the Court's analysis, it would have been helpful for you to have included that in your letter on this issue.

So putting that aside, I want to be really clear on what the ruling is.  The ruling is anything that is responsive to the requests that exist on those phones should be turned over in native format.

The parties can get together and work out an ESI protocol and a search protocol, and if there are issues with your meet and confer on that, you know, you can raise it in a joint letter with the Court.

But that's where the ruling stands right now.  Anything that is responsive on those two phones would be should be turned over in native format.  Okay?

MS. NEWIRTH:  Understood.

THE COURT:  Okay.

MS. OLWIG:  And is the cost then placed on the

defendants for that?

THE COURT:  Is that a question for me?

MS. OLWIG:  Yes, I'm sorry.

THE COURT:  That's not part of what has -- that's not part of the motion that's pending before me or the dispute that's pending before me.  That is going to be a part of your meet and confer.

MS. OLWIG:  Okay.  Okay.  Thank you.

THE COURT:  If you can't agree to that, then, again, you're going to have to raise it in a joint letter with the Court, and I will urge you to include any relevant case law that you want the Court to review in advance of deciding that issue.  Okay?

MS. OLWIG:  Thank you.

THE COURT:  All right.

Issue 2, production of station house footage and body-worn cameras.  All right.  Plaintiff also seeks video footage from surveillance cameras at the station house and body-worn cameras in relation to an allegedly missing watch.  Defendants have advised that the station house footage cannot be produced and no longer exists in accordance with its video retention policy at the time plaintiff submitted the litigation hold and preservation letter.  Defendants also claim that officers within the precinct are not required to have their body-worn cameras turned on and that the -- there

is no body-worn footage to turn over.

Upon reading plaintiff's letter, defendants have now shared the sought-after retention policy.  And so the Court considers that issue addressed.

As raised in this letter, though, the requested video evidence appears not to be in the possession of defendants.  Federal Rule of Civil Procedure 26 does not explicitly require a party to attest to the specifics of its search efforts.  However, the Court finds that -- well, actually let me ask this before I continue with my ruling on this:  Has defendant provided any certification in response to these requests?

MS. OLWIG:  We have not, but that was something that we discussed in preparing for this meet and confer -- or for this status conference, that, you know, we're happy to work with our clients to get a certification to that effect.

THE COURT:  Okay.

So, listen, if there is no objection, to that, then, I mean, that's basically what I was going to order you to do.  But you should be doing that anyway.

And as part of that certification, you are directed to provide information regarding the approximate date that the footage was overwritten or deleted in accordance with the retention policy to the extent you're able to identify it.  All right?  And you're going to certify to the completeness

of your search for the responsive videos and provide an actual certified response to the discovery request.

Does anyone have any questions?

MS. NEWIRTH:  Yes, just a comment, Your Honor.  We actually -- we have been provided with a number of retention policies.  But we have not been told yet by defendants, although they have said they intend to tell us, which policies apply to the respective materials, the body-worn camera and the station house footage.

THE COURT:  Okay.

Ms. Olwig, any objection to, in your certification, identifying the policy that is at issue with respect to the specific request?

MS. OLWIG:  No, we can do that.

THE COURT:  Okay.  All right.

Issue Number 3, production of officers' internal affairs and misconduct records, plaintiff's request for production included a request for internal affairs records relating to any of the individual defendants, reflecting complaints, investigations, or findings related to truthfulness, use of force, bias, civil rights violations, or misconduct relevant to the allegations in this case, covering the period of September 2018 to the present.

Defendants object to the production of the internal affairs files for the defendant officers, arguing that the

request is overly broad, unduly burdensome, and seeks unnecessary information.  Defendants maintain that the only potentially relevant disciplinary history would be any history of wrongful arrests or malicious prosecution.

However, the recent case law in the District of New Jersey is clear:  When a plaintiff's claims against a defendant police officer for malicious prosecution and false arrest are viable, the plaintiff is entitled to the complete internal affairs file for that officer because it is probative and relevant.  Halgas v. Burlington County.

The request is narrowed to the seven defendant officers.

Accordingly the Court finds that the internal affairs files constitute relevant and appropriate discovery and the defendant shall produce the requested records.

Is there anything else to address on that issue?

Okay.

All right.

I think that covers the discovery disputes.

At this point if nobody has anything further on these issues, we can go off the record and continue our discussion regarding the status of discovery and settlement discussions.

All right?  Thanks, Ruby.  Let go off.

(Conclusion of proceedings)

|Hearing: Court's Ruling
|24-cv-08442, December 22, 2025
|Certification

18

Certification

I, SARA L. KERN, Transcriptionist, do hereby certify that the 18 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

s/ *Sara L. Kern*                                    June 24, 2026

_____    _____

Signature of Approved Transcriber                Date

Sara L. Kern, CET**D-338
King Transcription Services, LLC
3 South Corporate Drive, Suite 203
Riverdale, NJ  07457
(973) 237-6080